UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CRESCENT BAR, INC.,<br>8894 Crescent Bar Road NW<br>Quincy, WA 98848 | ) <br> ) <br> ) <br> ) | Case No. |
| Petitioner, | ) <br> ) | MOTION TO COMPEL COMPLIANCE<br>WITH SUBPOENAS |
| vs. | ) <br> ) <br> ) | |
| FEDERAL ENERGY REGULATORY<br>COMMISSION, CHERYL A. LAFLEUR,<br>and ROBERT J. FLETCHER,<br>888 First St. N.E.<br>Washington, DC 204026 | ) <br> ) <br> ) <br> ) <br> ) <br> ) | |
| Defendants. | ) | |

## MOTION TO COMPEL

Petitioner, Crescent Bar, Inc. ("CBI"), respectfully moves under Federal Rule of Civil Procedure 45 for an order compelling the Defendants, the Federal Energy Regulatory Commission ("FERC") and its chairperson Cheryl A. LaFleur, and its employee Robert J. Fletcher, to comply with subpoenas duly issued from this Court in *Kelly v. Public Utility District No. 2 of Grant County*, Case No. 11-cv-023-JLQ, in the United States District Court for the Eastern District of Washington ("Underlying Action"), by producing documents and making Mr. Fletcher and a representative of FERC available to be deposed. As set forth in the accompanying Memorandum of Points and Authorities, FERC employees witnessed acts that are highly material to the Underlying Action, and FERC has made no valid objections to the subpoenas. Therefore, defendants should be ordered to comply.

Respectfully submitted this 15th day of May, 2014.

By: _____

Donald J. Friedman (DC Bar # 413701)
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005-3960
Telephone:  202.654.6200
Facsimile:  202.654-6211

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CRESCENT BAR, INC.,                        )
8894 Crescent Bar Road NW                  )   Case No.
Quincy, WA 98848                           )
                                           )
                    Petitioner,            )   MEMORANDUM OF POINTS AND
                                           )   AUTHORITIES IN SUPPORT OF
vs.                                        )   MOTION TO COMPEL COMPLIANCE
                                           )   WITH SUBPOENAS
FEDERAL ENERGY REGULATORY                  )
COMMISSION, CHERYL A. LAFLEUR,             )
and ROBERT J. FLETCHER,                    )
888 First Street N.E.                      )
Washington, DC 20426                       )

                    Defendants.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

The Underlying Action arose because the Defendants in that action ordered CBI and its

lessees, homeowners on Crescent Bar Island in the Columbia River, to vacate the island.

Defendants in the Underlying Action are the Public Utility District No. 2 of Grant County (the

"PUD") and the Port District No. 1 of Grant County (the "Port") (collectively, "the Defendants"

in the Underlying Action), who had, until recently, leased property on Crescent Bar Island for

residential use.  The PUD pointed to supposed FERC policy and guidance as the reason for

failing to extend the lease.  CBI, certain homeowners, and the Island's homeowner associations

(collectively, "the Plaintiffs" in the Underlying Action) allege among other things that the

Defendants failed to seek approval for a lease extension from FERC diligently and in good faith

as agreed.

CBI brings the present motion to compel because it obtained evidence that, far from

working in good faith, the PUD had approached Mr. Fletcher and FERC to obtain an excuse *not* to renew.   Therefore, CBI seeks to depose Mr. Fletcher and FERC to obtain valuable, irreplaceable evidence about those events.   FERC, however, objected to the subpoenas under its housekeeping regulation, erroneously asserting that the subpoenas are unduly burdensome and irrelevant.   But neither FERC's internal regulations nor Rule 45 allows FERC to avoid these subpoenas, which are highly material, narrow, and would impose only a minimal burden.   For these reasons, CBI respectfully requests that this Court order FERC to comply.

## II.   STATEMENT OF FACTS

### A.   The Underlying Action

CBI and the other Plaintiffs in the Underlying Action have brought several claims against the Port and the PUD, including under 42 U.S.C. § 1983 for due process violations arising from a breach of a lease of real property located on Crescent Bar Island in Washington State. Declaration of Emanuel Jacobowitz in Support of Motion to Compel (filed herewith) ("Jacobowitz Dec.") ¶ 2 & Exh. A at 10-18.   Crescent Bar Island was created in 1955 as part of a Columbia River hydroelectric power project under FERC.   The Public Utility District No. 2 of Grant County (the "PUD"), which owns the island, leased the island as authorized by FERC to the Port of Quincy, Port District No. 1 of Grant County (the "Port") in 1962.   The Port leased the property to CBI's predecessor in interest (also called "CBI" for the purposes of this motion) in a 1979 lease co-signed by the PUD, and it approved further leases from CBI to the homeowners, who purchased the recreational vehicle lots and condominiums on the island developed by CBI.

The 1979 lease required the PUD and Port to extend the lease's 2012 termination date, subject to FERC approval if the PUD thought such approval was necessary under its license

from FERC; if so, the PUD was required to request approval in good faith. The PUD determined that FERC approval would be necessary and advised Plaintiffs that it would address the issue in connection with its efforts to renew its FERC license and its development of a Shoreline Management Plan ("SMP") required by the license. Although the PUD did obtain a license renewal in 2008, and the new license did not prohibit a lease extension and even referenced the extension agreement, the PUD submitted an SMP to FERC in 2010 that, despite the PUD's agreement and promises, eliminated the Plaintiffs' residential use of Crescent Bar Island after 2012. While drafting its final SMP, the PUD ordered the Plaintiffs to vacate the Island in 2012, which precipitated the Underlying Action.

## B.    FERC And Mr. Fletcher Hold Material Information

As the above summary of the Underlying Action shows, a focus of the Plaintiffs' case is the PUD's failure to diligently and in good faith seek FERC approval for a lease extension. Mr. Fletcher has emerged as a key witness on this point. The PUD disclosed under Rule 26(a)(1) that Mr. Fletcher has knowledge relevant to its failure to seek approval of the extension, based on a March 10, 2010 letter he wrote to the PUD as a FERC staff member. That letter stated that FERC generally did not condone private residential use of projects' lands and asked the PUD to address that issue in more detail. Jacobowitz Dec. ¶ 3 & Exh. B. The PUD later argued that its decision to try to end the Plaintiffs' residential uses of Crescent Bar Island was compelled by that March 10, 2010 letter. *Id.* ¶ 4 & Exh. C. FERC has since denied that it forced the PUD to take such action.[1]

---

[1] "We have neither required nor precluded Grant PUD from renewing the lease, nor has it requested authorization from us regarding its actions. Had Grant PUD proposed to continue the lease, we would have had to decide whether private use of Crescent Bar Island was consistent with project purposes. Because it elected not to do so… that issue does not arise here. Nothing in our approval of the SMP dictates the result of the dispute over the lease or imposes any requirements — prescriptive or proscriptive — with respect to the disposition of private facilities on Crescent Bar Island. *Pub. Util. Dist. No. 2 of Grant Cnty., Wash.*, 144 FERC ¶ 61210 (Sept. 19, 2013)."

In written discovery and depositions, however, the Plaintiffs learned that Mr. Fletcher wrote the March 10, 2010 letter at the direct request of the PUD's own counsel, who even drafted key language used by Mr. Fletcher. *Id.* ¶ 5 & Exh. D.  Four out of the five then-Commissioners of the PUD have testified in depositions that they had no prior knowledge that the supposed FERC requirement was actually written by the PUD. *Id.* ¶ 6 & Exhs. E, F, G, H.  The one other then-Commissioner has since passed away. *Id.* ¶ 7 & Exh. I.  He discussed the letter with Mr. Fletcher afterwards to explore the PUD's options to enable a lease extension; another Commissioner was on the line but does not remember the call in any detail. *Id.*

The foregoing suggests that the PUD, far from diligently seeking FERC approval, made a decision to evict the residents and arranged the appearance of a rejection by FERC, to escape the consequences of its own failure to honor its commitments.  Mr. Fletcher's testimony about these events therefore is highly material to the Underlying Action – particularly in view of FERC's own repudiation of the PUD's attempt to shift responsibility to FERC.  144 FERC ¶ 61210, *supra*.  In addition to the letter and conversations described above, Mr. Fletcher had other communications with PUD representatives on the license renewal, the SMP, the PUD's options as to lease renewal, and related matters, before and after March 10, 2010. *Id.* ¶ 8 & Exh. J.  Furthermore, some PUD records from that period were destroyed or appear to be missing. *Id.* ¶ 9 & Exhs. K & L.  Therefore, FERC, and especially Mr. Fletcher, are a crucial, irreplaceable source of evidence on the PUD's conduct.

### C.    FERC and Mr. Fletcher Refused To Comply With The Plaintiffs' Subpoenas.

CBI, with the approval of the other Plaintiffs, delivered subpoenas to FERC and Mr. Fletcher on January 8, 2014, for deposition and production of documents in Washington, D.C. on February 24, 2014. *Id.* ¶ 10 & Exhs. L & M.  Giving due respect to 18 C.F.R. 388.111,

which is FERC's "*Touhy*" or "housekeeping" regulation, CBI also served a copy of each subpoena on FERC's general counsel, along with a cover letter explaining the need for this discovery. *Id.* ¶ 11 & Exh. O. CBI made it clear that the depositions would be short and could be scheduled to accommodate the deponents. *Id.* On April 3 and 7, 2014, to cure a potential service issue, CBI served a second set of subpoenas and notices for deposition and production of documents in the District of Columbia on FERC and Mr. Fletcher, identical to the first set except for the return date, which was changed to April 23, 2014, and CBI again served copies on FERC's general counsel along with a cover letter incorporating and attaching its earlier cover letter to explain the need for discovery. *Id.* ¶ 15 & Exhs. Q-W. At FERC's request, CBI sent an email to clarify its position on April 11, 2014. *Id.* ¶ 16 & Exh X.

FERC responded in writing to the subpoenas stating objections and refusing to comply or to allow Mr. Fletcher to comply with the subpoenas. *Id.* ¶¶ 12, 17 & Exhs. P & Y. Ignoring the Plaintiffs' need for this evidence as to the vital issue of the PUD's lack of good faith, FERC stated that because FERC's official actions are taken by written orders available to the public, its staff's written or oral advisory communications could not possibly be relevant, and there was no "compelling public interest" such as FERC believes would be needed to require it to comply with a federal subpoena. *Id.* Exh. P at 2, Exh. Y at 2. FERC also objected to expending staff time, stating that many similar requests to FERC employees, taken together, could create an undue burden on the agency as a whole. *Id.* Exh. Y at 3-4. FERC claimed no privilege or work-product protection. *Id.* Exhs. P & Y.

Counsel for CBI conferred repeatedly by telephone with counsel for FERC before and after FERC sent the written objections to the subpoenas, in a good faith effort to resolve the dispute, but reached an impasse. Jacobowitz Dec. ¶¶ 13 & 18.

## III.   ARGUMENT

FERC and Mr. Fletcher were subpoenaed to produce records and be deposed under Fed. R. Civ. P. 45(a), and they refused to comply. This Court may compel compliance. Fed. R. Civ. P. 45(d)(2)(i). In a motion to compel, the "burden lies on the party resisting discovery to show that the documents requested are either unduly burdensome or privileged." *In re Micron Tech., Inc. Sec. Litig.*, 264 F.R.D. 7, 9 (D.D.C. 2010). FERC cannot make any such showing, and this Court should therefore compel FERC and Mr. Fletcher to produce the requested documents and be deposed.

FERC has objected, for itself and Mr. Fletcher, on the ground of undue burden based on 18 C.F.R. 388.111. Jacobowitz Dec. Exhs. P & Y. That housekeeping regulation, also known as a "*Touhy*" regulation, provides for FERC's general counsel to make determinations concerning subpoenas to FERC, or to a FERC employee related to the employee's duties, taking into account applicable privileges or confidentiality concerns if any, and FERC's resources and impartiality. 18 C.F.R. 388.111. Citing this provision, FERC claims an undue burden only because of a supposed burden on its resources. Jacobowitz Dec. Exhs. P & Y. FERC also goes beyond the regulation, stating that the testimony sought is supposedly "irrelevant to the underlying dispute and the relevant information is available in written documents," so that "there is not a compelling public interest in compliance." *Id.* Exh. P & Exh. Y at 2.

FERC is wrong on the law and the facts – 18 C.F.R. 388.111 gives it no special power to avoid a subpoena, and the evidence sought in this case is highly relevant (and of public interest), as it goes to the PUD's failure to seek FERC approval of the intended lease extension in good faith. FERC should comply with the subpoenas.

**A.   FERC's Housekeeping Regulation Cannot Excuse Compliance with Subpoenas**

FERC cannot parlay its *Touhy* regulation into a special power to avoid subpoenas. The Court of Appeals for this Circuit held that courts apply the usual "Rule 45 standards," of "privilege and undue burden," to documentary and testimonial subpoenas that are "issued to third-party agencies or agency employees in federal civil suits." *Watts v. S.E.C.*, 482 F.3d 501, 508 (D.C. Cir. 2007). In particular, "an agency's *Touhy* regulations do not relieve district courts of the responsibility to analyze privilege or undue burden assertions under Rule 45." *Id.* at 509.

The authorizing statute for housekeeping regulations such as 18 C.F.R. 388.111 expressly provides: "This section does not authorize withholding information from the public or limiting the availability of records to the public." *Id.* (quoting 5 U.S.C. § 301). The statute "does not confer a privilege." *Id.* (quoting *Comm. for Nuclear Responsibility, Inc. v. Seaborg,* 463 F.2d 788, 793 (D.C.Cir.1971)). Thus, FERC's *Touhy* regulation is "relevant for internal housekeeping and determining who within the agency must decide how to respond to a federal court subpoena," but "the legal basis for any opposition to the subpoena must derive from an independent source of law such as a governmental privilege or the rules of evidence or procedure." *Id.* (quoting Moore's Federal Practice § 45.05[1][b] (3d ed. 2006)). FERC has established no such other basis.

**B.    CBI's Subpoenas Do Not Create an Undue Burden**

On their face, these subpoenas create no undue burden. CBI seeks a fuller account of the PUD's efforts – if any – to fulfill its obligations to diligently seek FERC approval to extend CBI's lease. CBI therefore asked Mr. Fletcher and a FERC representative (who may also be Mr. Fletcher) for a short deposition, near FERC's offices, on a narrow subject: the residential uses of land on Crescent Bar Island under the project license and deponents' related discussions with parties to the Underlying Action. That light burden is not "undue," especially where

records of the party opponent are missing, and another witness has died, leaving Mr. Fletcher (and possibly Mr. Yeakel) as the only witness able to fill in the gaps.

Likewise, FERC and Mr. Fletcher cannot meet their burden under Rule 45(d)(3)(iv) of showing an "undue burden" based on FERC's one-size-fits-all objection to the potential cumulative burden that might be created by hypothetical multiple subpoenas of other FERC employees.[2] Mr. Fletcher, according to FERC, has no responsive documents, so the document request does not burden him. FERC may have responsive documents, but the burden on FERC is trivial, since FERC routinely responds under the Freedom of Information Act to much broader document requests than CBI's request here.

FERC's fear of a cumulative over-burden on its personnel is exaggerated. The seminal case for quashing a subpoena on such grounds prevented a private litigant from deposing one of the world's top HIV researchers for extensive, unpaid, expert testimony based on his team's vital ongoing work for the Center for Disease Control, at the height of the AIDS epidemic. *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1198 (11th Cir. 1991). Here, FERC merely states that it manages many large hydroelectric projects; it has not asserted or shown that those projects routinely lead to third-party subpoenas of its employees or that such subpoenas could prevent any vital work. *See Clinton v. Jones*, 520 U.S. 681, 702, 117 S. Ct. 1636, 137 L. Ed. 2d 945 (1997) ("If the past is any indicator, it seems unlikely that a deluge of such litigation will

---

[2] Indeed, despite *dictum* in *Watts*, 482 F.3d at 509, and similar cases to the effect that courts may consider the cumulative burdens on an agency of employee subpoenas, the rule on its face asks whether the particular subpoena at issue – not hypothetical other subpoenas in other cases – will cause an undue burden. Fed. R. Civ. P. 45(d)(3). It is also well established that objections under Rule 45(d)(3) can be raised only by the deponent himself or by a person claiming a privilege or ownership interest. *CineTel Films, Inc. v. Does 1-1,052*, 853 F. Supp. 2d 545, 556 (D. Md. 2012) ("the undue burden contemplated by Rule 45 is one placed on the direct recipient of the subpoena… not on third parties."); *Call of the Wild Movie, LLC v. Smith*, 274 F.R.D. 334, 338 (D.D.C. 2011) ("The plaintiff has issued subpoenas to the putative defendants' ISPs, not to the putative defendants themselves. Consequently, the putative defendants face no obligation to produce any information under the subpoenas … and cannot claim any hardship, let alone undue hardship."); *Washington v. Thurgood Marshall Acad.*, 230 F.R.D. 18, 22 *on reconsideration,* 232 F.R.D. 6 (D.D.C. 2005) (same as to third-party subpoena to District of Columbia Public Schools).

ever engulf the Presidency.")  Mr. Fletcher worked on this project for months, including what must have been dozens of hours assessing the PUD's voluminous Shoreline Management Plan and related documentation, and he voluntarily discussed the issue at some length with PUD representatives.  Another hour or two of discussion under oath will not appreciably change his productivity – nor would similar depositions, if any, of his colleagues about similar large projects impair the productivity of FERC as a whole.

**C.    The Subpoenas Seek Highly Relevant Information and Are Matters of Compelling Public Interest.**

Finally, FERC objected that the evidence sought would supposedly not be relevant to the Underlying Action.  As CBI has demonstrated, that is simply not true.  Indeed, FERC's rationale, that the agency acts only by written orders so its employees' discussions must not be relevant, shows that FERC has fundamentally misunderstood the purpose of the subpoenas. CBI intends to prove the PUD's failure to seek FERC approval for the agreed lease extension in good faith; to do so, CBI will explore events such as the PUD's request to Mr. Fletcher and FERC for a letter to provide a pretext for the PUD's failure to extend.  FERC's internal policy of acting only by written orders has no more bearing on such evidence than if, for instance, Mr. Fletcher had seen a PUD representative get into a car accident on the way to their meeting.  It is not *FERC's* actions that CBI is trying to discover.  Mr. Fletcher is a witness to *the Defendants'* actions or failures to act.  Far from being "irrelevant" to the Underlying Action, the evidence sought in these subpoenas could hardly be more material.

Furthermore, while a party need not prove a "compelling public interest" to enforce a subpoena, the hundreds of homeowners who reside on Crescent Bar Island, and many other PUD ratepayers who benefit from Crescent Bar Island under FERC's license, will be affected by the outcome of the Underlying Action.  The public, and indeed FERC itself, has an interest

in seeing FERC's licensees carry out the terms of their FERC-approved leases.

## IV.   CONCLUSION

For the reasons set forth above, FERC and Mr. Fletcher have no basis to flout CBI's subpoenas.  Accordingly, CBI respectfully requests that this Court order compliance.


Respectfully submitted this 15th day of May, 2014.

By:   _____

Donald J. Friedman (DC Bar # 413701)
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005-3960
Telephone:  202.654.6200
Facsimile:  202.654.6211

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CRESCENT BAR, INC.,                                )
8894 Crescent Bar Road NW                          )
Quincy, WA 98848                                   )       Case No.
                                                   )
              Petitioner,                          )
                                                   )
                                                   )
  vs.                                              )
                                                   )
                                                   )
FEDERAL ENERGY REGULATORY                          )
COMMISSION, CHERYL A. LAFLEUR,                      )
and ROBERT J. FLETCHER,                            )
888 First Street N.E.
Washington, DC 20426

              Defendants.
_____

## CERTIFICATION OF GOOD FAITH

Pursuant to Rule 37(a)(1) of the Federal Rules of Civil Procedure, counsel for the

Petitioner Crescent Bar, Inc. ("CBI"), hereby certifies that a good faith effort to resolve the

issues raised in its Motion to Compel Compliance with Subpoenas against the Federal Energy

Regulatory Commission ("FERC"), Cheryl A. LaFleur, and Robert J. Fletcher, was attempted by

counsel for CBI with counsel for FERC.  Specific details of these attempts are recounted in the

Declaration of Emanuel Jacobowitz.

Respectfully submitted this 15th day of May, 2014.

By: _____
        Donald J. Friedman (DC Bar # 413701)
        PERKINS COIE LLP
        700 Thirteenth Street, N.W., Suite 600
        Washington, D.C. 20005-3960
        Telephone:  202.654.6200
        Facsimile:  202.654.6211

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CRESCENT BAR, INC.,  )
8894 Crescent Bar Road NW  )    Case No.
Quincy, WA 98848  )
  )
  )    DECLARATION IN SUPPORT OF
        Petitioner,  )    MOTION AND MEMORANDUM OF
  )    POINTS AND AUTHORITIES TO
vs.  )    COMPEL COMPLIANCE WITH
  )    SUBPOENAS
FEDERAL ENERGY REGULATORY  ),
COMMISSION, CHERYL A. LAFLEUR,  )
and ROBERT J. FLETCHER,  )
888 First Street N.E.  )
Washington, DC 20426  )
  )
        Defendants.  )
_____  )

## DECLARATION OF EMANUEL JACOBOWITZ

Emanuel Jacobowitz declares:

1.     I am above the age of 18, a resident of Washington State and a member in good standing of the Washington State Bar and the Bar of the District of Columbia, and testify of my own knowledge except as otherwise stated.

2.     I am counsel in this matter for the movant, Crescent Bar, Inc. ("CBI"). I also represent CBI in *Kelly, et al. v. Public Utility District No. 2 of Grant County, et al.*, Case No. 11-cv-023-JLQ in the United States District Court for the Eastern District of Washington (the "Underlying Action"). Attached hereto as Exhibit A is a true and correct copy of the latest pleading of CBI setting forth its claims in the Underlying Action.

3.     In the Underlying Action, the defendant Public Utility District No. 2 of Grant County ("PUD") disclosed under Rule 26(a)(1) that Mr. Robert Fletcher of the Federal Energy Regulatory Commission ("FERC"), has knowledge relevant to the action, based on a letter that he wrote as a FERC staff member, dated March 10, 2010. A true

and correct copy of the March 10, 2010 letter produced by the PUD, with the cover email to the PUD by Mr. Christopher Yeakel of FERC, is attached hereto as Exhibit B.

4.       The PUD later argued in the Underlying Action that Mr. Fletcher's March 10, 2010 letter compelled its decision to try to end the residential uses of Crescent Bar Island by CBI and sublessor homeowners and homeowner associations (the "Plaintiffs"), a decision which triggered the disputes at issue in the Underlying Action. Attached hereto as Exhibit C is a true and correct copy of a relevant excerpt from a filing by the PUD in the Underlying Action.

5.       The Plaintiffs followed up with written discovery and depositions, and learned, among other things, that the letter by Mr. Fletcher was requested, and the language in part drafted, by the PUD's own counsel. Attached hereto as Exhibit D is a true and correct copy of the relevant email chain with Mr. Fletcher.

6.       Finding the full story about the PUD's conversations with Mr. Fletcher that led to this written exchange between him and the PUD is difficult for the following reasons, among others. First, four of the PUD's then-Commissioners testified that they did not even know that the PUD's attorney had proposed the text to Mr. Fletcher. Attached hereto as Exhibits E, F, G, and H are true and correct copies of relevant excerpts from the transcripts of the depositions in the Underlying Action of then-Commissioners Bernd, Flint, Brewer, and Hansen of the PUD.

7.       The fifth and last then-Commissioner of the PUD, who personally discussed the issue with Mr. Fletcher, has passed away. Attached hereto as Exhibit I is a true and correct copy of an excerpt on that point from the transcript of the deposition of Commissioner Flint in the Underlying Action.

- 2 -

8.      The PUD's point staff member, Ms. Kelly Larimer, testified that Mr. Fletcher was one of the staff members of FERC with whom the PUD most often communicated regarding Crescent Bar Island, including meetings, telephone conversations, and email exchanges with the PUD's staff and Commissioners before and after March 10, 2010. Attached hereto as Exhibit J is a true and correct copy of relevant excerpts from her deposition transcript.

9.      Many PUD records from that period were destroyed or appear to be missing. Attached hereto as Exhibits K and L are true and correct copies of relevant excerpts on this point from the transcripts of the depositions of PUD Commissioners Brewer and Flint in the Underlying Action.

10.     On behalf of CBI and with the approval of the other Plaintiffs, I had subpoenas served on FERC and Mr. Fletcher on January 8, 2014 for deposition and production of documents in the District of Columbia, with a return date of February 24, 2014. Attached hereto as Exhibits M and N are true and correct copies of the January 8, 2014 subpoenas.

11.     We served a copy of each subpoena on FERC's general counsel, along with a cover letter explaining the need for this discovery.  Attached hereto as Exhibit O is a true and correct copy of our cover letter to FERC's general counsel.

12.     FERC responded by letter on February 12, 2014 stating objections and refusing to comply or allow Mr. Fletcher to comply with the subpoena. Attached hereto as Exhibit P is a true and correct copy of FERC's response letter.

13.     On March 28, 2014, I called FERC's counsel, Charles Beamon, and conferred with him in a good faith attempt to resolve the discovery dispute over FERC's

- 3 -

refusal to comply with the subpoenas or to allow Mr. Fletcher to comply. We talked for several minutes but could not resolve the issues and reached an impasse.

14.     Since we also wish to depose a former FERC employee, Mr. Christopher Yeakel, who worked closely with Mr. Fletcher on the project and communicated with PUD representatives on these issues, I asked Mr. Beamon whether FERC would take the same position as to Mr. Yeakel, and he said it was likely.

15.     On April 3, 2014, to make sure service was properly made, I served a second subpoena and notice of deposition, on Mr. Fletcher, and a second subpoena and notice on FERC on April 7, 2014, and on April 8, 2014 served copies and a second cover letter to FERC's general counsel, attaching and incorporating our January 7, 2014 letter to explain our need for the discovery. The new subpoenas were identical to the first set except for the issuance and return dates. Attached as Exhibits Q, R, S, T, U, V, W and X are true and correct copies of the subpoenas, notices of depositions, cover letter, and affidavits of service.

16.     FERC requested clarification as to our need for the requested testimony, and I responded by email on April 11, 2014, attaching another copy of our January 7, 2014 and April 4, 2014 letters. Attached hereto as Exhibit Y is a true and correct copy of the email, with its attachments.

17.     FERC responded by letter dated April 17, 2014 stating objections and refusing to comply or allow Mr. Fletcher to comply with the subpoena. Attached as Exhibit Z is a true and correct copy of FERC's letter.

LEGAL120936953.1

18.     On April 22, 2014, in a good faith effort to resolve the discovery dispute, I called Mr. Mark Hershfield, the assigned assistant general counsel for FERC. We talked for several minutes but were unable to resolve the dispute, and reached an impasse.

19.     We have since located and served Mr. Yeakel with a subpoena, in his home district, and FERC has objected to that subpoena on the same grounds, even though Mr. Yeakel is no longer an employee of FERC so that deposing him could not take any time at all away from his work for FERC.

I declare under penalty of perjury of the laws of the United States that the statements contained herein are true and accurate to the best of my knowledge and belief.

Signed this 13th day of May, 2014 in Seattle, Washington

JOHNSTON LAWYERS, P.S.

By _____

Emanuel Jacobowitz, WSBA No. 39991
2701 First Avenue, Suite 340
Seattle, WA 98121
Telephone: (206) 866-3230
Fax: (206) 866-3234
mannyj@rbrucejohnston.com

- 5 -

# EXHIBIT A

THE HONORABLE JUSTIN L. QUACKENBUSH

1
R. Bruce Johnston, WSBA 4646
2
Emanuel F. Jacobowitz, WSBA 39991
Johnston Lawyers, P.S.
3
2701 First Ave., Suite 340
4
Seattle, WA 98121
(206) 866-3230 / (206) 866-3234 Fax
5
bruce@rbrucejohnston.com
6
mannyj@rbrucejohnston.com

7

8
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
9
AT SPOKANE

10
JAMES V. KELLY; LAWRENCE H.                )
11
AND H. TERESA CAIN; RANDALL                )   Case No. 2:11-cv-00023-JLQ
S. AND MARGRET R. HOEFER;                  )
12
RONALD A. AND JOYCE E.                     )
13
KARLSTEN; GARY B. AND KAREN                )   **FIRST AMENDED ANSWER,**
S. WIRTA; XAVIER H. AND                    )   **DEFENSES AND CROSS-CLAIMS**
14
JEANNE B. RAMIREZ; CRESCENT                )   **OF CRESCENT BAR, INC.**
BAR CONDOMINIUM MASTER                     )
15
ASSOCIATION; CRESCENT BAR                  )
16
RECREATIONAL VEHICLE HOME                  )
OWNERS ASSOCIATION; and                    )
17
CRESCENT BAR SOUTH R.V.                     )
18
PARK OWNERS ASSOCIATION,                   )
                                           )
19
          Plaintiffs,                      )
                                           )
20
    vs.                                    )
                                           )
21
PUBLIC UTITLITY DISTRICT NO. 2             )
OF GRANT COUNTY; PORT OF                   )
22
QUINCY, PORT DISTRICT NO. 1 OF             )
23
GRANT COUNTY; and CRESCENT                 )
BAR, INC.,                                 )
24
          Defendants.                      )
                                           )
25

FIRST AMENDED ANSWER, DEFENSES                          JOHNSTON LAWYERS, P.S.
AND CROSS-CLAIMS OF CRESCENT BAR,                       2701 FIRST AVENUE, SUITE 340
INC.                                                    SEATTLE, WA 98121
Page 1 of 26                                            (206) 866-3230

1  Defendant Crescent Bar, Inc. ("CBI"), through its counsel of record,

2  Johnston Lawyers, P.S., answers Plaintiffs' Complaint as follows:

3  ### INTRODUCTION

4  CBI admits the allegations contained in the Introduction in Plaintiffs'

5

6  Complaint.

7  ### '''I. <u>PARTIES</u>

8  1.1 Admitted.

9

10  1.2 Admitted.

11  1.3 Admitted.

12  1.4 Admitted.

13

14  1.5 Admitted.

15  1.6 Admitted.

16  1.7 Admitted.

17  1.8 Admitted as to Intervenor, Crescent Bar Recreational Vehicle

18  Homeowners Association.

19

20  1.9 Admitted.

21  1.10 Admitted.

22  1.11 Admitted.

23  1.12 Admitted.

24

25

FIRST AMENDED ANSWER, DEFENSES
AND CROSS-CLAIMS OF CRESCENT BAR,
INC.
Page 2 of 26

## II. JURISDICTION

2.1 Admitted.

2.2 Admitted.

## III. FACTUAL BACKGROUND

3.1 Admitted.

3.2 Admitted.

3.3 Admitted.

3.4 Admitted.

3.5 Admitted.

3.6 Admitted.

3.7 Admitted.

3.8 Admitted.

3.9 Admitted.

3.10 Admitted.

3.11 Admitted.

3.12 Admitted.

3.13 Admitted.

3.14 Admitted.

3.15 Admitted.

3.16 Admitted.

JOHNSTON LAWYERS, P.S.
2701 FIRST AVENUE, SUITE 340
SEATTLE, WA 98121
(206) 866-3230

3.17 Admitted.

3.18 Admitted.

3.19 Admitted.

3.20 Admitted.

3.21 Admitted.

3.22 Admitted.

3.23 Admitted.

3.24 Admitted.

3.25 Admitted.

3.26 Admitted.

3.27 Admitted.

3.28 Admitted.

3.29 Admitted.

3.30 Admitted.

3.31 Admitted.

3.32 Admitted.

3.33 Admitted.

3.34 Admitted.

3.35 Admitted.

3.36 The allegations in this Paragraph are directed at other parties and CBI

FIRST AMENDED ANSWER, DEFENSES
AND CROSS-CLAIMS OF CRESCENT BAR,
INC.
Page 4 of 26

JOHNSTON LAWYERS, P.S.
2701 FIRST AVENUE, SUITE 340
SEATTLE, WA 98121
(206) 866-3230

accordingly provides no response to the same. To the extent any of the allegations in this Paragraph are deemed to apply to CBI, CBI admits the same.

3.37 The allegations in this Paragraph are directed at other parties and CBI accordingly provides no response to the same. To the extent any of the allegations in this Paragraph are deemed to apply to CBI, CBI admits the same.

3.38 The allegations in this Paragraph are directed at other parties and CBI accordingly provides no response to the same. To the extent any of the allegations in this Paragraph are deemed to apply to CBI, CBI admits the same.

3.39 Admitted.

## IV. <u>CAUSES OF ACTION</u>

**<u>Claims Against All Defendants</u>**

**Breach of Express Covenant — Specific Performance - Injunction**

4.1   CBI realleges its responses to the preceding paragraphs.

4.2 Denied to the extent this allegation is deemed to apply to CBI, otherwise, Admitted.

4.3   Denied to the extent this allegation is deemed to apply to CBI, otherwise, Admitted.

4.4 Admitted.

**Breach of Express Covenant — Damages**

4.5 CBI realleges its responses to the preceding paragraphs.

FIRST AMENDED ANSWER, DEFENSES
AND CROSS-CLAIMS OF CRESCENT BAR,
INC.
Page 5 of 26

4.6 Admitted.

**Third Party Beneficiary — Injunction**

4.7 CBI realleges its responses to the preceding paragraphs.

4.8 Admitted.

4.9 Admitted.

4.10 Admitted.

**Third Party Beneficiary — Damages**

4.11 CBI realleges its responses to the preceding paragraphs.

4.12   Denied to the extent this allegation is deemed to apply to CBI, otherwise, Admitted.

**Additional Claims Against the PUD and the Port**

**Due Process**

4.13 CBI realleges its responses to the preceding paragraphs.

4.14 Denied to the extent this allegation is deemed to apply to CBI, otherwise, Admitted.

4.15 Admitted.

4.16 Admitted.

**Additional Claims Against the PUD**

**Breach of Oral Covenant — Specific Performance — Injunction**

4.17 The allegations in this Paragraph are directed at other parties and CBI

FIRST AMENDED ANSWER, DEFENSES
AND CROSS-CLAIMS OF CRESCENT BAR,
INC.
Page 6 of 26

JOHNSTON LAWYERS, P.S.
2701 FIRST AVENUE, SUITE 340
SEATTLE, WA 98121
(206) 866-3230

accordingly provides no response to the same. To the extent any of the allegations in this Paragraph are deemed to apply to CBI, CBI admits the same.

4.18 The allegations in this Paragraph are directed at other parties and CBI accordingly provides no response to the same. To the extent any of the allegations in this Paragraph are deemed to apply to CBI, CBI admis the same.

4.19 The allegations in this Paragraph are directed at other parties and CBI accordingly provides no response to the same. To the extent any of the allegations in this Paragraph are deemed to apply to CBI, CBI admits the same.

4.20 The allegations in this Paragraph are directed at other parties and CBI accordingly provides no response to the same. To the extent any of the allegations in this Paragraph are deemed to apply to CBI, CBI admits the same.

4.21 The allegations in this Paragraph are directed at other parties and CBI accordingly provides no response to the same. To the extent any of the allegations in this Paragraph are deemed to apply to CBI, CBI admits the same.

**Breach of Oral Covenant — Damages**

4.22 CBI realleges its responses to the preceding paragraphs.

4.23 Denied to the extent this allegation is deemed to apply to CBI, otherwise, Admitted.

**Promissory Estoppel — 2023 Lease Term**

4.24 CBI realleges its responses to the preceding paragraphs.

FIRST AMENDED ANSWER, DEFENSES
AND CROSS-CLAIMS OF CRESCENT BAR,
INC.
Page 7 of 26

JOHNSTON LAWYERS, P.S.
2701 FIRST AVENUE, SUITE 340
SEATTLE, WA 98121
(206) 866-3230

4.25 Admitted.

4.26 Admitted.

4.27 Admitted.

4.28 Admitted

**Promissory Estoppel — 2008 License Term**

4.29 CBI realleges its responses to the preceding paragraphs.

4.30 Admitted.

4.31 Admitted.

4.32 Admitted.

4.33 Admitted.

**Additional Claims Against Crescent**

**Breach of Oral Covenant — Damages**

4.34 CBI realleges its responses to the preceding paragraphs.

4.35 Denied.

4.36 Denied.

4.37 Denied.

4.38 Denied.

4.39 Denied.

**CROSS-CLAIMS**

CBI, for its Cross-Claims against Defendants PUBLIC   UTILITY

FIRST AMENDED ANSWER, DEFENSES
AND CROSS-CLAIMS OF CRESCENT BAR,
INC.
Page 8 of 26

DISTRICT NO. 2 OF GRANT COUNTY ("PUD") and PORT OF QUINCY, PORT DISTRICT NO. 1 OF GRANT COUNTY ("Port"), alleges as follows:

## I.   PARTIES

1.     Cross-Claimant CBI is a for-profit corporation organized and existing under the laws of the State of Washington.

2.     Defendant PUD is a municipal corporation organized and existing under the laws of the State of Washington.

3.     Defendant Port is a municipal corporation organized and existing under the laws of the State of Washington.

## II.   JURISDICTION AND VENUE

4.     These Cross-Claims are for damages and injunctive relief brought by CBI against Defendants PUD and Port, and include claims, among others, against PUD and Port for violations of 42 U.S.C. § 1983.

5.     This case involves the construction, interpretation and enforcement of duties under federal administrative rules, regulations and/or orders, and in that regard subject matter jurisdiction in the above-entitled court is called out in 16 U.S.C. § 825p.

6.     These Cross-Claims include claims supplemental to federal claims brought by CBI and/or brought by other parties, and the above-entitled court has jurisdiction over such supplemental claims pursuant to 28 U.S.C.§ 1367.

FIRST AMENDED ANSWER, DEFENSES
AND CROSS-CLAIMS OF CRESCENT BAR,
INC.
Page 9 of 26

JOHNSTON LAWYERS, P.S.
2701 FIRST AVENUE, SUITE 340
SEATTLE, WA 98121
(206) 866-3230

7.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343(a)(1), and 1343(a)(4).

8.     Venue is proper in the above entitled court under 28 U.S.C. § 1391 because Defendants PUD and Port are located in, and conduct business in, its District, and because a substantial part of the events giving rise to CBI's claims arose in its District.

## III.   FACTS APPLICABLE TO ALL CAUSES OF ACTION

9.     In 1955, FERC issued a 50-year license to PUD to operate the Priest Rapids Hydroelectric Project ("Project") on the Columbia River ("1955 license").

10.    Crescent Bar Island ("CB Island") is an island located in the Columbia River within the Project boundaries.

11.    In 1962, PUD entered into a lease of CB Island to Port for "public and recreational purposes" which lease was scheduled to terminate in fifty-years in 2012 ("PUD-Port lease").

12.    The 1962 PUD-Port lease includes a provision incorporating by reference the terms and conditions of the 1955 FERC license.

13.    In 1970, Port subleased a large portion of CB Island to a developer, the predecessor of CBI ("Port-CBI lease"), which sold leasehold interests to members of the public for the development, among other things, of recreational homes and condominiums on the island.

FIRST AMENDED ANSWER, DEFENSES AND CROSS-CLAIMS OF CRESCENT BAR, INC.
Page 10 of 26

JOHNSTON LAWYERS, P.S.
2701 FIRST AVENUE, SUITE 340
SEATTLE, WA 98121
(206) 866-3230

14. On or about February 8, 1973 the Port-CBI lease was modified to expressly extend the term of CBI's leasehold from 2012 to February 28, 2023 (because of the "financing requirements of the contemplated improvements") ("Port-CBI 1973 Lease Amendment").

15. CBI, and purchasers of leasehold interests from CBI, including Plaintiffs, reasonably relied on the extension of the lease term to February 28, 2023 for purchasing, improving, and financing elements of CB Island, including a marina, golf course, campground, related commercial buildings, recreational residences and related infrastructure.

16. Following the Port-CBI 1973 Lease Amendment, on or about March 6, 1973, PUD and Port entered into an amendment extending the term of the 1962 PUD-Port lease to 2023, subject to FERC approval ("PUD-Port 1973 lease amendment").

17. The PUD-Port 1973 lease amendment stated the parties would "promptly ... submit" their proposed extended sublease for approval of FERC.

18. CBI, and the known and future assignees of, or others claiming an interest through or under, CBI (hereafter for convenience sometimes called "assignees"), were and are intended beneficiaries of the PUD-Port 1973 lease amendment.

19. In 1975, Port, with approval of PUD, entered into a second

FIRST AMENDED ANSWER, DEFENSES AND CROSS-CLAIMS OF CRESCENT BAR, INC.
Page 11 of 26

amendment to the Port-CBI lease. That second amendment identified a dispute between the parties regarding the term of the Port-CBI lease.

20.    Over the next several years, CBI, Port and the PUD entered into other leases and segregation agreements concerning CB Island, all of which were intended to further CBI's investment in, and development of, CB Island for recreational and residential purposes.

21.    In 1979, PUD, Port and CBI entered into a new lease (purporting to replace all prior agreements), ("1979 lease"). The 1979 lease included a specific provision preserving CBI's right to claim its lease had been extended to 2023 and further included a term providing that PUD, Port, and CBI "reaffirm their desire to extend the term of the June 5, 1962 and this Lease Agreement until February 28, 2023," subject to FERC approval, if deemed necessary by the PUD.

22.    From the outset of the various leasehold dispositions of CB Island, PUD and Port each contemplated, authorized and promoted development of CB Island by CBI for recreational purposes and the subsequent sale/assignment of leasehold interests to individuals such as Plaintiffs and others for residential and recreational use. The 1979 lease affirmed those purposes.

23.    CBI and CBI's assignees have made substantial investments in CB Island in reasonable reliance upon the 1979 lease, its predecessor leases, the leasehold sales/assignments of CBI, and the promises, commitments,

FIRST AMENDED ANSWER, DEFENSES
AND CROSS-CLAIMS OF CRESCENT BAR,
INC.
Page 12 of 26

JOHNSTON LAWYERS, P.S.
2701 FIRST AVENUE, SUITE 340
SEATTLE, WA 98121
(206) 866-3230

undertakings, assurances and other actions, non-actions and statements of PUD and Port. In this connection, CBI incorporates the allegations of Plaintiffs Complaint as though fully set forth. CBI also asserts the admissions contained in the Answers of PUD and Port.

24. In the 1979 lease Port and PUD each covenanted and agreed that "Application to the [FERC] for approval . . . shall be required" if the PUD deemed it necessary to seek approval.

25. Port also covenanted and agreed in the 1979 lease that upon request, it would exercise "reasonable diligence" to get an extension of its lease with the PUD in order to give CBI a fifty (50) year extension of its lease term.

26. CBI, and/or Plaintiffs as assignees of rights under the 1979 lease, have requested Port to exercise "reasonable diligence" to get an extension of the lease with the PUD in order to give CBI and its assignees a fifty (50) year extension of its lease term, and Port has failed to comply with this duty under the 1979 lease, and has breached its obligations under the 1979 lease.

27. CBI, and Plaintiffs as assignees of rights under the 1979 lease, have requested PUD to get the required extension of CBI's lease with the PUD in order to give CBI and its assignees a fifty (50) year extension of its lease term, and PUD has failed to comply with this duty under the 1979 lease, and has breached its obligations under the 1979 lease.

JOHNSTON LAWYERS, P.S.
2701 FIRST AVENUE, SUITE 340
SEATTLE, WA 98121
(206) 866-3230

28.     In 1979 PUD asked FERC to approve the 1979 lease, which at the time FERC neither granted nor denied, but held the issue in abeyance. Thereafter, neither PUD nor Port took any steps to have FERC approve the 1979 lease, its predecessor leases, or the sales/assignments of leasehold interests by CBI.  In this connection, PUD advised that it elected to deal with requesting the required extension in the then upcoming re-licensing process.

29.     If it was in any way required that FERC approve the 1979 lease, its predecessor leases, or the sales/assignments of leasehold interests by CBI, that requirement was an inherent term of the leases to which PUD and/or Port were parties, and PUD's and/or Port's failure to seek and obtain any required approvals by the end of the license reapplication period constituted breaches of material terms of contracts to which CBI was a party and/or a third party beneficiary.

30.     In 1980 FERC changed its policy to allow approval of leases extending beyond the license term, i.e. beyond the termination of the then existing 1955 license scheduled for 2005.  Following this change, Port failed to use reasonable diligence to urge the PUD to seek FERC approval of the 1979 lease, and PUD failed to seek FERC approval of the 1979 lease, its predecessor leases or the sales/assignments of leasehold interests by CBI, as it was required by the 1979 lease to do.  Those failures constituted material breaches of the 1979

FIRST AMENDED ANSWER, DEFENSES
AND CROSS-CLAIMS OF CRESCENT BAR,
INC.
Page 14 of 26

JOHNSTON LAWYERS, P.S.
2701 FIRST AVENUE, SUITE 340
SEATTLE, WA 98121
(206) 866-3230

lease by PUD.

31.   Having not sought or obtained approval of FERC of the 1979 lease, its predecessor leases, or the sales/assignments of leasehold interests by CBI, PUD and Port are estopped from asserting, and/or have waived, any right, defense or avoidance which may otherwise be available to either of them arising from an absence of any required FERC approval.

32.   Having not sought or obtained approval of FERC of the 1979 lease, its predecessor leases, or the sales/assignments of leasehold interests by CBI, PUD and Port are obligated to compensate and/or indemnify CBI and its assignees, including Plaintiffs, for any and all damages proximately caused by any failure of PUD and/or Port to obtain any required FERC approval of the 1979 lease, its predecessor leases, or the sales/assignments of leasehold interests, to CBI, for a period through the end of the 2008 license (44 years after 2008, see below), and in all events to at least February 28, 2023.

33.   FERC was long aware of the 1979 lease, its predecessor leases, and the sales/assignments of leasehold interests by CBI, and in all events was fully aware thereof by at least 2003 when PUD sought renewal of the 1955 license. FERC took no steps to have PUD modify or rescind or otherwise take actions in regard to the 1979 lease, its predecessor leases, and the sales/assignments of leasehold interests by CBI.   The absence of action by FERC, enforcement or

FIRST AMENDED ANSWER, DEFENSES
AND CROSS-CLAIMS OF CRESCENT BAR,
INC.
Page 15 of 26

JOHNSTON LAWYERS, P.S.
2701 FIRST AVENUE, SUITE 340
SEATTLE, WA 98121
(206) 866-3230

otherwise, in the face of long knowledge of the subject leasing transactions, should be, as between and among the parties to this action, construed and interpreted as approval of such leasing transactions, in the absence of any remedial or contrary action by FERC.

34.   In 2005, PUD's 1955 license was to expire.

35.   In 2003, PUD applied for a new license and was granted an interim license while the application was pending.

36.   In 2008, FERC granted PUD a new forty-four (44) year license ("2008 license").

37.   During the license re-application process ("license re-application period") PUD and Port sought and obtained support of stakeholders, including CBI, Plaintiffs and other residents of CB Island, by overtly representing and promising no change to the uses and leasehold rights existing on CB Island, and an extension of the underlying leases.

38.   In reliance on the overt conduct, representations and promises of PUD and Port during the license re-application period, CBI and Plaintiffs expended substantial funds and labor of more than a temporary nature on, and in respect of, CB Island during the license re-application period.

39.   During the license re-application period, PUD and Port put forth plans for environmental and shoreland use purposes which were wholly

FIRST AMENDED ANSWER, DEFENSES
AND CROSS-CLAIMS OF CRESCENT BAR,
INC.
Page 16 of 26

JOHNSTON LAWYERS, P.S.
2701 FIRST AVENUE, SUITE 340
SEATTLE, WA 98121
(206) 866-3230

consistent with, and would continue, the existing uses on CB Island of CBI, the Plaintiffs and other interested parties.

40.    CBI, during the license renewal period, and currently, operates a marina, a golf course, a sewer system and other improvements and activities related to the recreational and other designated purposes identified and approved by Port and PUD in the 1979 lease, its predecessor leases and the sales/assignments of leasehold interests by CBI.

41.    The 2008 license required PUD to develop and submit a final Shoreline Management Plan ("SMP").

42.    The PUD was obligated by its conduct, promises and agreements, including but not limited to the 1979 lease and its predecessor leases, to submit a final SMP consistent with continued use of CB Island under the 1979 lease.

43.    In April 2010, the PUD submitted to FERC an amendment to its SMP that would eliminate residential use of CB Island after 2012, and fully take, and extinguish to CBI and to Plaintiffs, all of their property and interest in CB Island. ("2010 SMP").

44.    The 2010 SMP amendment was issued by PUD in bad faith and in violation of its specific duties, undertakings, covenants (including but not limited to the implied covenant of good faith and fair dealing) and promises in the 1979 lease, its predecessor leases, and in numerous communications on the subject

FIRST AMENDED ANSWER, DEFENSES
AND CROSS-CLAIMS OF CRESCENT BAR,
INC.
Page 17 of 26

prior to the end of the license re-application period.

45.    Recently, and in furtherance of its bad faith conduct and breaches of contract, PUD, with the concurrence of Port, has ordered Plaintiffs to vacate the premises on or before June 1, 2012.

46.    If PUD and Port are not enjoined from taking steps (including any public statements) to enforce their attempts to remove CBI, Plaintiffs, and other interested parties, from CB Island, CBI and Plaintiffs will suffer immediate and irreparable damage and loss, for which monetary compensation will not be adequate, given the unique nature of CB Island. The destruction, damage and deterioration which will obviously and necessarily occur if PUD's demands for CBI and Plaintiffs to abandon CB Island will be material, irreparable, and unique to the property involved.

47.    There is pending an appeal to FERC by Plaintiffs, which is supported by, and the outcome of which would benefit, CBI, which may in and of itself prevent any ability of PUD or Port to evict CBI from CB Island, partially or completely.

48.    The balance of equities, *pendente lite*, as to this case and the said FERC appeal, resides with retaining the *status quo ante*, by injunction or other appropriate equitable order, which continues the tenancies of CBI and the Plaintiffs until at least final judgment in the above entitled case.   In this

FIRST AMENDED ANSWER, DEFENSES
AND CROSS-CLAIMS OF CRESCENT BAR,
INC.
Page 18 of 26

JOHNSTON LAWYERS, P.S.
2701 FIRST AVENUE, SUITE 340
SEATTLE, WA 98121
(206) 866-3230

connection, the loss or damage to PUD or Port from any such continuation of the existing tenancies, is minimal, and indeed, it may reduce costs or expenses to each and both of those parties, by preventing the necessity of their restoring the tenancies, improvements, and paying for the loss of use, relocation and additional massive expenses, should the eviction ultimately be held to have been wrongful. Further, in this connection, public policy favors not disturbing a disputed tenancy that is not a nuisance, *pendente lite*.

49.   CBI has either a right to exclusively maintain, use and occupy its leased property at least until 2023 and in fact until the end of the term of the 2008 license, and/or a right to just compensation from the PUD and the Port, jointly and severally, for any removal therefrom, partial or complete, earlier than anticipated.

50.   PUD and Port each have, and at all times since 1979 had, a legal obligation to seek and/or cause FERC's approval of a lease extension to at least 2023, of the 1979 lease, its predecessor leases and the sales/assignments of leasehold interests by CBI, or a functional equivalent thereof, and each of PUD and Port are in active and continuing breach of that legal obligation.

51.   PUD and Port each have, and at all times since 1979 had, a legal duty to take no action inconsistent with or contrary to their several legal obligations to seek and/or cause FERC's approval of a lease extension to at least 2023, of the

FIRST AMENDED ANSWER, DEFENSES
AND CROSS-CLAIMS OF CRESCENT BAR,
INC.
Page 19 of 26

JOHNSTON LAWYERS, P.S.
2701 FIRST AVENUE, SUITE 340
SEATTLE, WA 98121
(206) 866-3230

1979 lease, its predecessor leases and the sales/assignments of leasehold interests by CBI, or a functional equivalent thereof, and each of PUD and Port are in active and continuing breach of that legal duty.

## IV.   CAUSES OF ACTION

### Breach of Express Covenant – Implied Covenants – Specific Performance – Injunction - Damages

52.   CBI re-alleges the preceding paragraphs as though fully set forth herein.

53.   Defendants PUD and Port have each failed and refused to honor their obligations under the clear language of the 1979 Lease, including the obligation to immediately and in good faith seek FERC approval of the 2023 lease term.

54.   Defendants PUD and Port have each failed and refused to honor their obligations to act in good faith, or to deal fairly, with CBI and with Plaintiffs, in regard to said Defendants' duties and undertakings in the 1979 lease and its predecessor leases.

55.   Defendants' conduct constitutes breaches of the 1979 lease express and implied covenants.  CBI has been damaged by the conduct of Defendants and the damages are continuing.  As a proximate result of the breaches, CBI has been damaged in an amount to be proved at the time of trial.

56.   As real property is unique, money damages alone will not provide an

FIRST AMENDED ANSWER, DEFENSES
AND CROSS-CLAIMS OF CRESCENT BAR,
INC.
Page 20 of 26

JOHNSTON LAWYERS, P.S.
2701 FIRST AVENUE, SUITE 340
SEATTLE, WA 98121
(206) 866-3230

adequate remedy to CBI.  Therefore, CBI is entitled to specific performance of the 1979 lease, and to injunctive relief, temporary and/or permanent, to prevent any of the Defendants from evicting it, or Plaintiffs or other interested parties, from all or any part of CB Island which they now occupy.

**Due Process and Conspiracy**

57.    CBI re-alleges the preceding paragraphs as though fully set forth herein.

58.    The conduct of the PUD and the Port, their agents, representatives, employees, and officers, as described above, have deprived and/or threatened to deprive, CBI of its interests in their CB Island property without due process and without just compensation, as required under U.S. Constitution Amendment XIV and Washington Constitution Article I, Section 3; and under U.S. Constitution Amendment V and Washington Constitution Article I, Section 16.

59.    CBI has been damaged as a result of the PUD and Port's conduct in the manner and amounts to be proven at trial.

60.    The conduct of PUD and Port was concerted action.

61.    Pursuant to 42 U.S.C. §§ 1983 and 1985, CBI is entitled to economic damages in such amounts as shall be determined at the time of trial.  In addition, under 42 U.S.C. § 1988, CBI is entitled to reasonable attorney fees and costs.

**Estoppel, Promissory Fraud and Material Misrepresentation**

FIRST AMENDED ANSWER, DEFENSES
AND CROSS-CLAIMS OF CRESCENT BAR,
INC.
Page 21 of 26

JOHNSTON LAWYERS, P.S.
2701 FIRST AVENUE, SUITE 340
SEATTLE, WA 98121
(206) 866-3230

62.     CBI re-alleges the preceding paragraphs as though fully set forth herein.

63.     During the license reapplication period of 2003 to 2008, PUD and Port each made promises and commitments, and took actions and non-actions, as aforesaid, intending that CBI would irrevocably change its position to the detriment of CBI and Plaintiffs.

64.     Port and PUD, at the time their respective promises, commitments, actions and non-actions during the license reapplication period, as aforesaid, were made or taken, did not intend to keep such promises or commitments and intended to act contrary to their actions vis-à-vis CBI and Plaintiff, and such actions, promises and commitments were therefore fraudulent and/or constituted promissory fraud and/or actionable material misrepresentations.

65.     During the license reapplication period CBI, in reasonable reliance upon the promises, commitments and actions and non-actions as aforesaid, did irrevocably change its position to its detriment, by, among other things, expending funds for and upon improvements and operations on CB Island reasonably expecting its tenancy to continue to at least 2023, and not taking alternate actions to otherwise secure the continued tenancy to which it was entitled.

66.     PUD and Port are estopped, under both the doctrines of promissory

FIRST AMENDED ANSWER, DEFENSES
AND CROSS-CLAIMS OF CRESCENT BAR,
INC.
Page 22 of 26

JOHNSTON LAWYERS, P.S.
2701 FIRST AVENUE, SUITE 340
SEATTLE, WA 98121
(206) 866-3230

and equitable estoppel, to assert or take any action inconsistent with the continued tenancy of CBI or Plaintiffs to at least February 28, 2011.

67.     PUD and Port, under the doctrine to promissory estoppel, is liable to CBI for any and all damages proven at trial to have proximately resulted from an asserted or actual termination of its tenancies on CB Island at any time prior to February 28, 2023.

68.     The conduct of PUD and Port, which caused damage to CBI and Plaintiff constitutes promissory fraud and/or actionable material misrepresentation.

## Declaration

69.     CBI re-alleges the preceding paragraphs as though fully set forth herein.

70.     An actual controversy exists between CBI and Port as to the expiration date of the 1979 Lease.

71.     By the 1973 Port-CBI Lease Amendment, the parties agreed to extend the term of the sublease from Port to CBI, to February 23, 2023.

72.     The sublease from Port to CBI currently expires no earlier than February 23, 2023.

73.     CBI is entitled to a declaration stating that the sublease term from Port to CBI expires no earlier than February 23, 2023.

FIRST AMENDED ANSWER, DEFENSES
AND CROSS-CLAIMS OF CRESCENT BAR,
INC.
Page 23 of 26

JOHNSTON LAWYERS, P.S.
2701 FIRST AVENUE, SUITE 340
SEATTLE, WA 98121
(206) 866-3230

74.   The Court has jurisdiction to hear this claim under 28 U.S.C. § 1367.

**Wherefore, CBI prays for judgment as follows:**

1.   For specific performance of the 1979 lease, including the 2023 lease termination date;

2.   For a declaration of the 2023 lease termination date;

3.   For specific performance of the lease termination date coincident with the end of the 2008 license, i.e. 2052;

4.   In the alternative, for damages in such amount as the Court deems just and equitable for the early termination of the tenancies of CBI and the Plaintiffs;

5.   For preliminary injunction preventing any termination of any portion of the tenancies of CBI and/or Plaintiffs, *pendente lite*.

6.   For reasonable attorney fees and costs;

7.   For such other and further relief as the Court deems just and equitable.

8.   CBI demands a trial by jury.

Respectfully submitted this 30th day of March, 2012.

JOHNSTON LAWYERS, P.S.

By s/ R. Bruce Johnston
R. Bruce Johnston, WSBA No. 4646
Emanuel F. Jacobowitz, WSBA No. 39991
2701 First Avenue, Suite 340
Seattle, WA 98121

FIRST AMENDED ANSWER, DEFENSES
AND CROSS-CLAIMS OF CRESCENT BAR,
INC.
Page 24 of 26

JOHNSTON LAWYERS, P.S.
2701 FIRST AVENUE, SUITE 340
SEATTLE, WA 98121
(206) 866-3230

1

Telephone: (206) 866-3230
Fax: (206) 866-3234
email: bruce@rbrucejohnston.com
email: mannyj@rbrucejohnston.com

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

FIRST AMENDED ANSWER, DEFENSES
AND CROSS-CLAIMS OF CRESCENT BAR,
INC.
Page 25 of 26

1

## CERTIFICATE OF SERVICE

2       I hereby certify that on this 30th day of March, 2012 I electronically filed the

3   foregoing document with the Clerk of the Court using the CM/ECF System, which
will send notification of such filing to the following:

4

5   Scott B. Henrie:  shenrie@williamskastner.com
Manish Borde:  mborde@williamskastner.com

6   Christopher F. Ries:  chrisr@rieslawfirm.com
Michael B. Tierney:  tierney@tierneylaw.com

7   Glenn J. Amster:  gamster@kantortaylor.com
Dale M. Foreman:  dale@daleforeman.com

8   Daniel J. Appel: attorneyappel@gmail.com;

9   James M. Kalamon: james.kalamon@painehamblen.com
Dale A. DeFelice: dale.deflice@painehamblen.com

10   Brook L. Cunningham: brook.cunningham@painehamblen.com

11   Lewis W. Card: lew@dadkp.com
Quentin Batjer: quentin@dadkp.com

12

13
                                    s/ R. Bruce Johnston
14                                  R. Bruce Johnston, WSBA No. 4646
                                    JOHNSTON LAWYERS, P.S.
15                                  2701 First Avenue, Suite 340
                                    Seattle, WA 98121
16                                  Telephone: (206) 866-3230
                                    Fax: (206) 866-3234
17
                                    email: bruce@rbrucejohnston.com
18

19

20

21

22

23

24

25

FIRST AMENDED ANSWER, DEFENSES                    JOHNSTON LAWYERS, P.S.
AND CROSS-CLAIMS OF CRESCENT BAR,              2701 FIRST AVENUE, SUITE 340
INC.                                                 SEATTLE, WA 98121
Page 26 of 26                                          (206) 866-3230

THE HONORABLE JUSTIN L. QUACKENBUSH

1

R. Bruce Johnston, WSBA 4646

2   Emanuel F. Jacobowitz, WSBA 39991

Johnston Lawyers, P.S.

3   2701 First Ave., Suite 340

4   Seattle, WA 98121

(206) 866-3230 / (206) 866-3234 Fax

5   bruce@rbrucejohnston.com

6   mannyj@rbrucejohnston.com

7

UNITED STATES DISTRICT COURT

8   EASTERN DISTRICT OF WASHINGTON

9   AT SPOKANE

10   JAMES V. KELLY; LAWRENCE H.

AND H. TERESA CAIN; RANDALL

11   S. AND MARGRET R. HOEFER;           ) Case No. 2:11-cv-00023-JLQ

RONALD A. AND JOYCE E.

12   KARLSTEN; GARY B. AND KAREN

13   S. WIRTA; XAVIER H. AND             ) **FIRST AMENDED ANSWER,**

JEANNE B. RAMIREZ; CRESCENT          **DEFENSES AND CROSS-CLAIMS**

14   BAR CONDOMINIUM MASTER             **OF CRESCENT BAR, INC.**

ASSOCIATION; CRESCENT BAR

15   RECREATIONAL VEHICLE HOME

16   OWNERS ASSOCIATION; and

17   CRESCENT BAR SOUTH R.V.

PARK OWNERS ASSOCIATION,

18

19              Plaintiffs,

20   vs.

21   PUBLIC UTITLITY DISTRICT NO. 2

OF GRANT COUNTY; PORT OF

22   QUINCY, PORT DISTRICT NO. 1 OF

23   GRANT COUNTY; and CRESCENT

BAR, INC.,

24              Defendants.

25

FIRST AMENDED ANSWER, DEFENSES                    JOHNSTON LAWYERS, P.S.
AND CROSS-CLAIMS OF CRESCENT BAR,                 2701 FIRST AVENUE, SUITE 340
INC.                                              SEATTLE, WA 98121
Page 1 of 26                                      (206) 866-3230

Defendant Crescent Bar, Inc. ("CBI"), through its counsel of record, Johnston Lawyers, P.S., answers Plaintiffs' Complaint as follows:

## INTRODUCTION

CBI admits the allegations contained in the Introduction in Plaintiffs' Complaint.

## '''I. **PARTIES**

1.1 Admitted.

1.2 Admitted.

1.3 Admitted.

1.4 Admitted.

1.5 Admitted.

1.6 Admitted.

1.7 Admitted.

1.8 Admitted as to Intervenor, Crescent Bar Recreational Vehicle Homeowners Association.

1.9 Admitted.

1.10 Admitted.

1.11 Admitted.

1.12 Admitted.

FIRST AMENDED ANSWER, DEFENSES
AND CROSS-CLAIMS OF CRESCENT BAR,
INC.
Page 2 of 26

## II. JURISDICTION

2.1 Admitted.

2.2 Admitted.

## III. FACTUAL BACKGROUND

3.1 Admitted.

3.2 Admitted.

3.3 Admitted.

3.4 Admitted.

3.5 Admitted.

3.6 Admitted.

3.7 Admitted.

3.8 Admitted.

3.9 Admitted.

3.10 Admitted.

3.11 Admitted.

3.12 Admitted.

3.13 Admitted.

3.14 Admitted.

3.15 Admitted.

3.16 Admitted.

FIRST AMENDED ANSWER, DEFENSES
AND CROSS-CLAIMS OF CRESCENT BAR,
INC.
Page 3 of 26

1    3.17 Admitted.

2    3.18 Admitted.

3    3.19 Admitted.

4
     3.20 Admitted.
5

6    3.21 Admitted.

7    3.22 Admitted.

8    3.23 Admitted.

9
     3.24 Admitted.
10

11   3.25 Admitted.

12   3.26 Admitted.

13
     3.27 Admitted.
14

15   3.28 Admitted.

16   3.29 Admitted.

17   3.30 Admitted.

18
     3.31 Admitted.
19

20   3.32 Admitted.

21   3.33 Admitted.

22   3.34 Admitted.

23
     3.35 Admitted.
24

25   3.36 The allegations in this Paragraph are directed at other parties and CBI

FIRST AMENDED ANSWER, DEFENSES
AND CROSS-CLAIMS OF CRESCENT BAR,
INC.
Page 4 of 26

JOHNSTON LAWYERS, P.S.
2701 FIRST AVENUE, SUITE 340
SEATTLE, WA 98121
(206) 866-3230

accordingly provides no response to the same. To the extent any of the allegations in this Paragraph are deemed to apply to CBI, CBI admits the same.

3.37 The allegations in this Paragraph are directed at other parties and CBI accordingly provides no response to the same. To the extent any of the allegations in this Paragraph are deemed to apply to CBI, CBI admits the same.

3.38 The allegations in this Paragraph are directed at other parties and CBI accordingly provides no response to the same. To the extent any of the allegations in this Paragraph are deemed to apply to CBI, CBI admits the same.

3.39 Admitted.

## IV. CAUSES OF ACTION

### Claims Against All Defendants

### Breach of Express Covenant — Specific Performance - Injunction

4.1    CBI realleges its responses to the preceding paragraphs.

4.2 Denied to the extent this allegation is deemed to apply to CBI, otherwise, Admitted.

4.3    Denied to the extent this allegation is deemed to apply to CBI, otherwise, Admitted.

4.4 Admitted.

### Breach of Express Covenant — Damages

4.5 CBI realleges its responses to the preceding paragraphs.

FIRST AMENDED ANSWER, DEFENSES
AND CROSS-CLAIMS OF CRESCENT BAR,
INC.
Page 5 of 26

4.6 Admitted.

**Third Party Beneficiary — Injunction**

4.7 CBI realleges its responses to the preceding paragraphs.

4.8 Admitted.

4.9 Admitted.

4.10 Admitted.

**Third Party Beneficiary — Damages**

4.11 CBI realleges its responses to the preceding paragraphs.

4.12   Denied to the extent this allegation is deemed to apply to CBI, otherwise, Admitted.

**Additional Claims Against the PUD and the Port**

**Due Process**

4.13 CBI realleges its responses to the preceding paragraphs.

4.14 Denied to the extent this allegation is deemed to apply to CBI, otherwise, Admitted.

4.15 Admitted.

4.16 Admitted.

**Additional Claims Against the PUD**

**Breach of Oral Covenant — Specific Performance — Injunction**

4.17 The allegations in this Paragraph are directed at other parties and CBI

FIRST AMENDED ANSWER, DEFENSES
AND CROSS-CLAIMS OF CRESCENT BAR,
INC.
Page 6 of 26

JOHNSTON LAWYERS, P.S.
2701 FIRST AVENUE, SUITE 340
SEATTLE, WA 98121
(206) 866-3230

accordingly provides no response to the same. To the extent any of the allegations in this Paragraph are deemed to apply to CBI, CBI admits the same.

4.18 The allegations in this Paragraph are directed at other parties and CBI accordingly provides no response to the same. To the extent any of the allegations in this Paragraph are deemed to apply to CBI, CBI admis the same.

4.19 The allegations in this Paragraph are directed at other parties and CBI accordingly provides no response to the same. To the extent any of the allegations in this Paragraph are deemed to apply to CBI, CBI admits the same.

4.20 The allegations in this Paragraph are directed at other parties and CBI accordingly provides no response to the same. To the extent any of the allegations in this Paragraph are deemed to apply to CBI, CBI admits the same.

4.21 The allegations in this Paragraph are directed at other parties and CBI accordingly provides no response to the same. To the extent any of the allegations in this Paragraph are deemed to apply to CBI, CBI admits the same.

**Breach of Oral Covenant — Damages**

4.22 CBI realleges its responses to the preceding paragraphs.

4.23 Denied to the extent this allegation is deemed to apply to CBI, otherwise, Admitted.

**Promissory Estoppel — 2023 Lease Term**

4.24 CBI realleges its responses to the preceding paragraphs.

FIRST AMENDED ANSWER, DEFENSES
AND CROSS-CLAIMS OF CRESCENT BAR,
INC.
Page 7 of 26

JOHNSTON LAWYERS, P.S.
2701 FIRST AVENUE, SUITE 340
SEATTLE, WA 98121
(206) 866-3230

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4.25 Admitted.

4.26 Admitted.

4.27 Admitted.

4.28 Admitted

**Promissory Estoppel — 2008 License Term**

4.29 CBI realleges its responses to the preceding paragraphs.

4.30 Admitted.

4.31 Admitted.

4.32 Admitted.

4.33 Admitted.

**<u>Additional Claims Against Crescent</u>**

**Breach of Oral Covenant — Damages**

4.34 CBI realleges its responses to the preceding paragraphs.

4.35 Denied.

4.36 Denied.

4.37 Denied.

4.38 Denied.

4.39 Denied.

**CROSS-CLAIMS**

CBI, for its Cross-Claims against Defendants PUBLIC   UTILITY

FIRST AMENDED ANSWER, DEFENSES
AND CROSS-CLAIMS OF CRESCENT BAR,
INC.
Page 8 of 26

JOHNSTON LAWYERS, P.S.
2701 FIRST AVENUE, SUITE 340
SEATTLE, WA 98121
(206) 866-3230

DISTRICT NO. 2 OF GRANT COUNTY ("PUD") and PORT OF QUINCY, PORT DISTRICT NO. 1 OF GRANT COUNTY ("Port"), alleges as follows:

## I.    PARTIES

1.    Cross-Claimant CBI is a for-profit corporation organized and existing under the laws of the State of Washington.

2.    Defendant PUD is a municipal corporation organized and existing under the laws of the State of Washington.

3.    Defendant Port is a municipal corporation organized and existing under the laws of the State of Washington.

## II.    JURISDICTION AND VENUE

4.    These Cross-Claims are for damages and injunctive relief brought by CBI against Defendants PUD and Port, and include claims, among others, against PUD and Port for violations of 42 U.S.C. § 1983.

5.    This case involves the construction, interpretation and enforcement of duties under federal administrative rules, regulations and/or orders, and in that regard subject matter jurisdiction in the above-entitled court is called out in 16 U.S.C. § 825p.

6.    These Cross-Claims include claims supplemental to federal claims brought by CBI and/or brought by other parties, and the above-entitled court has jurisdiction over such supplemental claims pursuant to 28 U.S.C.§ 1367.

FIRST AMENDED ANSWER, DEFENSES
AND CROSS-CLAIMS OF CRESCENT BAR,
INC.
Page 9 of 26

JOHNSTON LAWYERS, P.S.
2701 FIRST AVENUE, SUITE 340
SEATTLE, WA 98121
(206) 866-3230

7.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343(a)(1), and 1343(a)(4).

8.     Venue is proper in the above entitled court under 28 U.S.C. § 1391 because Defendants PUD and Port are located in, and conduct business in, its District, and because a substantial part of the events giving rise to CBI's claims arose in its District.

### III.   FACTS APPLICABLE TO ALL CAUSES OF ACTION

9.     In 1955, FERC issued a 50-year license to PUD to operate the Priest Rapids Hydroelectric Project ("Project") on the Columbia River ("1955 license").

10.    Crescent Bar Island ("CB Island") is an island located in the Columbia River within the Project boundaries.

11.    In 1962, PUD entered into a lease of CB Island to Port for "public and recreational purposes" which lease was scheduled to terminate in fifty-years in 2012 ("PUD-Port lease").

12.    The 1962 PUD-Port lease includes a provision incorporating by reference the terms and conditions of the 1955 FERC license.

13.    In 1970, Port subleased a large portion of CB Island to a developer, the predecessor of CBI ("Port-CBI lease"), which sold leasehold interests to members of the public for the development, among other things, of recreational homes and condominiums on the island.

FIRST AMENDED ANSWER, DEFENSES
AND CROSS-CLAIMS OF CRESCENT BAR,
INC.
Page 10 of 26

JOHNSTON LAWYERS, P.S.
2701 FIRST AVENUE, SUITE 340
SEATTLE, WA 98121
(206) 866-3230

14.   On or about February 8, 1973 the Port-CBI lease was modified to expressly extend the term of CBI's leasehold from 2012 to February 28, 2023 (because of the "financing requirements of the contemplated improvements") ("Port-CBI 1973 Lease Amendment").

15.   CBI, and purchasers of leasehold interests from CBI, including Plaintiffs, reasonably relied on the extension of the lease term to February 28, 2023 for purchasing, improving, and financing elements of CB Island, including a marina, golf course, campground, related commercial buildings, recreational residences and related infrastructure.

16.   Following the Port-CBI 1973 Lease Amendment, on or about March 6, 1973, PUD and Port entered into an amendment extending the term of the 1962 PUD-Port lease to 2023, subject to FERC approval ("PUD-Port 1973 lease amendment").

17.   The PUD-Port 1973 lease amendment stated the parties would "promptly ... submit" their proposed extended sublease for approval of FERC.

18.   CBI, and the known and future assignees of, or others claiming an interest through or under, CBI (hereafter for convenience sometimes called "assignees"), were and are intended beneficiaries of the PUD-Port 1973 lease amendment.

19.   In 1975, Port, with approval of PUD, entered into a second

FIRST AMENDED ANSWER, DEFENSES
AND CROSS-CLAIMS OF CRESCENT BAR,
INC.
Page 11 of 26

JOHNSTON LAWYERS, P.S.
2701 FIRST AVENUE, SUITE 340
SEATTLE, WA 98121
(206) 866-3230

amendment to the Port-CBI lease. That second amendment identified a dispute between the parties regarding the term of the Port-CBI lease.

20.    Over the next several years, CBI, Port and the PUD entered into other leases and segregation agreements concerning CB Island, all of which were intended to further CBI's investment in, and development of, CB Island for recreational and residential purposes.

21.    In 1979, PUD, Port and CBI entered into a new lease (purporting to replace all prior agreements), ("1979 lease"). The 1979 lease included a specific provision preserving CBI's right to claim its lease had been extended to 2023 and further included a term providing that PUD, Port, and CBI "reaffirm their desire to extend the term of the June 5, 1962 and this Lease Agreement until February 28, 2023," subject to FERC approval, if deemed necessary by the PUD.

22.    From the outset of the various leasehold dispositions of CB Island, PUD and Port each contemplated, authorized and promoted development of CB Island by CBI for recreational purposes and the subsequent sale/assignment of leasehold interests to individuals such as Plaintiffs and others for residential and recreational use. The 1979 lease affirmed those purposes.

23.    CBI and CBI's assignees have made substantial investments in CB Island in reasonable reliance upon the 1979 lease, its predecessor leases, the leasehold sales/assignments of CBI, and the promises, commitments,

FIRST AMENDED ANSWER, DEFENSES
AND CROSS-CLAIMS OF CRESCENT BAR,
INC.
Page 12 of 26

JOHNSTON LAWYERS, P.S.
2701 FIRST AVENUE, SUITE 340
SEATTLE, WA 98121
(206) 866-3230

undertakings, assurances and other actions, non-actions and statements of PUD and Port.   In this connection, CBI incorporates the allegations of Plaintiffs Complaint as though fully set forth.  CBI also asserts the admissions contained in the Answers of PUD and Port.

24.   In the 1979 lease Port and PUD each covenanted and agreed that "Application to the [FERC] for approval . . . shall be required" if the PUD deemed it necessary to seek approval.

25.   Port also covenanted and agreed in the 1979 lease that upon request, it would exercise "reasonable diligence" to get an extension of its lease with the PUD in order to give CBI a fifty (50) year extension of its lease term.

26.   CBI, and/or Plaintiffs as assignees of rights under the 1979 lease, have requested Port to exercise "reasonable diligence" to get an extension of the lease with the PUD in order to give CBI and its assignees a fifty (50) year extension of its lease term, and Port has failed to comply with this duty under the 1979 lease, and has breached its obligations under the 1979 lease.

27.   CBI, and Plaintiffs as assignees of rights under the 1979 lease, have requested PUD to get the required extension of CBI's lease with the PUD in order to give CBI and its assignees a fifty (50) year extension of its lease term, and PUD has failed to comply with this duty under the 1979 lease, and has breached its obligations under the 1979 lease.

28.   In 1979 PUD asked FERC to approve the 1979 lease, which at the time FERC neither granted nor denied, but held the issue in abeyance. Thereafter, neither PUD nor Port took any steps to have FERC approve the 1979 lease, its predecessor leases, or the sales/assignments of leasehold interests by CBI. In this connection, PUD advised that it elected to deal with requesting the required extension in the then upcoming re-licensing process.

29.   If it was in any way required that FERC approve the 1979 lease, its predecessor leases, or the sales/assignments of leasehold interests by CBI, that requirement was an inherent term of the leases to which PUD and/or Port were parties, and PUD's and/or Port's failure to seek and obtain any required approvals by the end of the license reapplication period constituted breaches of material terms of contracts to which CBI was a party and/or a third party beneficiary.

30.   In 1980 FERC changed its policy to allow approval of leases extending beyond the license term, i.e. beyond the termination of the then existing 1955 license scheduled for 2005. Following this change, Port failed to use reasonable diligence to urge the PUD to seek FERC approval of the 1979 lease, and PUD failed to seek FERC approval of the 1979 lease, its predecessor leases or the sales/assignments of leasehold interests by CBI, as it was required by the 1979 lease to do. Those failures constituted material breaches of the 1979

FIRST AMENDED ANSWER, DEFENSES
AND CROSS-CLAIMS OF CRESCENT BAR,
INC.
Page 14 of 26

JOHNSTON LAWYERS, P.S.
2701 FIRST AVENUE, SUITE 340
SEATTLE, WA 98121
(206) 866-3230

lease by PUD.

31.   Having not sought or obtained approval of FERC of the 1979 lease, its predecessor leases, or the sales/assignments of leasehold interests by CBI, PUD and Port are estopped from asserting, and/or have waived, any right, defense or avoidance which may otherwise be available to either of them arising from an absence of any required FERC approval.

32.   Having not sought or obtained approval of FERC of the 1979 lease, its predecessor leases, or the sales/assignments of leasehold interests by CBI, PUD and Port are obligated to compensate and/or indemnify CBI and its assignees, including Plaintiffs, for any and all damages proximately caused by any failure of PUD and/or Port to obtain any required FERC approval of the 1979 lease, its predecessor leases, or the sales/assignments of leasehold interests, to CBI, for a period through the end of the 2008 license (44 years after 2008, see below), and in all events to at least February 28, 2023.

33.   FERC was long aware of the 1979 lease, its predecessor leases, and the sales/assignments of leasehold interests by CBI, and in all events was fully aware thereof by at least 2003 when PUD sought renewal of the 1955 license. FERC took no steps to have PUD modify or rescind or otherwise take actions in regard to the 1979 lease, its predecessor leases, and the sales/assignments of leasehold interests by CBI.  The absence of action by FERC, enforcement or

FIRST AMENDED ANSWER, DEFENSES
AND CROSS-CLAIMS OF CRESCENT BAR,
INC.
Page 15 of 26

JOHNSTON LAWYERS, P.S.
2701 FIRST AVENUE, SUITE 340
SEATTLE, WA 98121
(206) 866-3230

otherwise, in the face of long knowledge of the subject leasing transactions, should be, as between and among the parties to this action, construed and interpreted as approval of such leasing transactions, in the absence of any remedial or contrary action by FERC.

34.    In 2005, PUD's 1955 license was to expire.

35.    In 2003, PUD applied for a new license and was granted an interim license while the application was pending.

36.    In 2008, FERC granted PUD a new forty-four (44) year license ("2008 license").

37.    During the license re-application process ("license re-application period") PUD and Port sought and obtained support of stakeholders, including CBI, Plaintiffs and other residents of CB Island, by overtly representing and promising no change to the uses and leasehold rights existing on CB Island, and an extension of the underlying leases.

38.    In reliance on the overt conduct, representations and promises of PUD and Port during the license re-application period, CBI and Plaintiffs expended substantial funds and labor of more than a temporary nature on, and in respect of, CB Island during the license re-application period.

39.    During the license re-application period, PUD and Port put forth plans for environmental and shoreland use purposes which were wholly

FIRST AMENDED ANSWER, DEFENSES
AND CROSS-CLAIMS OF CRESCENT BAR,
INC.
Page 16 of 26

JOHNSTON LAWYERS, P.S.
2701 FIRST AVENUE, SUITE 340
SEATTLE, WA 98121
(206) 866-3230

consistent with, and would continue, the existing uses on CB Island of CBI, the Plaintiffs and other interested parties.

40.     CBI, during the license renewal period, and currently, operates a marina, a golf course, a sewer system and other improvements and activities related to the recreational and other designated purposes identified and approved by Port and PUD in the 1979 lease, its predecessor leases and the sales/assignments of leasehold interests by CBI.

41.     The 2008 license required PUD to develop and submit a final Shoreline Management Plan ("SMP").

42.     The PUD was obligated by its conduct, promises and agreements, including but not limited to the 1979 lease and its predecessor leases, to submit a final SMP consistent with continued use of CB Island under the 1979 lease.

43.     In April 2010, the PUD submitted to FERC an amendment to its SMP that would eliminate residential use of CB Island after 2012, and fully take, and extinguish to CBI and to Plaintiffs, all of their property and interest in CB Island. ("2010 SMP").

44.     The 2010 SMP amendment was issued by PUD in bad faith and in violation of its specific duties, undertakings, covenants (including but not limited to the implied covenant of good faith and fair dealing) and promises in the 1979 lease, its predecessor leases, and in numerous communications on the subject

FIRST AMENDED ANSWER, DEFENSES
AND CROSS-CLAIMS OF CRESCENT BAR,
INC.
Page 17 of 26

JOHNSTON LAWYERS, P.S.
2701 FIRST AVENUE, SUITE 340
SEATTLE, WA 98121
(206) 866-3230

prior to the end of the license re-application period.

45.   Recently, and in furtherance of its bad faith conduct and breaches of contract, PUD, with the concurrence of Port, has ordered Plaintiffs to vacate the premises on or before June 1, 2012.

46.   If PUD and Port are not enjoined from taking steps (including any public statements) to enforce their attempts to remove CBI, Plaintiffs, and other interested parties, from CB Island, CBI and Plaintiffs will suffer immediate and irreparable damage and loss, for which monetary compensation will not be adequate, given the unique nature of CB Island. The destruction, damage and deterioration which will obviously and necessarily occur if PUD's demands for CBI and Plaintiffs to abandon CB Island will be material, irreparable, and unique to the property involved.

47.   There is pending an appeal to FERC by Plaintiffs, which is supported by, and the outcome of which would benefit, CBI, which may in and of itself prevent any ability of PUD or Port to evict CBI from CB Island, partially or completely.

48.   The balance of equities, *pendente lite*, as to this case and the said FERC appeal, resides with retaining the *status quo ante*, by injunction or other appropriate equitable order, which continues the tenancies of CBI and the Plaintiffs until at least final judgment in the above entitled case.   In this

FIRST AMENDED ANSWER, DEFENSES
AND CROSS-CLAIMS OF CRESCENT BAR,
INC.
Page 18 of 26

connection, the loss or damage to PUD or Port from any such continuation of the existing tenancies, is minimal, and indeed, it may reduce costs or expenses to each and both of those parties, by preventing the necessity of their restoring the tenancies, improvements, and paying for the loss of use, relocation and additional massive expenses, should the eviction ultimately be held to have been wrongful. Further, in this connection, public policy favors not disturbing a disputed tenancy that is not a nuisance, *pendente lite*.

49.    CBI has either a right to exclusively maintain, use and occupy its leased property at least until 2023 and in fact until the end of the term of the 2008 license, and/or a right to just compensation from the PUD and the Port, jointly and severally, for any removal therefrom, partial or complete, earlier than anticipated.

50.    PUD and Port each have, and at all times since 1979 had, a legal obligation to seek and/or cause FERC's approval of a lease extension to at least 2023, of the 1979 lease, its predecessor leases and the sales/assignments of leasehold interests by CBI, or a functional equivalent thereof, and each of PUD and Port are in active and continuing breach of that legal obligation.

51.    PUD and Port each have, and at all times since 1979 had, a legal duty to take no action inconsistent with or contrary to their several legal obligations to seek and/or cause FERC's approval of a lease extension to at least 2023, of the

FIRST AMENDED ANSWER, DEFENSES
AND CROSS-CLAIMS OF CRESCENT BAR,
INC.
Page 19 of 26

JOHNSTON LAWYERS, P.S.
2701 FIRST AVENUE, SUITE 340
SEATTLE, WA 98121
(206) 866-3230

1979 lease, its predecessor leases and the sales/assignments of leasehold interests by CBI, or a functional equivalent thereof, and each of PUD and Port are in active and continuing breach of that legal duty.

## IV.   CAUSES OF ACTION

### Breach of Express Covenant – Implied Covenants – Specific Performance – Injunction - Damages

52.   CBI re-alleges the preceding paragraphs as though fully set forth herein.

53.   Defendants PUD and Port have each failed and refused to honor their obligations under the clear language of the 1979 Lease, including the obligation to immediately and in good faith seek FERC approval of the 2023 lease term.

54.   Defendants PUD and Port have each failed and refused to honor their obligations to act in good faith, or to deal fairly, with CBI and with Plaintiffs, in regard to said Defendants' duties and undertakings in the 1979 lease and its predecessor leases.

55.   Defendants' conduct constitutes breaches of the 1979 lease express and implied covenants.  CBI has been damaged by the conduct of Defendants and the damages are continuing.  As a proximate result of the breaches, CBI has been damaged in an amount to be proved at the time of trial.

56.   As real property is unique, money damages alone will not provide an

FIRST AMENDED ANSWER, DEFENSES
AND CROSS-CLAIMS OF CRESCENT BAR,
INC.
Page 20 of 26

JOHNSTON LAWYERS, P.S.
2701 FIRST AVENUE, SUITE 340
SEATTLE, WA 98121
(206) 866-3230

adequate remedy to CBI.  Therefore, CBI is entitled to specific performance of the 1979 lease, and to injunctive relief, temporary and/or permanent, to prevent any of the Defendants from evicting it, or Plaintiffs or other interested parties, from all or any part of CB Island which they now occupy.

## Due Process and Conspiracy

57.   CBI re-alleges the preceding paragraphs as though fully set forth herein.

58.   The conduct of the PUD and the Port, their agents, representatives, employees, and officers, as described above, have deprived and/or threatened to deprive, CBI of its interests in their CB Island property without due process and without just compensation, as required under U.S. Constitution Amendment XIV and Washington Constitution Article I, Section 3; and under U.S. Constitution Amendment V and Washington Constitution Article I, Section 16.

59.   CBI has been damaged as a result of the PUD and Port's conduct in the manner and amounts to be proven at trial.

60.   The conduct of PUD and Port was concerted action.

61.   Pursuant to 42 U.S.C. §§ 1983 and 1985, CBI is entitled to economic damages in such amounts as shall be determined at the time of trial.  In addition, under 42 U.S.C. § 1988, CBI is entitled to reasonable attorney fees and costs.

## Estoppel, Promissory Fraud and Material Misrepresentation

FIRST AMENDED ANSWER, DEFENSES
AND CROSS-CLAIMS OF CRESCENT BAR,
INC.
Page 21 of 26

JOHNSTON LAWYERS, P.S.
2701 FIRST AVENUE, SUITE 340
SEATTLE, WA 98121
(206) 866-3230

62.    CBI re-alleges the preceding paragraphs as though fully set forth herein.

63.    During the license reapplication period of 2003 to 2008, PUD and Port each made promises and commitments, and took actions and non-actions, as aforesaid, intending that CBI would irrevocably change its position to the detriment of CBI and Plaintiffs.

64.    Port and PUD, at the time their respective promises, commitments, actions and non-actions during the license reapplication period, as aforesaid, were made or taken, did not intend to keep such promises or commitments and intended to act contrary to their actions vis-à-vis CBI and Plaintiff, and such actions, promises and commitments were therefore fraudulent and/or constituted promissory fraud and/or actionable material misrepresentations.

65.    During the license reapplication period CBI, in reasonable reliance upon the promises, commitments and actions and non-actions as aforesaid, did irrevocably change its position to its detriment, by, among other things, expending funds for and upon improvements and operations on CB Island reasonably expecting its tenancy to continue to at least 2023, and not taking alternate actions to otherwise secure the continued tenancy to which it was entitled.

66.    PUD and Port are estopped, under both the doctrines of promissory

FIRST AMENDED ANSWER, DEFENSES
AND CROSS-CLAIMS OF CRESCENT BAR,
INC.
Page 22 of 26

JOHNSTON LAWYERS, P.S.
2701 FIRST AVENUE, SUITE 340
SEATTLE, WA 98121
(206) 866-3230

and equitable estoppel, to assert or take any action inconsistent with the continued tenancy of CBI or Plaintiffs to at least February 28, 2011.

67.     PUD and Port, under the doctrine to promissory estoppel, is liable to CBI for any and all damages proven at trial to have proximately resulted from an asserted or actual termination of its tenancies on CB Island at any time prior to February 28, 2023.

68.     The conduct of PUD and Port, which caused damage to CBI and Plaintiff constitutes promissory fraud and/or actionable material misrepresentation.

### Declaration

69.     CBI re-alleges the preceding paragraphs as though fully set forth herein.

70.     An actual controversy exists between CBI and Port as to the expiration date of the 1979 Lease.

71.     By the 1973 Port-CBI Lease Amendment, the parties agreed to extend the term of the sublease from Port to CBI, to February 23, 2023.

72.     The sublease from Port to CBI currently expires no earlier than February 23, 2023.

73.     CBI is entitled to a declaration stating that the sublease term from Port to CBI expires no earlier than February 23, 2023.

FIRST AMENDED ANSWER, DEFENSES
AND CROSS-CLAIMS OF CRESCENT BAR,
INC.
Page 23 of 26

JOHNSTON LAWYERS, P.S.
2701 FIRST AVENUE, SUITE 340
SEATTLE, WA 98121
(206) 866-3230

74.   The Court has jurisdiction to hear this claim under 28 U.S.C. § 1367.

**Wherefore, CBI prays for judgment as follows:**

1.   For specific performance of the 1979 lease, including the 2023 lease termination date;

2.   For a declaration of the 2023 lease termination date;

3.   For specific performance of the lease termination date coincident with the end of the 2008 license, i.e. 2052;

4.   In the alternative, for damages in such amount as the Court deems just and equitable for the early termination of the tenancies of CBI and the Plaintiffs;

5.   For preliminary injunction preventing any termination of any portion of the tenancies of CBI and/or Plaintiffs, *pendente lite*.

6.   For reasonable attorney fees and costs;

7.   For such other and further relief as the Court deems just and equitable.

8.   CBI demands a trial by jury.

Respectfully submitted this 30th day of March, 2012.

JOHNSTON LAWYERS, P.S.

By s/ R. Bruce Johnston
R. Bruce Johnston, WSBA No. 4646
Emanuel F. Jacobowitz, WSBA No. 39991
2701 First Avenue, Suite 340
Seattle, WA 98121

FIRST AMENDED ANSWER, DEFENSES
AND CROSS-CLAIMS OF CRESCENT BAR,
INC.
Page 24 of 26

JOHNSTON LAWYERS, P.S.
2701 FIRST AVENUE, SUITE 340
SEATTLE, WA 98121
(206) 866-3230

1

Telephone: (206) 866-3230
Fax: (206) 866-3234
email: bruce@rbrucejohnston.com
email: mannyj@rbrucejohnston.com

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

FIRST AMENDED ANSWER, DEFENSES
AND CROSS-CLAIMS OF CRESCENT BAR,
INC.
Page 25 of 26

JOHNSTON LAWYERS, P.S.
2701 FIRST AVENUE, SUITE 340
SEATTLE, WA 98121
(206) 866-3230

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of March, 2012 I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the following:

Scott B. Henrie:  shenrie@williamskastner.com
Manish Borde:  mborde@williamskastner.com
Christopher F. Ries:  chrisr@rieslawfirm.com
Michael B. Tierney:  tierney@tierneylaw.com
Glenn J. Amster:  gamster@kantortaylor.com
Dale M. Foreman:  dale@daleforeman.com
Daniel J. Appel: attorneyappel@gmail.com;
James M. Kalamon: james.kalamon@painehamblen.com
Dale A. DeFelice: dale.deflice@painehamblen.com
Brook L. Cunningham: brook.cunningham@painehamblen.com
Lewis W. Card: lew@dadkp.com
Quentin Batjer: quentin@dadkp.com


s/ R. Bruce Johnston
R. Bruce Johnston, WSBA No. 4646
JOHNSTON LAWYERS, P.S.
2701 First Avenue, Suite 340
Seattle, WA 98121
Telephone: (206) 866-3230
Fax: (206) 866-3234
email: bruce@rbrucejohnston.com

FIRST AMENDED ANSWER, DEFENSES
AND CROSS-CLAIMS OF CRESCENT BAR,
INC.
Page 26 of 26

JOHNSTON LAWYERS, P.S.
2701 FIRST AVENUE, SUITE 340
SEATTLE, WA 98121
(206) 866-3230

# EXHIBIT B

| | |
|---|---|
| **From:** | Kelly Larimer <Klarime@gcpud.org> |
| **Sent:** | Wednesday, March 10, 2010 12:30 PM |
| **To:** | Whittaker, John A. |
| **Subject:** | FW: Priest Rapids No. 2114-208 - Shoreline Management Plan Additional Information Request |
| **Attachments:** | P-2114-208 AIR.pdf |

FYI

From: Christopher Yeakel [mailto:Christopher.Yeakel@ferc.gov]
Sent: Wednesday, March 10, 2010 12:08 PM
To: Kelly Larimer
Subject: Priest Rapids No. 2114-208 - Shoreline Management Plan Additional Information Request

Kelly,

As you discussed with Bob Fletcher this morning, I am forwarding a signed copy of the additional information request regarding Crescent Bar.

<<P-2114-208 AIR.pdf>>

Regards,

Christopher Yeakel

Environmental Biologist

Division of Hydropower

Administration and Compliance

(202)-502-8132

FEDERAL ENERGY REGULATORY COMMISSION
WASHINGTON, D.C. 20426

OFFICE OF ENERGY PROJECTS

Project No. 2114-208—Washington
Priest Rapids Hydroelectric Project
Public Utility District No. 2 of
Grant County, Washington

Ms. Kelly Larimer
Public Utility District No. 2
 of Grant County
P.O. Box 878
Ephrata, WA 98823

MAR 1 0 2010

Re: Article 419 – Shoreline Management Plan – Crescent Bar Island

Dear Ms. Larimer:

This letter is in reference to your shoreline management plan (SMP) filed on March 2, 2010, pursuant to article 419 of the license for the Priest Rapids Hydroelectric Project (FERC No. 2114).[1]  The project is located on the mid-Columbia River, in portions of Grant, Yakima, Kittitas, Douglas, Benton, and Chelan Counties Washington, and occupies approximately 3,052 acres of federal lands managed by the U.S. Bureau of Land Management, U.S. Department of the Army, U.S. Fish and Wildlife Service, and U.S. Department of Energy.

Article 419 of the project license requires you to file, for Commission approval, and SMP to protect the scenic quality of the mid-Columbia River.  Among other things, article 419 requires that provisions for the following be included in the SMP to protect and enhance Crescent Bar Island: (1) a trail; (2) dredging the existing boat channel and lengthening the existing boat launch; (3) removing six existing recreational vehicle campsites; (4) a directional sign; (5) picnic tables; (6) a vault toilet; and (7) a map that clearly identifies the location of project recreation sites, including the trail and its length, as well as the existing disturbed footprint.  You are also required to include a construction schedule, cost estimates for construction and maintenance of the facilities, provisions for soil erosion and sediment control measures as required by license article 303, and a discussion of how the universal accessibility has been considered in the planning and design of the facilities.  Article 419 requires that Crescent Bar Island be managed under the Planned Development and Conservation land use classifications, and that no further development, except for the trail, shall occur beyond the existing disturbed footprint.

---

[1] See Order Issuing New License (123 FERC ¶ 61,049), issued April 17, 2008.

Project No. 2114-208                        - 2 -

Your filing indicates (page 4) that the measures required by article 419 to improve public recreation access, and protect and enhance wildlife habitat and scenic quality at Crescent Bar Island would occur after the final lease with the Port of Quincy expires in 2012. Further, the proposed SMP indicates that you plan to implement the recreation enhancements at Crescent Bar Island under the recreation resource management plan (RRMP) required by article 418, and have submitted an application with the Commission proposing to amend the RRMP accordingly.[2]

Upon review of your filing, we have determined an immediate need for information necessary to complete our review of your application. Specifically, we need a better understanding of your intended proposals with respect to improving public recreation access and use, and protecting and enhancing wildlife habitat and scenic quality of Crescent Bar Island upon expiration of the existing leases in 2012. In this regard, please note that the Commission does not condone residential development and occupancy of project lands, since such residential use is inconsistent with the Commission's policy of maximizing public recreational development.[3] Consequently, your plan must demonstrate compliance with the Commission's policies on this issue. To address this issue, you should file a plan and schedule which outlines how you will accomplish the goals set by article 419 with regard to Crescent Bar Island.

Please file an original and 8 copies of the requested information by April 30, 2010, with:

The Secretary
Federal Energy Regulatory Commission
Mail Code: DHAC PJ-12.1
888 First Street NE
Washington, DC 20426

Thank you for your cooperation in this matter. If you have any questions, please contact Christopher Yeakel at (202)-502-8132.

Sincerely,

Robert J. Fletcher
Chief, Land Resources Branch
Division of Hydropower
Administration and Compliance

---

[2] See SMP at p. 4. The application to amend the RRMP was filed on February 26, 2010, and will be addressed in a separate proceeding.

[3] 18 C.F.R. § 2.7

# EXHIBIT C

David E. Sonn                                    THE HONORABLE JUSTIN L. QUACKENBUSH
Jeffers, Danielson, Sonn & Aylward, P.S.
P.O. Box 1688
Wenatchee, WA 98807-1688
(509) 662-3685 / (509) 662-2452 FAX

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

JAMES V. KELLY; LAWRENCE H.            )
AND H. TERESA CAIN; RANDALL S.         )   NO. CV-11-023-JLQ
AND MARGRET R. HOEFER; RONALD          )
A. AND JOYCE E. KARLSTEN; GARY         )   MEMORANDUM IN SUPPORT OF
B. AND KAREN S. WIRTA; XAVIER H.       )   MOTION TO DISMISS COMPLAINT
AND JEANNE B. RAMIREZ;                  )   AGAINST PUD – LACK OF SUBJECT
CRESCENT BAR CONDOMINIUM               )   MATTER JURISDICTION
MASTER ASSOCIATION; CRESCENT           )
BAR RECREATIONAL VEHICLE               )
HOME OWNERS ASSOCIATION; and           )
CRESCENT BAR SOUTH R.V. PARK           )
OWNERS ASSOCIATION,                     )
                                        )
        Plaintiffs,                     )
                                        )
    vs.                                 )
                                        )
PUBLIC UTILITY DISTRICT NO. 2 OF       )
GRANT COUNTY; PORT OF QUINCY,          )
PORT DISTRICT NO. 1 OF GRANT           )
COUNTY; and CRESCENT BAR, INC.,        )
                                        )
        Defendants.                     )
_____)

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
COMPLAINT AGAINST PUD – LACK OF SUBJECT
MATTER JURISDICTION Page 1
846140

FERC licensing orders.

…

Styling its complaint as an independent action against the NMFS does not enable the City of Tacoma to evade the clear jurisdictional provision of the FPA….and Congress's clear intent in enacting the special FPA review process.

*City of Tacoma, Washington*, at 93.

FERC issued to the PUD a license to operate and maintain the Priest Rapids Hydroelectric Project, subject to the requirement that the PUD "file for Commission approval a final Shoreline Management Plan" that contains "a provision to protect and enhance Crescent Bar Island." The license specifies that the "Commission reserves the right to require changes to the plan" and requires the PUD to implement the plan that the Commission approves "including any changes required by the Commission."

FERC responded to the PUD's 3/2/10 Shoreline Management Plan, directing the PUD to submit a Shoreline Management Plan that "must demonstrate" "compliance with the Commission's policies" "of maximizing public recreational development." FERC cautioned that "the Commission does not condone residential development and occupancy of project lands." The PUD did as FERC directed, and plaintiffs in this suit, CBCMA and CBRVHA, each on behalf of itself and their members, have intervened in the FERC licensing proceeding, arguing to FERC that "Residential use of Crescent Bar Island is within the interests addressed by the Project's License." FERC has not yet

# EXHIBIT D

# FW: Grant PUD--proposal to address Crescent Bar Island

| | |
|---|---|
| **From:** | Whittaker, John A. |
| **To:** | Kelly Larimer, Mitchell Delabarre |
| **Date:** | 2010/02/25 05:37 |
| **Subject:** | FW: Grant PUD--proposal to address Crescent Bar Island |

Kelly &Mitch,

███████████████████████████████████████. John

John A. Whittaker, IV
Partner

Winston &Strawn LLP
1700 K Street, N.W.
Washington, D.C. 20006-3817
T: 202-282-5766
F: 202-282-5100
E: jwhittak@winston.com

-----Original Message-----
From: Robert Fletcher [mailto:Robert.Fletcher@ferc.gov]

Sent: Thursday, February 25, 2010 7:09 AM
To: Whittaker, John A.
Subject: RE: Grant PUD--proposal to address Crescent Bar Island

John,

We don't have a problem sending a letter using something like you have
stated below. Look forward to seeing the filing....

-----Original Message-----
From: Whittaker, John A. [mailto:JWhittak@winston.com]

Sent: Friday, February 05, 2010 10:38 AM
To: Robert Fletcher
Subject: Re: Grant PUD--proposal to address Crescent Bar Island

Thanks Bob. Stay safe in the snow.

--------------------------
Sent from my BlackBerry Wireless Handheld

EXH ___ DATE 7/17/13
WITNESS _____
ALISON HOWZE

7022

----- Original Message -----
From: Robert Fletcher
To: Whittaker, John A.
Sent: Fri Feb 05 09:24:46 2010
Subject: RE: Grant PUD--proposal to address Crescent Bar Island

John,


Th approach sounds good. I'll discuss internally next week and get back
to you.


Bob

_____

From: Whittaker, John A. [mailto:JWhittak@winston.com]
Sent: Thu 2/4/2010 7:52 PM
To: Robert Fletcher
Subject: Grant PUD--proposal to address Crescent Bar Island


Bob,
I have talked with Grant PUD on the preferred FERC approach for
having Grant PUD address the issue of the existing residential
development at Crescent Bar Island following the expiration of the
current leases in 2012. In order to assist the PUD and its staff in
rolling out the plan we discussed with you on January 20, we believe it
would be best for the initial communication on the matter to come from
FERC, not Grant PUD. We suggest that FERC could send Grant PUD a letter
after the SMP is filed that would say something along the lines set out
below. We plan on filing the SMP with FERC the week of March 1. A letter
back from FERC before the end of March would be greatly appreciated
since we plan on rolling out the plan to the public on April 5. Note
that the language below avoids the need to characterize what has
happened at Crescent Bar Island as a compliance issue. Let me know what
you think after you and Heather have had a chance to review the proposed
letter language below. Thanks for your help. John

"We have reviewed the Shoreline Management Plan (SMP) that Grant PUD
filed on March__, 2010, pursuant to the requirements of Article 419. As
you are aware, Article 419 specifies that the SMP is to include
provisions to protect and enhance Crescent Bar Island. According to the
filed SMP (at p. 4), measures to improve public recreation access and
use, while protecting and enhancing wildlife habitat and the scenic
quality, of Crescent Bar Island will occur after the existing lease with
the Port of Quincy expires in 2012.

In order for the Commission to evaluate the filed SMP, it needs a better
understanding of Grant PUD's intended proposals with respect to
improving public recreation access and use and protecting and enhancing
wildlife habitat and scenic quality of Crescent Bar Island upon the
expiration of the existing leases in 2012. Consequently, please file
with the Commission no later than December 31, 2010, a plan to
accomplish the above-referenced goals. In this regard, please note that
the Commission does not condone residential development and occupancy of
project lands, since such residential use is inconsistent with the
Commission's policy of maximizing public recreational development set
forth in 18 C.F.R. 2.7. See East Bay Municipal Utility District, 64
FERC 61,043 at p. 61,366 (1993). Consequently, your plan must
demonstrate compliance with the Commission's policies on this issue."

John A. Whittaker, IV

Partner

Winston &Strawn LLP

1700 K Street, N.W.

Washington, D.C. 20006-3817

T: 202-282-5766

F: 202-282-5100

E: jwhittak@winston.com

The contents of this message may be privileged and confidential.          702252-9

Therefore, if this message has been received in error, please delete it
without reading it. Your receipt of this message is not intended to
waive any applicable privilege. Please do not disseminate this message
without the permission of the author.
*****************************************************************************
******

Any tax advice contained in this email was not intended to be used, and
cannot be used, by you (or any other taxpayer) to avoid penalties under
the Internal Revenue Code of 1986, as amended.


The contents of this message may be privileged and confidential.
Therefore, if this message has been received in error, please delete it
without reading it. Your receipt of this message is not intended to
waive any applicable privilege. Please do not disseminate this message
without the permission of the author.
*****************************************************************************
******

Any tax advice contained in this email was not intended to be used, and
cannot be used, by you (or any other taxpayer) to avoid penalties under
the Internal Revenue Code of 1986, as amended.


The contents of this message may be privileged and confidential. Therefore, if this message has been received in
error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege.
Please do not disseminate this message without the permission of the author.
*****************************************************************************************
Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other
taxpayer) to avoid penalties under the Internal Revenue Code of 1986, as amended.

# EXHIBIT E

1

2              UNITED STATES DISTRICT COURT

3            EASTERN DISTRICT OF WASHINGTON

3 ----------------------------------------------

4 IN RE:                )

5 CRESCENT BAR LITIGATION   ) No. CV-11-023-JLQ

6                      )

7 ----------------------------------------------

8      DEPOSITION UPON ORAL EXAMINATION

9                OF

10              BOB BERND

11

12

13 Date:        December 19, 2013

14

15 Location:    Davis, Arneil Law Firm, LLP
16             617 Washington Street
              Wenatchee, Washington  98801

17

18 Start Time:     9:32 a.m.

19 End Time:       5:31 p.m.

20 Total Time On Record:  6 Hours and 14 Minutes

21

22

23

24

25 REPORTED BY:    CHARLENE M. BECK, CCR, RPR
              CCR # 2543

1
WENATCHEE VALLEY COURT REPORTING
509.888.3376 wvcr@nwi.net

---

1 APPEARANCES:

2 For the Plaintiffs Kelly,   MR. LEWIS W. CARD
3 Wirta, and Crescent Bar    Davis, Arneil Law Firm
  Recreational Vehicle      Attorneys at Law
4 Homeowners Association:   617 Washington Street
                P.O. Box 2136
5                Wenatchee, WA  98807
                (509) 662-3551

6 For the Plaintiffs    MR. DALE M. FOREMAN
  Hoefer, Karlsten, and    Law Offices of Dale M.
7 Crescent Bar Condominium  Foreman, P.S.
  Master Association:      Attorneys at Law
8                124 North Wenatchee
                Avenue, Suite A
9                P.O. Box 3125
                Wenatchee, WA  98807
10               (509) 662-9602

11 For the Defendant Public  MR. JAMES M. KALAMON
12 Utility District No. 2 of  Paine Hamblen
  Grant County:         Attorneys at Law
13               717 West Sprague Avenue,
               Suite 1200
14               Spokane, WA  99201-3505
               (509) 455-6000
15               james.kalamon@
               painehamblen.com

16               MR. MITCHELL P. DELABARRE
17               Grant County Public
               Utility District
18               General Counsel
               P.O. Box 878
19               Ephrata, WA  98823
               (509) 793-1565
20               mdelaba@gcpud.org

21 ***APPEARING TELEPHONICALLY:
  For the Defendant Port   MR. MICHAEL B. TIERNEY
22 of Quincy:            Tierney & Blakney, P.C.
               Attorneys at Law
23               2955 80th Avenue S.E.,
               Suite 102
24               Mercer Island, WA  98040
               (206) 232-3074
25               tierney@tierneylaw.com

2
WENATCHEE VALLEY COURT REPORTING
509.888.3376 wvcr@nwi.net

---

1           I N D E X

2  EXAMINATION           PAGE

3  MR. CARD             5

4  MR. FOREMAN         176

5  MR. KALAMON        203

6

7  FURTHER EXAMINATION

8  MR. CARD           214

9

10

11     I N D E X  O F  E X H I B I T S

12              MARKED  IDENTIFIED

13 EXHIBIT NUMBER 209    47      47
  Handwritten notes/minutes

14

15 EXHIBIT NUMBER 210   190    190
  E-mails Re: Crescent Bar
  questions and public comment
16 by Bob Bernd

17 EXHIBIT NUMBER 211   197    197
  Memorandum dated April 13, 2010
18 Subject: Request for motion to
  approve option for Crescent Bar
19 Island lease

20

21                 REFERRED TO

22 EXHIBIT NUMBER 43        86

23 EXHIBIT NUMBER 45      111

24 EXHIBIT NUMBER 46      116

25 EXHIBIT NUMBER 57      117

3
WENATCHEE VALLEY COURT REPORTING
509.888.3376 wvcr@nwi.net

---

1    I N D E X (Continued)

2                REFERRED TO

3 EXHIBIT NUMBER 62      102

4 EXHIBIT NUMBER 64      130

5 EXHIBIT NUMBER 66      105

6 EXHIBIT NUMBER 70      106

7 EXHIBIT NUMBER 81      104

8 EXHIBIT NUMBER 85      126

9 EXHIBIT NUMBER 86      120

10 EXHIBIT NUMBER 93     101

11 EXHIBIT NUMBER 107    95

12 EXHIBIT NUMBER 109    100

13 EXHIBIT NUMBER 113    99

14 EXHIBIT NUMBER 148    134

15 EXHIBIT NUMBER 149    139

16 EXHIBIT NUMBER 160    176

17 EXHIBIT NUMBER 161    176

18 EXHIBIT NUMBER 163    167

19 EXHIBIT NUMBER 168    147

20 EXHIBIT NUMBER 185    96

21 EXHIBIT NUMBER 186    98

22 EXHIBIT NUMBER 203    125

23

24

25

4
WENATCHEE VALLEY COURT REPORTING
509.888.3376 wvcr@nwi.net

1    land, I don't --
2        **Prior to when?**
3  Q  All right.  Your point is well taken.  And I keep
4    doing that, and I don't do it intentionally, so I'll
5    try to be more careful about that.
6        Prior to April 26, 2010, did you get any letter
7    from FERC that said the private residences, the lots
8    and the condominiums, could not remain on the island
9    after the lease with the Port expired?
10 A  **No.  But I -- I think right here it says that --**
11 A  **Well --**
12 A  **-- "residential use is inconsistent with" our policy.**
13 Q  But you just told me, I thought, that you didn't take
14    that to mean they couldn't stay after 2012?
15        MR. KALAMON:  That mischaracterizes his
16    answer.  He said it raised a doubt in his mind if FERC
17    would allow them to stay after the lease expired.
18        MR. CARD:  Okay.
19 Q  (By Mr. Card) But it didn't lead you to conclude that
20    you had to eliminate the private uses out there on the
21    island, did it, that letter?
22 A  **No.  It led me to conclude that they may be precluded.**
23 Q  All right.  And my follow-up question was then:  You
24    never did get a letter from FERC that said they are
25    precluded?

137
WENATCHEE VALLEY COURT REPORTING
509.888.3376  wvcr@nwi.net

1  A  **No.**
2  Q  Was it your understanding that this was the first time
3    that you had heard from FERC, "this" being Exhibit
4    148, about their position regarding the need in a
5    Shoreline Management Plan to limit private residential
6    use?
7  A  **I don't know how it relates to private residential**
8    **use, but I thought a condition of our Shoreline Plan**
9    **-- I mean, of our license was that we would submit a**
10    **Shoreline Management Plan and a Resource Recreation**
11    **Management Plan by certain -- within certain**
12    **guidelines.  And then I believe this is in reference**
13    **to our Shoreline Management Plan.**
14 Q  I guess I --
15 A  **But -- but no, I don't remember getting something**
16    **specific from them about:  You have to terminate those**
17    **lea-- those leases or that -- or that -- that the**
18    **lease cannot be renewed.**
19 Q  Okay.  You're aware, aren't you, that this letter was
20    one of the things that the Commission pointed to when
21    it made its decision on April 26, 2010, not to renew
22    the lease with the Port?
23 A  **That was one of the things the Commission I served on**
24    **took into consideration.**
25 Q  Okay.  Did to your knowledge --

138
WENATCHEE VALLEY COURT REPORTING
509.888.3376  wvcr@nwi.net

1        Well, let me restate that.
2        Were you aware that it was the PUD who sought
3    this letter from FERC?
4        MR. KALAMON:  Objection as to the form of
5    the question.
6        MR. CARD:  Well, let me restate it then.
7  Q  (By Mr. Card) Were you aware of whether or not the PUD
8    sought this letter from FERC?
9        MR. KALAMON:  Again, objection to the use of
10    the term "sought this letter".  I think that
11    mischaracterizes the testimony and the evidence.
12 A  **I am -- I'm not aware.  We -- it would seem only**
13    **reasonable that we would have sought some**
14    **clarification as to their position on private use of**
15    **project property.**
16 Q  Okay.  I want to show you Exhibit 149.  And Exhibit
17    149 is a letter from an attorney named John Whittaker
18    to Kelly Larimer and Mitch Delabarre.  And it includes
19    an e-mail chain where he's corresponding with Bob
20    Fletcher -- or Robert Fletcher, I guess -- at FERC.
21    And I want to give you a second to review that, and
22    then I'm going to ask you some questions about it.
23 A  **Okay.**
24 Q  All right.
25 A  **Oh, I didn't see this part over here.**

139
WENATCHEE VALLEY COURT REPORTING
509.888.3376  wvcr@nwi.net

1  Q  Okay.  Take your time.
2  A  **I have trouble getting these things in the right**
3    **order.  I want to read them sequentially.  So I guess**
4    **9, 10.**
5        MR. KALAMON:  Yeah, that one.
6
7        (Brief pause.)
8
9  A  **Okay.**
10 Q  All right.  Have you ever seen that e-mail chain,
11    Exhibit --
12        MR. CARD:  Oh, God, I can't remember the
13    number.
14        MR. FOREMAN:  149.
15 Q  -- 149, have you ever seen that before today?
16 A  **No.**
17 Q  In this letter you understand that John Whittaker, the
18    attorney for the PUD, is asking FERC to send them a
19    letter regarding the SMP, right?
20 A  **Yes.**
21        MR. KALAMON:  Object to the form of that
22    question.  It's a follow-up to a meeting that
23    Whittaker had with FERC, and so he's providing them
24    some suggested language.
25 Q  So you understand that Mr. Whittaker in this e-mail is

140
WENATCHEE VALLEY COURT REPORTING
509.888.3376  wvcr@nwi.net

1 asking FERC to issue a letter that has language that
2 he suggests?
3          MR. KALAMON:  Is that the question?
4          MR. CARD:  Yeah.
5          MR. KALAMON:  So the documents speak for
6 themselves.  This witness has no independent knowledge
7 about this.
8          So what is the question, just --
9          MR. CARD:  I've already asked the question.
10 I mean --
11          MR. KALAMON:  Well, read it back then.
12 Let's see what -- what is the question?
13
14          (Previous question read.)
15
16          MR. KALAMON:  Okay.
17 A   **The date of the letter from FERC was March the 10th --**
18 Q   (By Mr. Card) Yes.
19 A   **-- of 2010.  This was subsequent to --**
20 Q   No.  This is --
21 A   **-- our telephone conversation.**
22 Q   No.  Exhibit 149 is February 25th, 2010.
23 A   **Oh, February 25th, okay.**
24          **I see that he has asked them to clarify their**
25          **position and that their -- their position was very**

141
WENATCHEE VALLEY COURT REPORTING
509.888.3376  wvcr@nwi.net

1          **similar to what he suggested.  Evidently they had had**
2          **some prior discussions regarding this.**
3 Q   Right.  And what Mr. Fletcher says is "I have talked
4 with" --
5          And this is on the second page of the e-mail
6 chain that's Exhibit 149.
7 A   **Okay.**
8 Q   "I have talked with Grant PUD on the preferred FERC
9 approach for having Grant PUD address the issue of the
10 existing residential development at Crescent Bar
11 Island following the expiration of the current leases
12 in 2012.  In order to assist the PUD and its staff in
13 rolling out the plan we discussed with you on January
14 20, we believe it would be best for the initial
15 communication on the matter to come from FERC, not
16 Grant PUD."  Do you see that?
17 A   **I do.**
18 Q   Do you recall any discussions brought to your
19 attention at the Commission level about getting FERC
20 to issue some kind of letter so that Grant PUD
21 wouldn't be the initial communication on this topic
22 that's in the March 10th letter?
23 A   **I seem to remember Grant wanting FERC to clarify its**
24          **position.  And I -- I guess we felt it would -- my**
25          **feeling is we felt it would be easier if FERC would**

142
WENATCHEE VALLEY COURT REPORTING
509.888.3376  wvcr@nwi.net

1          **tell us what their position was rather than us to keep**
2          **taking stabs in the dark as to what their position**
3          **might or might not be.**
4 Q   All right.  And do you know why it was then that
5 Mr. Whittaker proposed the language that he wanted
6 FERC to use in the letter to you?
7          MR. KALAMON:  Objection.  You're asking him
8 to speculate as to what Whittaker's intent was, and he
9 can't do that.
10          MR. CARD:  No, that's not what I'm asking.
11 Q   (By Mr. Card) But that's okay.  You can still answer
12 the question.
13 A   **I don't.**
14 Q   Okay.  But you can see by comparing Exhibit 148 with
15 Exhibit 149 that FERC adopted a substantial amount of
16 the language that Mr. Whittaker suggested, right?
17 A   **I see that.**
18 Q   All right.  I forgot to ask you about this, so it'll
19 be out of order, but it's Exhibit 130.  I'd like you
20 to look at it, and then I'm going to ask you a
21 question about it.
22
23          (Brief pause.)
24
25 A   **Okay.**

143
WENATCHEE VALLEY COURT REPORTING
509.888.3376  wvcr@nwi.net

1 Q   All right.  So you see there's a question or an e-mail
2 from Karin Hills, and it says, "I am wondering what
3 the status is on the land lease renewal for Crescent
4 Bar.  Is there an expected timeline for completion of
5 the contract?"  Do you see that?
6 A   **I see that.**
7 Q   All right.  Are you aware whether or not Karin Hills
8 is an employee of the PUD?
9 A   **No.**
10 Q   Okay.  And then there's a response from Sheryl Dotson
11 again.  And this is January 29th, 2008, correct?
12 A   **Yes.**
13 Q   "A request for renewal will not be submitted to FERC
14 until after we are issued a final license."  That's
15 what she says, right?
16 A   **Yes.**
17 Q   Were you ever advised by Sheryl Dotson that she was
18 telling members of the public that the PUD was going
19 to request a renewal but not until after the final
20 license was issued?
21 A   **I got that from previous documents you showed me**
22          **today, but I -- I did not -- I was not aware of that.**
23          **It makes sense.**
24 Q   It makes sense that she would tell people that there's
25 going to be a request for a renewal when -- I mean,

144
WENATCHEE VALLEY COURT REPORTING
509.888.3376  wvcr@nwi.net

# EXHIBIT F

TERRY BREWER

1                    UNITED STATES DISTRICT COURT

2                    EASTERN DISTRICT OF WASHINGTON

3

4                                        )
     IN RE:                              )
5                                        )
     CRESCENT BAR LITIGATION             )
6

7

8        ---------------------------------------------

9             DEPOSITION UPON ORAL EXAMINATION

10                            OF

11                       TERRY BREWER

12       ---------------------------------------------

13

14       Date:            January 17, 2014

15       Location:        Davis, Arneil Law Firm
                          617 Washington Street
16                        Wenatchee, WA

17

18       Start Time:      9:30 a.m.

19       End Time:        6:55 p.m.

20       Total Time on Record:  7 hours, 5 minutes

21

22       Reported By:     Alison J. Sosa, CCR
                          CCR # 2575
23

24

25                            1

TERRY BREWER

1   Q   And this was prepared prior to the time the PUD actually

2       filed it's Shoreline Management Plan, isn't that true?

3   A   Yes.

4   Q   And it is asking that the Commission send the letter that's

5       requested by the Commission of FERC after it files its

6       Shoreline Management Plan, right?

7   A   Yes.

8   Q   Do you know why the request was made that this letter be sent

9       to the PUD after the filing of its Shoreline Management Plan?

10  A   No.

11  Q   Do you know why John Whittaker was suggesting language that

12      FERC use in a letter that was going to be submitted to the

13      PUD after the PUD filed its Shoreline Management Plan?

14  A   No, I don't.

15  Q   Did you authorize -- or the Commission authorize this letter

16      to be sent?

17  A   No.  Excuse me.

18  Q   Now I'd like you to go back to Exhibit 148, which is the

19      March 10th, 2010, letter.  I would like you to turn to the

20      second page in the second paragraph, and you'll see I've got

21      some sections highlighted for your convenience.

22          The first part says -- first of all, you recognize

23      this exhibit as the letter from FERC, Robert Fletcher at

24      FERC, right?

25  A   Right.

57

# EXHIBIT G

TOM W. FLINT

1                    UNITED STATES DISTRICT COURT

2               EASTERN DISTRICT OF WASHINGTON

3      -----------------------------------------------------

4      IN RE:                          )
                                       )
5      CRESCENT BAR LITIGATION         ) No. CV-11-023-JLQ
                                       )
6                                      )
                                       )
7      -----------------------------------------------------

8              DEPOSITION UPON ORAL EXAMINATION

9                            OF

10                      TOM W. FLINT

11     -----------------------------------------------------

12

13     Date:            January 22, 2014

14

15     Location:        Davis, Arneil Law Firm, LLP
                        617 Washington Street
16                      Wenatchee, Washington   98801

17

18     Start Time:      9:29 a.m.

19     End Time:        4:24 p.m.

20     Total Time:      5 Hours and 17 Minutes

21

22

23

24

25     REPORTED BY:     CHARLENE M. BECK, CCR, RPR
                        CCR # 2543

                            1

TOM W. FLINT

| | | |
|---|---|---|
| 1 | | where we're going to get to. |
| 2 | Q | Okay. |
| 3 | A | Okay? |
| 4 | Q | Were you aware that the PUD's own attorney, John |
| 5 | | Whittaker, had requested that FERC write this letter? |
| 6 | A | No. |
| 7 | Q | Were you aware that Mr. Whittaker actually proposed |
| 8 | | language virtually identical to the language we just |
| 9 | | went through in the second page? |
| 10 | A | I don't know anything about that. |
| 11 | Q | Surprise you to find out? |
| 12 | A | Well, if it is, in fact, true, yeah. |
| 13 | Q | Look at Exhibit 149.  And that's an e-mail chain |
| 14 | | between John Whittaker, Kelly Larimer, Mitch |
| 15 | | Delabarre, and Robert Fletcher, who was a FERC person. |
| 16 | | Do you see that? |
| 17 | A | Well, I -- I don't know which page -- |
| 18 | Q | I'm just looking at it in general. |
| 19 | A | In general I see what you're talking about. |
| 20 | Q | Okay.  Now I'd like you to look at page 2. |
| 21 | A | Okay. |
| 22 | | MR. KALAMON:  Of 149? |
| 23 | | MR. CARD:  Yeah. |
| 24 | Q | (By Mr. Card) And there's an e-mail from John |
| 25 | | Whittaker to Mr. Fletcher.  Do you see that? |

66

TOM W. FLINT

| | | |
|---|---|---|
| 1 | A | Yeah. |
| 2 | Q | Okay.  And it says, "Bob, I have talked with Grant PUD |
| 3 | | on the preferred FERC approach for having Grant PUD |
| 4 | | address the issue of the existing residential |
| 5 | | development at Crescent Bar Island following the |
| 6 | | expiration of the current leases in 2012."  Do you see |
| 7 | | that? |
| 8 | A | Uh-huh.  Yes, I do. |
| 9 | Q | Okay.  Had Mr. Whittaker talked to the Commission |
| 10 | | about that issue? |
| 11 | A | No. |
| 12 | Q | It goes on to state "In order to assist the PUD and |
| 13 | | its staff in rolling out the plan we discussed with |
| 14 | | you on January 20, we believe it would be best for the |
| 15 | | initial communication on the matter to come from FERC, |
| 16 | | not Grant PUD.  We suggest that FERC could send Grant |
| 17 | | PUD a letter after the SMP is filed that would say |
| 18 | | something along the lines set out below."  Do you see |
| 19 | | that? |
| 20 | A | Yes, I do. |
| 21 | Q | And I read that correctly, right? |
| 22 | A | Yes. |
| 23 | Q | And then I'd like you to turn to the next page.  And |
| 24 | | you see Mr. Whittaker has proposed language there, |
| 25 | | right? |

67

TOM W. FLINT

1    A    Yes.

2    Q    And it says, "We have reviewed the Shoreline

3         Management Plan (SMP) that Grant PUD filed on March"

4         -- blank -- "2010."  Do you see that?

5    A    Yes, uh-huh.

6    Q    So at that time the Shoreline Management Plan had not

7         even been filed by Grant PUD, had it?

8    A    Our -- I don't think so.  I don't think -- yeah.  I --

9    Q    I'll tell you that the record shows it was filed on

10        March 2nd, 2010.

11   A    Okay.

12   Q    And you'll see that this e-mail, if you look at the

13        dates, was generated in February, in fact it looks

14        like February 4th, 2010.  Correct?

15   A    Uh-huh.

16   Q    Again, you have to articulate your --

17   A    Yes, uh-huh.

18   Q    And I'll continue on.  It says, "pursuant to the

19        requirements of Article 419.  As you are aware,

20        Article 419 specifies that the SMP is to include

21        provisions to protect and enhance Crescent Bar Island.

22        According to the filed SMP (at page 4), measures to

23        improve public recreation access and use, while

24        protecting and enhancing wildlife habitat and the

25        scenic quality, of Crescent Bar Island will occur

_____68_____

TOM W. FLINT

```
 1        after the existing lease with the Port of Quincy
 2        expires in 2012."
 3            I think he meant "when", but it says "with".
 4            Correct?
 5    A   Uh-huh.  Yes.
 6    Q   And then he says, "In order for the Commission to
 7        evaluate the filed SMP, it needs a better
 8        understanding of Grant PUD's intended proposals with
 9        respect to improving public recreation access and use
10        and protecting and enhancing wildlife habitat and
11        scenic quality of Crescent Bar Island upon the
12        expiration of the existing leases in 2012.
13        Consequently, please file with the Commission no later
14        than December 31, 2010, a plan to accomplish the
15        above-referenced goals.  In this regard, please note
16        that the Commission does not condone residential
17        development and occupancy of Project Lands, since such
18        residential use is inconsistent with the Commission's
19        policy of maximizing public recreational development
20        set forth in", and then it cites some C.F.R.s and a
21        case.  "Consequently, your plan must demonstrate
22        compliance with the Commission's policies on this
23        issue."  Do you see that?
24    A   I do.
25    Q   Had you ever seen this before today?
```

69

TOM W. FLINT

| | | |
|---|---|---|
| 1 | A | No. |
| 2 | Q | And that language then was adopted in large part in |
| 3 | | Mr. Fletcher's March 10th, 2010, letter, wasn't it? |
| 4 | A | And what I don't -- yeah. Well, to answer your |
| 5 | | question, yes. |
| 6 | Q | And you didn't know, I take it, that -- |
| 7 | | Well, unbeknownst to the Commission, at least to |
| 8 | | you, you didn't know this was going on in February, |
| 9 | | did you? |
| 10 | A | No. |
| 11 | Q | Because you were still expecting a win/win solution, |
| 12 | | weren't you? |
| 13 | A | Yes. But I would say that this probably gets to |
| 14 | | clarifying FERC's policy, which I think that's what we |
| 15 | | were all trying to get. And so this is the first time |
| 16 | | I've seen this work product, but at the end of the day |
| 17 | | it just reaffirms FERC's policy in my mind. |
| 18 | Q | It reaffirms what John Whittaker asked the FERC to |
| 19 | | say, doesn't it? |
| 20 | A | But I'm not gonna -- |
| 21 | | MR. KALAMON: Objection. It's argumentative. |
| 22 | | He -- |
| 23 | Q | Doesn't it? |
| 24 | | MR. KALAMON: His answer is what it is. |
| 25 | Q | Doesn't it? |

WENATCHEE VALLEY COURT REPORTING
509.888.3376 (depo) wvcr@nwi.net

# EXHIBIT H

GREG HANSEN

1              UNITED STATES DISTRICT COURT

2            EASTERN DISTRICT OF WASHINGTON

3    ------------------------------------------------------

4    IN RE:                          )
                                     )
5    CRESCENT BAR LITIGATION         )  No. CV-11-023-JLQ
                                     )
6                                    )
                                     )
7    ------------------------------------------------------

8            DEPOSITION UPON ORAL EXAMINATION

9                         OF

10                    GREG HANSEN

11   ------------------------------------------------------

12

13   Date:            January 15, 2014

14

15   Location:        Davis, Arneil Law Firm, LLP
                      617 Washington Street
16                    Wenatchee, Washington   98801

17

18   Start Time:      9:33 a.m.

19   End Time:        3:45 p.m.

20   Total Time:      4 Hours and 42 Minutes

21

22

23

24

25   REPORTED BY:     CHARLENE M. BECK, CCR, RPR
                      CCR # 2543

                          1

GREG HANSEN

| | | |
|---|---|---|
| 1 | Q | Now, did you know that the March 10th letter from FERC |
| 2 | | was written at the request of the PUD's attorney? |
| 3 | A | No, I did not. |
| 4 | Q | And I'd like you to look at -- I've got to find the |
| 5 | | exhibit. |
| 6 | | Okay.  Look at Exhibit 149.  Go ahead and read it |
| 7 | | and let me know when you're done. |
| 8 | | |
| 9 | | (Pause.) |
| 10 | | |
| 11 | A | Okay. |
| 12 | Q | All right.  So my question was:  Were you aware of the |
| 13 | | e-mail that had been sent by the PUD's attorney, |
| 14 | | Mr. Whittaker, to FERC asking for that March 10th, |
| 15 | | letter? |
| 16 | A | No, I wasn't. |
| 17 | Q | Were you aware that the language that Mr. Whittaker |
| 18 | | requested that FERC use was similar to the language |
| 19 | | that FERC actually put in its letter? |
| 20 | A | No. |
| 21 | Q | And I need to come over to your side again, if that's |
| 22 | | okay.  It's easier than my computer. |
| 23 | | In the e-mail from Mr. Whittaker in the last |
| 24 | | paragraph where he's requesting this letter from FERC |
| 25 | | he requests that they use this language, doesn't he? |

145

# EXHIBIT I

```
1   Q   That's all right.

2           Did that happen in executive session?

3   A   No.

4   Q   So there would be minutes about that, correct?

5   A   Well, I believe so.

6   Q   All right.  Now --

7   A   It -- it probably happened at -- we have a workshop

8       time, and I think -- that's kind of a time that we

9       generally discuss things, and I think that's when it

10      happened.  It wasn't in the formal business meeting,

11      but it was in the workshop.

12  Q   Okay.

13  A   Probably prior to the business meeting.

14  Q   Was that a workshop at which the public could attend?

15  A   Yes.

16  Q   Do you remember if there were any members of the

17      public there?

18  A   Boy, I don't.  Sorry.

19  Q   That's all right.

20          So a decision was made to call FERC.  What

21      happened after that?

22  A   Well, we made the call.

23  Q   Again, that's you, Tim Culbertson, and --

24  A   And Randy Allred.

25  Q   -- Randy Allred?
```

| 1 | | And Randy is dead now? |
|---|---|---|
| 2 | A | Correct. |
| 3 | Q | Okay.  Did you record the call? |
| 4 | A | No. |
| 5 | Q | All right.  Who did you talk to? |
| 6 | A | Oh, Fletcher. |
| 7 | Q | Anyone else with Fletcher on the phone? |
| 8 | A | Not that I -- I just recall him being on the phone. |
| 9 | | So that's -- that's my recollection. |
| 10 | Q | And do you recall the date that you called him? |
| 11 | A | Alls I know is it was sometime a week or so -- or |
| 12 | | maybe two weeks after we got the letter. |
| 13 | Q | Okay. |
| 14 | A | So sometime after we got the letter. |
| 15 | Q | All right.  And what was said at that meeting or at |
| 16 | | that telephone call?  Take me through it. |
| 17 | A | Well, I -- from my recollection of the -- the |
| 18 | | telephone call was we were trying to figure out |
| 19 | | exactly where FERC was in regards to private use of |
| 20 | | public property, which essentially was this issue and |
| 21 | | the situation at Crescent Bar. |
| 22 | | And so from the questions that we asked FERC, it |
| 23 | | appeared that they had increased emphasis on public |
| 24 | | access and public recreation.  And so, you know, what |
| 25 | | did that mean as far as that?  Does that mean that -- |

1   where -- where does that -- where is the time when it

2   trans-- transfers public use to private use?  Is it --

3   is it a week?  Is it a month?  Two days?  One day?

4   Where does the -- where is that -- where is that

5   timeline?

6        And so the -- you know, my recollection was any

7   time after about one day or two days the private use

8   of public lands is not -- is not in compliance with

9   their policy.  And so if we were to allow that, then

10   what -- what's going to happen?  Well, if we allow

11   private use of public lands, then we're going to have

12   to mitigate for that.  So what does that mean?  And

13   that's the question.  And it says if you allow that to

14   continue, then you're going to have to purchase like

15   property of equal or greater value to mitigate for the

16   private use of public property.

17        And so for me that was -- that was a place I

18   couldn't go, because, first of all, I represent the

19   rate payers of Grant County.  And I could not agree to

20   using public rate payer money to pay for people to

21   have private use of public property.  And so that was

22   the take-away from the telephone call to me.

23   Q   Do you recall exactly what was said?

24   A   Well, there was four or five questions.  But to me

25   that was the take-away.

WENATCHEE VALLEY COURT REPORTING
509.888.3376 (depo) wvcr@nwi.net

# EXHIBIT J

KELLY LARIMER

| | |
|---|---|
| 1 | UNITED STATES DISTRICT COURT |
| 2 | EASTERN DISTRICT OF WASHINGTON |

```
 3   JAMES V. KELLY; LAWRENCE H.      )
     AND H. TERESA CAIN; RANDALL S.   )
 4   AND MARGRET R. HOEFER; RONALD    )
     A. AND JOYCE E. KARLSTEN; GARY   )
 5   B. AND KAREN S. WIRTA; XAVIER H. )
     AND JEANNE B. RAMIREZ;           )
 6   CRESCENT BAR CONDOMINIUM         )
     MASTER ASSOCIATION; CRESCENT     )
 7   BAR RECREATIONAL VEHICLE         )
     HOMEOWNERS ASSOCIATION; AND      )
 8   CRESCENT BAR SOUTH R.V. PARK     )
     OWNERS ASSOCIATION,              )
 9                                    )
                      Plaintiffs,     )
10                                    )
                 vs.                  )  NO. CV-11-023-JLQ
11                                    )
     PUBLIC UTILITY DISTRICT NO. 2 OF )
12   GRANT COUNTY; PORT OF QUINCY,    )
     PORT DISTRICT NO. 1 OF GRANT     )
13   COUNTY; and CRESCENT BAR, INC.,  )
                                      )
14                   Defendants.      )
     ----------------------------------------------
15              DEPOSITION UPON ORAL EXAMINATION
                             OF
16                     KELLY LARIMER
     ----------------------------------------------
17   Date:           July 17, 2013

18   Location:       Davis, Arneil Law Firm
                     617 Washington Street
19                   Wenatchee, WA

20   Start Time:     9:00 a.m.

21   End Time:       5:33 p.m.

22   Total Time on Record:  6 hours, 21 minutes

23   Reported By:    Alison J. Howze Sosa, CCR
                     CCR # 2575
24

25                             1
```

KELLY LARIMER

1    Q   Can you spell that?

2    A   Shana, S-H-A-N-A.  High.

3    Q   H-I?  H-I-G-H?

4    A   H-I-G-H.  Let me think.  Crescent Bar?  Those are the

5        primaries.

6    Q   Did you have only oral communications with them?

7    A   Oral or e-mail.

8    Q   Did you have e-mail communications with each of them?

9    A   Yes.

10   Q   Would those have been e-mails to you and e-mails from you?

11   A   Correct.

12   Q   And they would have related to Crescent Bar Island, at least

13       some of them?

14   A   In part.  Other issues as well.

15   Q   When did you first begin to communicate with Bob Fletcher

16       either -- well, by e-mail?  Let's start there.

17   A   Probably fall of 2008.

18   Q   With Heather Campbell?

19   A   Same time frame.

20   Q   With Chris Yeakel?

21   A   Probably late 2009 maybe.  Early 2000 --

22   Q   Shana High?

23   A   Probably 2009.

24   Q   Anyone else from FERC with whom you have had communication,

25       either oral or written?

                              47

KELLY LARIMER

1   A   Related to Crescent Bar or in general?

2   Q   I'm sorry.  Related to Crescent Bar.

3   A   Mary Kowlowski (phonetic) recently.

4   Q   K-O --

5   A   K-O-W -- I don't know how to spell her last name.

6   Q   Kowlowski?

7   A   Kowlowski, something like that.  Related to off-island

8       Crescent Bar.

9   Q   Not related to on-island issues?

10  A   No.

11  Q   Anyone else related to on-island issues at FERC?

12  A   Primarily Bob and Heather.

13  Q   All right.  Have you received written communications -- and

14      when I say written communications, do you understand that I'm

15      talking about letters, e-mails --

16  A   Uh-huh.

17  Q   -- okay -- any kind of written communications?

18  A   I understand.

19  Q   All right.  Have you received any written communications from

20      anybody on Crescent Bar Island who is a resident there about

21      Crescent Bar Island issues?

22  A   Yes.

23  Q   And over what period of time?

24  A   Probably spring to mid 2008 through 2010, and then some

25      tricklers after that but --

48

KELLY LARIMER

1    Q  Let me be more specific then.  Who at FERC did you meet with

2       relating to Crescent Bar Island issues?

3    A  We didn't meet with them specifically on any Crescent Bar

4       issues.  Crescent Bar was brought up at meetings about the

5       Shoreline Management Plan --

6    Q  Okay.

7    A  -- where Bob Fletcher and Heather Campbell were present.

8    Q  All right.

9    A  And Chris Yeakel I think once.

10   Q  How many meetings do you think you had -- or how many

11      meetings did you have with people from FERC?

12               MR. KALAMON:  Regarded Crescent Bar Island

13      issues?

14               MR. CARD:  Thank you, Jim.

15   Q  (By Mr. Card) Regarding Crescent Bar Island issues.

16   A  Where it was -- clarify.  Like specific at Crescent Bar or

17      just it was mentioned?

18   Q  Just that it was mentioned.

19   A  Probably a couple.  A lot of the -- I don't know -- probably

20      met four or five times just as routine check-ins.  Introduce

21      new staff directors basically.

22   Q  New directors from the PUD?

23   A  Correct.

24   Q  When you met with people from the PUD, did you have any

25      particular discussions regarding the Crescent Bar Island

                                    50

KELLY LARIMER

1   A  We did.

2   Q  And those were the people -- or the people who attended were

3      those that you have indicated earlier in your testimony?  Or

4      if you want to just tell me who attended that meeting.

5            MR. KALAMON:  Excuse me.  This is the meeting of

6      December 17, 2008?

7            MR. CARD:  No.  This is the one that's referenced

8      on December 11th.  It's the second page of the exhibit.

9   A  Gerry O'Keefe and Tom Dresser.  Gerry O'Keefe is the only one

10     in this discussion with FERC staff and myself.

11  Q  (By Mr. Card) Okay.  And from FERC staff who was there?

12  A  At the time I believe Hussien Aldari (phonetic), Bob

13     Fletcher, Bill Campbell, and probably Bob Fletcher.

14  Q  Hussein Aldari?

15  A  Yes.  Former deputy director of FERC.

16  Q  For FERC --

17  A  Uh-huh.

18  Q  -- you said?

19  A  Uh-huh.

20  Q  Okay.  The next one is going to be written minutes -- or

21     written notes, I should say.  Whatever exhibit this is.

22            (Exhibit No. 141 marked.)

23  Q  Do you recognize the handwriting on this exhibit?

24  A  I do.

25  Q  Whose is it?

                              139

KELLY LARIMER

1    A   Mine.

2    Q   The date is 1/20.  Do you see that?  Is that what the date

3        is?

4    A   Yes.  With no year.

5    Q   Do you know what year it was?

6    A   This would have been 2010.

7    Q   2010.  And where is says "John," who is John?

8    A   John CoFrancesco is the FERC staff member in the land branch.

9    Q   Oh, is that his name underneath there, CoFrancesco?

10   A   Yes.

11   Q   It says "Coach for Jaime."  Is that --

12   A   It's coach.  I have bad handwriting.

13   Q   Who is Jamie?

14   A   Jamie Blakesley was our FERC staffer working on our

15       recreation plan for a brief period of time.

16   Q   Including for Crescent Bar Island?

17   A   No.

18   Q   At this meeting did you -- did you also say that Bob Fletcher

19       was there, right?

20   A   Yes.

21   Q   Do you remember?

22   A   Oh, let me clarify.  I believe Jamie was on the phone.

23               MR. AMSTER:  What number is this, Lew?

24               MR. CARD:  Exhibit 141.

25               MR. AMSTER:  Thank you.

140

KELLY LARIMER

1    Q   And was there anyone else from the PUD besides you at this

2        meeting?

3    A   Mitch Delabarre, Julie Pyper, and John Whittaker.

4    Q   Julie Pyper?

5    A   Yes.

6    Q   Who is Julie Pyper?

7    A   She was a new hire who manages our license compliance record.

8    Q   Okay.  And Jim Whittaker?

9    A   John Whittaker.

10   Q   Was the attorney for the PUD?

11   A   Correct.  And Mitch.

12   Q   Did that meeting occur in Washington DC?

13   A   It did.

14   Q   On January 20, 2010?

15   A   Yes.

16              MR. CARD:  Okay.  The next one, guys, is from

17       Robert Fletcher to Kelly Larimer that says "Regulation

18       Followup."  I'm going to skip over that.  That's two pages.

19              (Exhibit No. 142 marked.)

20   Q   (By Mr. Card) Let me make sure I gave you the right one,

21       ma'am.  Yes.  Okay.

22              MR. KALAMON:  Date on that is 6/30/2009?

23              MR. CARD:  Yes.

24   Q   (By Mr. Card) Let me know when you've had a chance to look at

25       that, Exhibit 142.

143

KELLY LARIMER

1  A  Okay.

2  Q  Olivia Fields, it looks like at that time worked at the PUD?

3  A  Orvella.

4  Q  Orvella.  Does she still work there?

5  A  She's on leave right now, but she's still employed by the

6     District.

7  Q  And this e-mail indicates that it was sent to these people at

8     FERC; George Taylor and Robert Fletcher.  Do you know who

9     George Taylor was?

10  A  He was the Fisheries branch manager, Aquatic Resources.

11  Q  Okay.  The next one I want to look at is the next document,

12     "Compliance Check In."

13                  (Exhibit No. 143 marked.)

14                  (Discussion had off record.)

15  Q  Let me know when you have had a chance to look at that.

16  A  Okay.

17  Q  Did this meeting occur with FERC after this e-mail?

18  A  It did.

19  Q  Where did it occur?

20  A  Washington DC.

21  Q  When did it occur?

22  A  I think August of 2009.  And I believe just Gerry and I were

23     able to make it.

24  Q  When you say Gerry, that's Gerry O'Keefe?

25  A  Correct.

                              144

KELLY LARIMER

1   Q   So at that meeting both you and he would have spoken to

2       people from FERC?

3   A   Correct.

4   Q   Do you remember who was at that meeting from FERC?

5   A   Probably Bob Fletcher, Heather Campbell.

6   Q   How about this George Taylor?

7   A   I didn't meet George.  He's their Fisheries guy.  Gerry may

8       have met with him separately.

9   Q   All right.  And at that meeting did you discuss issues

10      relating to Crescent Bar Island?

11  A   No.  This was a status check-in meeting for license

12      implementation because we had several plans that were due and

13      just an update.

14  Q   Licensing implementation in which regard?

15  A   Comprehensively we had 65 management plans due within the

16      first year of that license, so we met pretty regularly with

17      folks just to keep them up to speed on where we were with all

18      of that.

19  Q   Would that have included the Recreational Resource Management

20      Plan?

21  A   Yes.

22  Q   Would it have included -- well, first of all, the

23      Recreational Resource Management Plan includes reference to

24      Crescent Bar Island, right?

25  A   Crescent Bar off island.

                                145

KELLY LARIMER

```
 1                    MR. KALAMON:  Just the numbered points were?
 2                    THE WITNESS:  Yes.
 3                    MR. KALAMON:  Thank you.
 4       Q   And the numbered points would include issues relating to the
 5           license, correct?
 6       A   The numbered items were the topics of discussion at the
 7           meeting, yes.
 8       Q   Okay.  And one of them was the Shoreline Management Plan?
 9       A   Correct.
10       Q   And this agenda indicates that Mitch Delabarre, you, Julie
11           Pyper, and John Whittaker were there?  Those are the people
12           that you indicated earlier, correct?
13       A   Yep.
14       Q   And there was a general discussion with people at FERC that
15           included Bob Fletcher and John CoFrancesco with Jamie
16           Blakesley there by phone?
17       A   Correct.
18       Q   All right.  Were there any other meetings with FERC after
19           this 2010 meeting prior to the time that the PUD on April 26
20           voted to allow the license -- or the lease to expire without
21           renewing it?
22       A   Meetings in person?
23       Q   Well, start with that.  Meetings in person.
24       A   No.
25       Q   Did you have telephonic meetings with people from FERC?
                                    149
```

KELLY LARIMER

1    A   We had a conference call with Bob Fletcher and Chris Yeakel,

2        two of our PUD commissioners, Mitch, Tim Culbertson, maybe

3        Chuck Berrie and myself to have a discussion on clarity of

4        that letter before they entered into a decision with the

5        process.

6    Q   And when did that particular telephonic meeting occur?

7    A   April -- don't quote me on this, but I think April 12 or 10,

8        something like that.

9    Q   It would have been prior to the time that --

10   A   Correct.

11   Q   -- that --

12           MR. KALAMON:  You have to let him finish the

13       question.

14   Q   It would have been prior to the time that the commissioners

15       voted on April 26 to kick the -- or to allow the leases to

16       terminate?

17   A   It was before April 26th.

18   Q   Okay.  Any other meeting, telephonic or otherwise, that you

19       had with FERC prior to April 26, 2010?

20   A   Meetings?

21   Q   Telephonic or otherwise.

22   A   I'm sure I had some phone calls with folks.

23   Q   Were you aware of anyone else having any communications with

24       FERC besides you other than you've identified so far?

25           MR. KALAMON:  Regarding what?

150

# EXHIBIT K

TOM W. FLINT

| | | |
|---|---|---|
| 1 | A | It's been about -- probably about six or seven months, |
| 2 | | something like that. |
| 3 | Q | And before then what computer did you use? |
| 4 | A | I used my personal computer. |
| 5 | Q | And you're saying you turned over your personal |
| 6 | | computer as well? |
| 7 | A | Yes. |
| 8 | Q | The e-mails or something more? |
| 9 | A | Anything that had to do with PUD.  So anything that I |
| 10 | | had on that computer was turned over. |
| 11 | Q | And when was that computer put into service, the |
| 12 | | personal computer that you replaced six or seven |
| 13 | | months ago? |
| 14 | A | Oh, I've been through a series of computers, so... |
| 15 | | I typically get a computer about every year and a |
| 16 | | half.  So I don't know how -- what -- what you're |
| 17 | | looking for.  So in that time probably about a year |
| 18 | | and a half ago. |
| 19 | Q | And what do you do with your old computers? |
| 20 | A | I usually give them to my kids. |
| 21 | Q | Do they still have them? |
| 22 | A | Nope. |
| 23 | Q | Did you turn over your personal computers prior to a |
| 24 | | year and a half ago? |
| 25 | A | Yes. |

191

1   Q   To who?

2   A   To the -- Public Records indicated that I needed to

3       provided all the information and data that I had.  I

4       submitted that and the computer.  And so that's what

5       I've done.

6   Q   What date was that; do you recall?

7   A   Well, it's been numerous times, actually.

8   Q   So during the time that you've been a commissioner

9       you've turned over your personal computer to the PUD

10      to the extent it included PUD business?

11  A   Correct.

12  Q   Over several occasions?

13  A   Correct.

14  Q   Were you aware that the PUD destroyed your computer

15      after a period of time?

16  A   Yes.

17  Q   Were you ever told at any point in time while you've

18      been a commissioner that no records regarding the PUD

19      should be destroyed?

20  A   Say that again.

21  Q   Were you advised at any point in time during your

22      tenure as a commissioner that PUD records should not

23      be destroyed?

24  A   Yes.

25  Q   When was that?

```
 1   A   Well, it's -- I've known that since day one, so...
 2           That's all part of the orientation through public
 3       records and public disclosure through the Washington
 4       State Public PUD Association.  So I've known that
 5       since day one.
 6   Q   I thought you just told me a minute ago that you were
 7       aware that the PUD destroyed your old computer?
 8   A   Well, I'm aware of that, but I'm -- you've asked me
 9       two different questions, I believe.
10   Q   I realize that.
11   A   Okay.
12   Q   You gave me two different answers.  That's why I'm
13       asking it again.
14   A   Well, the process is that I know anything I have on
15       there relating to the PUD is -- is open to public
16       disclosure.  Okay?  There was a problem with the PUD
17       and with one of those and it got destroyed.  That's
18       all I can answer that.
19   Q   There was a problem with what?
20   A   Hard drive.
21   Q   There was a problem with the hard drive and it got
22       destroyed?
23   A   Yes.
24   Q   When was that?
25   A   I'm going to say it's -- it's -- I -- I've submitted
```

| | | |
|---|---|---|
| 1 | | the PUD my computer in -- about three different times. |
| 2 | | And I'm going to say it's probably either the next to |
| 3 | | the last time or the last time.  I don't recall, |
| 4 | | but... |
| 5 | Q | Would both of those have been within the last three or |
| 6 | | four years? |
| 7 | A | I believe so. |
| 8 | Q | If I do the math, you said you -- |
| 9 | A | Yeah. |
| 10 | Q | -- replace your computer about every year and a half. |
| 11 | A | Uh-huh. |
| 12 | Q | So both of those computer turnovers would have |
| 13 | | occurred within the last three or four years? |
| 14 | A | That would be my guess. |
| 15 | Q | And one of those had a hard drive problem or both of |
| 16 | | them had a -- |
| 17 | A | No. |
| 18 | Q | -- hard drive problem? |
| 19 | A | I -- I know -- I don't specifically recall, but I know |
| 20 | | there was a problem with one of the hard drives, and |
| 21 | | it -- it -- it was destroyed.  That's all I can tell |
| 22 | | you. |
| 23 | Q | Would there be any reason for the PUD to destroy your |
| 24 | | hard drive otherwise? |
| 25 | A | No. |

194

# EXHIBIT L

TERRY BREWER

1    today?

2    A  Yes.

3    Q  Okay.  Did you see e-mails of that sort that were addressed

4       not only to you, but to the other commissioners?

5    A  Yes.

6    Q  And did you see e-mails of that sort addressed to you and

7       other commissioners and copied to other staff at the PUD?

8    A  Might have been.  I don't recall --

9    Q  That's fair.

10   A  -- if other staff were copied.

11   Q  All right.  Do you still have those e-mails?

12   A  No.

13   Q  What happened to those e-mails, if you know?

14   A  I don't know.  I -- I had -- at the time I became a

15      commissioner, I had a notebook computer and a Yahoo e-mail

16      account.  I'm not the kind of person that saves e-mails.  I

17      generally keep my folders pretty empty.  When I finished --

18      finished with this e-mail, you know, it was either a -- a

19      calendar item and that date has gone by, so I deleted or --

20          Anyway, that computer crashed a few years ago.  I

21      don't have it anymore.  Seldom use a Yahoo account because I

22      asked for a PUD e-mail address.  And asked them quite some

23      time ago to send me any and all e-mails to the PUD e-mail

24      address.  And then I trusted that it's all kept on their

25      server.  Didn't need to keep it on my computer.

                                   32

TERRY BREWER

1    Q   Do you remember approximately how many years ago your
2        computer crashed?
3    A   I think it was sometime in 2010, late 2009.
4    Q   Was this a personal computer of yours?
5    A   Yes.
6    Q   Did you on your personal computer send responses to e-mails
7        that you had gotten from the PUD?
8    A   I don't recall.
9    Q   The e-mails that you got from the PUD, did it appear that
10       they came from a PUD computer or could you tell?
11   A   I couldn't tell.  I wouldn't know.  I assumed -- everything
12       was work related, so I would assume it was a PUD.
13   Q   Okay.  What is the e-mail address for your PUD computer now?
14   A   Tbrewer@gcpud.org.
15   Q   Prior to the time that your PUD crashed --
16   A   My computer?
17   Q   Sorry.  Thank you for clarify that.  Prior to the time that
18       your computer crashed, Terry, was it ever made known to you
19       that there was some kind of threatened litigation that
20       related to Crescent Bar Island?
21   A   I don't remember.
22   Q   Do you remember the first time you heard that Crescent Bar
23       Islanders might or were likely to sue the PUD?
24   A   Probably around the time we were holding the public
25       information meetings in 2009.

                              33

TERRY BREWER

1    wanted to just confirm.  Do you recall the last time you

2    purged your files?

3  A  I -- I believe it was sometime in 2012.  I didn't do it last

4    year.  Everything, I think, is stuffed in a drawer from 2013.

5  Q  Did you -- and I believe -- and this I did not hear, but I

6    think he asked it.  Did you ever receive instruction not to

7    destroy records related to Crescent Bar?

8  A  I don't believe he asked me that question.

9  Q  I guess I'll ask it then now.  Have you ever received

10   instruction not to destroy records related to Crescent Bar?

11  A  I don't believe so.  But the things that I would have

12   destroyed were generally a staff report.  And while I have my

13   copy, staff -- every one of staff's reports, I'm sure, are

14   kept on the hard drives or they keep their copy.  So, you

15   know, I don't -- I saw no harm in throwing my notebook away

16   at the end of the year if I didn't have anything in it that

17   somebody else already didn't have a copy of as well.

18  Q  So just -- just so I understand, as early as 2007 when you

19   became a commissioner, you understood there may be litigation

20   involving Crescent Bar, but you have never been instructed

21   nor have you given consideration to preserving your records;

22   is that correct?

23  A  My records?  Explain that to me.

24  Q  Yes, your records.  Commissioner Brewer's records.

25  A  I guess not because I don't have every piece of paper I've

                              176

# EXHIBIT M

AO 88A  (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the

District of Columbia

| | |
|---|---|
| JAMES V. KELLY, et al., | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.    11-cv-023-JLQ |
| PUBLIC UTILITY DISTRICT NO. 2 OF GRANT | ) |
| COUNTY, et al., | ) (If the action is pending in another district, state where: |
| *Defendant* | ) Eastern District of Washington         ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:  FEDERAL ENERGY REGULATION COMMISSION

☑ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

See Exhibit A, attached

| | |
|---|---|
| Place:  Perkins Coie, LLP<br>700 13th St NW #600<br>Washington, DC 20005 | Date and Time:<br><br>02/24/2014 9:00 am |

The deposition will be recorded by this method:   Court reporter

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

All documents referenced or described on Exhibit A, attached hereto.

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:    01/08/2014

*CLERK OF COURT*

OR

|                                               |                                          |
|-----------------------------------------------|------------------------------------------|
|                                               | /s/ Emanuel Jacobowitz, WSBA #39991      |
| *Signature of Clerk or Deputy Clerk*          | *Attorney's signature*                   |

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*      Crescent Bar, Inc.
_____ , who issues or requests this subpoena, are:

Emanuel Jacobowitz, Johnston Lawyers, P.S.
2701 1st Avenue, Suite 340
Seattle, WA 98121    mannyj@rbrucejohnston.com    206-866-3243

AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.   11-cv-023-JLQ

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0.00____ .

I declare under penalty of perjury that this information is true.

Date: _____                    _____

                                                        *Server's signature*

                                                        _____

                                                        *Printed name and title*

                                                        _____

                                                        *Server's address*

Additional information regarding attempted service, etc:

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

**EXHIBIT A**

Residential uses of project lands after 1990 on Crescent Bar Island under the Deponent's license to the Public Utility District No. 2 of Grant County under the Deponent's Priest Rapids Project, No. 2114-208, and related documents, including but not limited to documents relating to the said District's Recreational Resource Management Plan, its Shoreline Management Plan, or its application for relicensing. "Documents" include but are not limited to submissions, orders, staff opinions, and Deponent's related correspondence, discussions, and other communications or records of communications with any representatives of Public Utility District No. 2 of Grant County, Port of Quincy, Port District No. 1 of Grant County, Crescent Bar, Inc., homeowners, homeowner associations, sublessees, and/or community representatives.

# EXHIBIT N

AO 88A  (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the

District of Columbia

| | |
|---|---|
| JAMES V. KELLY, et al., | ) |
| *Plaintiff* | ) |
| v. | ) |
| PUBLIC UTILITY DISTRICT NO. 2 OF GRANT | ) |
| COUNTY, et al., | ) |
| *Defendant* | ) |

Civil Action No.   11-cv-023-JLQ

(If the action is pending in another district, state where:

Eastern District of Washington          )

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:  ROBERT J. FLETCHER

☑ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: Perkins Coie, LLP<br>700 13th St NW #600<br>Washington, DC 20005 | Date and Time:<br><br>02/24/2014 1:00 pm |
|---|---|

The deposition will be recorded by this method:   Court reporter

❏ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:   01/08/2014

                 *CLERK OF COURT*

                                                    OR

                                                    /s/ Emanuel Jacobowitz, WSBA #39991

_____            _____
*Signature of Clerk or Deputy Clerk*                 *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*   Crescent Bar, Inc.
_____ , who issues or requests this subpoena, are:

Emanuel Jacobowitz, Johnston Lawyers, P.S.
2701 1st Avenue, Suite 340
Seattle, WA 98121    mannyj@rbrucejohnston.com   206-866-3243

AO 88A  (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  11-cv-023-JLQ

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____                    _____
                                                             *Server's signature*


                                                     _____
                                                             *Printed name and title*


                                                     _____
                                                             *Server's address*

Additional information regarding attempted service, etc:

### Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

**EXHIBIT A**

Residential uses of project lands after 1990 on Crescent Bar Island under the Deponent's license to the Public Utility District No. 2 of Grant County under the Deponent's Priest Rapids Project, No. 2114-208, and related documents, including but not limited to documents relating to the said District's Recreational Resource Management Plan, its Shoreline Management Plan, or its application for relicensing. "Documents" include but are not limited to submissions, orders, staff opinions, and Deponent's related correspondence, discussions, and other communications or records of communications with any representatives of Public Utility District No. 2 of Grant County, Port of Quincy, Port District No. 1 of Grant County, Crescent Bar, Inc., homeowners, homeowner associations, sublessees, and/or community representatives.

# EXHIBIT O

JOHNSTON LAWYERS, P.S.

2701 First Avenue, Suite 340
Seattle, Washington 98121
(206) 866-3230 FAX: (206) 866-2234
Nannyf@HJBrucejohnston.com

January 7, 2014

Office of the General Counsel
David Morenoff, Acting General Counsel
Federal Energy Regulatory Commission
888 First Street, NE
Washington, DC 20426

Re:   *In re: Crescent Bar Litigation*, 11-cv-023-JLQ (W.D. Wash.) – Subpoenas

Dear Mr. Morenoff:

I write to you on behalf of the Plaintiffs in the above-referenced federal action to explain, under 18 C.F.R. 388.111, Plaintiffs' need for records and deposition testimony of the Federal Energy Regulatory Commission (the "Commission") and for the deposition testimony of its employee Mr. Robert Fletcher with regard to information he acquired as its employee.  Attached are subpoenas for these records and depositions.

Plaintiffs are leaseholders on Crescent Bar Island, which is within the boundaries of the Commission's Priest River Rapids Project No. 2114 in Washington State.  Crescent Bar Island is owned by the Public Utility District No. 2 of Grant County ("PUD"), the licensee under the Project.  In 1962, under its license, the PUD leased project lands to the Port of Quincy, which sublet to Crescent Bar, Inc., which in turn sublet sites to other Plaintiffs.

During the course of their lawsuit against PUD and the Port of Quincy, Plaintiffs have sought discovery from the PUD related to its interactions with Commission staff.  Plaintiffs do not seek to impugn or challenge any acts by the Commission or its employees.  Rather, Plaintiffs claim that the PUD, while applying for renewal of its license, failed to seek Commission approval to extend the Crescent Bar, Inc. sublease diligently or in good faith, as the sublease requires.  Further, the PUD has stated that it decided to evict Plaintiffs from the island because it believed the Commission required it, based primarily on discussions with Commission staff.  The factual disputes in the case therefore center on the PUD's interactions with Commission staff.

Defendants disclosed certain Commision employees, including Mr. Fletcher, as potential witnesses. And representatives of the PUD, when deposed, testified that they frequently spoke with Mr. Fletcher and other representatives of the Commission about the PUD's proposed plan for the Project, including restrictions on Plaintiffs' residential uses on Crescent Bar Island. They admitted that they talked with Commission staff, including Mr. Fletcher, to try to ensure that written correspondence or statements from the staff with regard to the proposed plan would serve the PUD's purposes.

For these reasons, we expect that information as to just what the PUD representatives said to Mr. Fletcher and others at FERC will materially advance Plaintiffs' case that the PUD failed to carry out its good-faith sublease obligations to the Plaintiffs. The PUD's representatives' accounts of these conversations are unclear and incomplete, and many of the PUD's related records were destroyed. Therefore, there is no adequate alternative source of the information, so the deposition testimony we seek will be both material and irreplaceable.

We seek documents from the Commission in addition to testimony. We expect Commission records to shed light on the issues, especially because PUD records are unavailable. Production of documents alone will not suffice, however, because the oral content of the PUD's lobbying of the Commission may well be highly material to the case.

Under 18 CFR 388.111, the Commission, in determining whether the public interest will be served by ordering its employees to testify or produce, considers factors including: applicable privileges, the burden on employee time and agency funds, the need to maintain impartiality between private litigants where a substantial government interest is not involved, and established legal standards for the disclosure of confidential information. Federal appellate courts have cast doubt on agencies' power to reject subpoenas based on these factors, and these factors are absent or weak here. No privilege applies where the information sought was disclosed to the Commission non-confidentially; the burden is minimal since we expect to take the deposition in the witnesses' locale and for less than a day; providing neutral factual testimony does not make the Commission take sides; and no confidential information or records are sought. The public interest is served by openness and this case serves the further purpose of ensuring that the terms of subleases authorized by the Commission are carried out.

Because as set forth above the Commission and Mr. Fletcher have knowledge that is material and irreplaceable, and the public interest is served by disclosure, Plaintiffs need and are entitled to receive records and depose the Commission and Mr. Fletcher regarding the PUD'sconversations with staff and involvement in the Commission's approval of the PUD's plan with regard to residential uses on Project land.

Since the depositions have not yet been authorized by the Commission, we had to set the deposition date wihtou conferring with you, but please call or write me if you need to reschedule, or if you need further information to authorize the depositions.

JANUARY 7, 2014
Mr. Morenoff
Page 3 of 3

Lastly, we would also like to depose former Commission staff member Christopher Yeakel on or about the same day, for all the same reasons.  As a courtesy, could you please give me Mr. Yeakel's last known address, or tell me if your office can accept service of a subpoena for him?

I look forward to your response.

Sincerely,

Johnston Lawyers, P.S.

Emanuel Jacobowitz

Cc: Charles Beamon, Esq.
     Plaintiffs' and Defendants' counsel

# EXHIBIT P

Federal Energy Regulatory Commission
Washington, D.C. 20426
FEB 12 2014

Office of the General Counsel

Re:   Subpoena to Testify at a Deposition
in a Civil Action
*Kelly, et al v. Public Utility District No. 2 of
Grant County, et al.*
Civil Action No. 11-cv-023-JLQ
(E.D. Wash.)

**BY ELECTRONIC AND REGULAR MAIL**
Emanuel Jacobowitz, Esq.
Johnston Lawyers, P.S.
2701 First Avenue, Suite 340
Seattle, Washington 98121
mannyj@rbrucejohnston.com

Dear Mr. Jacobowitz:

This letter addresses the above-referenced subpoena served on the Federal
Energy Regulatory Commission (FERC or Commission) on January 8, 2014. In
your subpoena, you request that a FERC employee, Robert J. Fletcher, appear to
testify at a deposition. In addition, you request that FERC designate "one or more
officers, directors, or managing agents" to testify at a deposition and produce the
following documents:

> Residential uses of project lands after 1990 on Crescent Bar Island
> under the Deponent's license to the Public Utility District No. 2 of
> Grant County under the Deponent's Priest Rapids Project, No. 2114-
> 208, and related documents, including but not limited to documents
> relating to the said District's Recreational Resource Management
> Plan, its Shoreline Management Plan, or its application for
> relicensing.   "Documents" include but are not limited to
> submissions, orders, staff opinions, and Deponent's related
> correspondence, discussions, and other communication or records of
> communications with any representatives of Public Utility District
> No. 2 of Grant County, Port of Quincy, Port District No. 1 of Grant
> County, Crescent Bar, Inc., homeowners, homeowner associations,
> sublessees, and/or community representatives.

The Commission objects to the subpoena. In your letter accompanying the
subpoena, you explain that you seek information about oral conversations between

Emanuel Jacobowitz, Esq.
2

Commission staff and Public Utility District No. 2 of Grant County (PUD) staff. You state that the information is necessary to settle a factual dispute about whether FERC required PUD to evict your clients from Crescent Bar Island. The deposition testimony you seek, however, is not necessary or relevant to resolving the factual dispute. Official Commission positions, such as one requiring a licensee to evict lease-holders, are taken through written orders, not by oral statements of FERC employees. In fact, FERC regulation states:

> The Commission staff provides informal advice and assistance to the general public and to prospective applicants for licenses, certificates, and other Commission authorizations. Opinions expressed by the staff do not represent the official views of the Commission, but are designed to aid the public and facilitate the accomplishment of the Commission's functions.

18 C.F.R. 388.104(a). Any official Commission actions taken with regard to PUD are available in written records. If any relevant written records are not currently publicly available, you should request them pursuant to the Freedom of Information Act. More information is available at http://www.ferc.gov/legal/ceii-foia.asp. FERC must consider whether it is in the public interest to comply with a subpoena, and where, as here, the testimony requested is irrelevant to the underlying dispute and the relevant information is available in written documents, there is not a compelling public interest in compliance. *See* 18 C.F.R. 388.111. Accordingly, the Commission will not comply with your subpoena.

In your letter you also asked if the Commission could provide you with the address of a former employee or accept service of a subpoena on his behalf. FERC is unable to provide personal information about a former employee to an outside party and cannot accept service on behalf of a former employee. If you have any questions regarding this matter, please feel free to contact Jenny Knopinski at 202-502-6528 or jenny.knopinski@ferc.gov.

Sincerely,

Charles A. Beamon
Associate General Counsel
General and Administrative Law

# EXHIBIT Q

R. Bruce Johnston, WSBA #4646
Emanuel Jacobowitz, WSBA #39991
Johnston Lawyers, P.S.
2701 First Ave., Suite 340
Seattle, WA 98121
(206) 866-3230; (206) 866-3234 Fax
bruce@rbrucejohnston.com

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

JAMES V. KELLY; CRESCENT BAR,  )
INC., *et al*                  )   Case No.  CV-11-023-JLQ
                               )
                               )
            Plaintiffs,        )
                               )   NOTICE OF DEPOSITION OF ROBERT J.
vs.                            )   FLETCHER
                               )
PUBLIC UTILITY DISTRICT NO. 2., *et al.,*  )
                               )
            Defendants.        )

TO:         PUBLIC UTILITY DISTRICT NO. 2 OF GRANT COUNTY, WASHINGTON

AND TO:     JAMES KALAMON and PAINE HAMBLEN LLP, its counsel of record;

AND TO:     ALL OTHER PARTIES AND COUNSEL OF RECORD;

AND TO:     ROBERT J. FLETCHER

AND TO:     FEDERAL ENERGY REGULATORY COMMISSION and DAVID

MORENOFF, its General Counsel

        YOU AND EACH OF YOU WILL PLEASE TAKE NOTICE that pursuant to Fed. R.

Civ. P. 45 and Fed. R. Civ. P. 30, the testimony of ROBERT J. FLETCHER will be taken upon

oral examination, at the instance and request of Crescent Bar, Inc. and the other Plaintiffs in the

above-entitled action, before a person authorized to administer oaths.

NOTICE OF DEPOSITION OF ROBERT J. FLETCHER                    JOHNSTON LAWYERS, P.S.
Page 1 of 3                                                   2701 FIRST AVENUE, SUITE 340
                                                             SEATTLE, WA 98121
                                                             (206) 866-3230

| | |
|---|---|
| DATE: | April 23, 2014 |
| TIME: | 9:00 AM |
| PLACE: | Perkins Coie, LLP<br>700 Thirteenth Street NW #600<br>Washington, DC 20005 |

This deposition shall be subject to continuance from time to time or place to place until completed and is taken on the ground and for the reason that the said witness may give evidence material to the claims and defenses in the above-entitled matter.

A copy of the civil subpoena is attached.

Dated this 8th day of April, 2014.

JOHNSTON LAWYERS, P.S.

Emanuel Jacobowitz, WSBA No. 39991
2701 First Avenue, Suite 340
Seattle, WA 98121
Telephone: (206) 866-3230
Fax: (206) 866-3234
mannyj@rbrucejohnston.com
*Counsel for Crescent Bar, Inc.*

NOTICE OF DEPOSITION OF ROBERT J. FLETCHER
Page 2 of 3

JOHNSTON LAWYERS, P.S.
2701 FIRST AVENUE, SUITE 340
SEATTLE, WA 98121
(206) 866-3230

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of April, 2014, I served or caused to be served the foregoing document to the following parties or counsel of record by electronic mail at the following addresses:

Scott B. Henrie:  shenrie@williamskastner.com
Manish Borde:  mborde@williamskastner.com
Christopher F. Ries:  chrisr@rieslawfirm.com
Michael B. Tierney:  tierney@tierneylaw.com
Glenn J. Amster:  gamster@kantortaylor.com
Dale M. Foreman:  dale@daleforeman.com
Daniel J. Appel:  attorneyappel@gmail.com;
James M. Kalamon:  james.kalamon@painehamblen.com
Dale A. DeFelice:  dale.deflice@painehamblen.com
Brook L. Cunningham:  brook.cunningham@painehamblen.com
Lewis W. Card:  lew@dadkp.com
Quentin Batjer:  quentin@dadkp.com
And to the deponent at the Federal Energy Regulatory Commission, 888 First Street, NE, Washington, DC 20426, and to the Federal Energy Regulatory Commission, and its counsel, David Morenoff and Christopher MacFarlane, at 888 First Street, NE, Washington, DC 20426, David.Morenoff@ferc.gov and Christopher.MacFarlane@ferc.gov.

Christina DePano

NOTICE OF DEPOSITION OF ROBERT J. FLETCHER
Page 3 of 3

AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### District of Columbia

| | | |
|---|---|---|
| JAMES V. KELLY, et al. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   11-cv-023-JLQ |
| PUBLIC UTILITY DISTRICT NO. 2 OF GRANT | ) | |
| COUNTY, et al. | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | Eastern District of Washington          ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:  ROBERT J. FLETCHER

☑ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: Perkins Coie, LLP | Date and Time: |
|---|---|
| 700 13th St. NW, #600 | |
| Washington, DC 20005 | 04/23/2014 9:00 am |

The deposition will be recorded by this method:   Court reporter

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

All documents referenced or described on Exhibit A, attached hereto.

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date: _ 04/01/2014

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*     CRESCENT BAR, INC.
, who issues or requests this subpoena, are:

Emanuel Jacobowitz
Johnston Lawyers, PS
2701 1st Avenue, Suite 340, Seattle, WA 98121, 206-866-3243, mannyj@rbrucejohnston.com

AO 88A  (Rev  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.   11-cv-023-JLQ

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)*
was received by me on *(date)*

☐ I served the subpoena by delivering a copy to the named individual as follows:

on *(date)*                    ; or

☐ I returned the subpoena unexecuted because:

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$         45.60         .

My fees are $                    for travel and $                    for services, for a total of $         0.00         .

I declare under penalty of perjury that this information is true.

Date:

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## EXHIBIT A

Residential uses of project lands after 1990 on Crescent Bar Island under the Deponent's license to the Public Utility District No. 2 of Grant County under the Deponent's Priest Rapids Project, No. 2114-208, and related documents, including but not limited to documents relating to the said District's Recreational Resource Management Plan, its Shoreline Management Plan, or its application for relicensing. "Documents" include but are not limited to submissions, orders, staff opinions, and Deponent's related correspondence, discussions, and other communications or records of communications with any representatives of Public Utility District No. 2 of Grant County, Port of Quincy, Port District No. 1 of Grant County, Crescent Bar, Inc., homeowners, homeowner associations, sublessees, and/or community representatives.

# EXHIBIT R

AO 88A  (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the

District of Columbia

| | |
|---|---|
| JAMES V. KELLY, et al. | ) |
| *Plaintiff* | ) |
| v. | ) |
| PUBLIC UTILITY DISTRICT NO. 2 OF GRANT | ) |
| COUNTY, et al. | ) |
| *Defendant* | ) |

Civil Action No.   11-cv-023-JLQ

(If the action is pending in another district, state where:

Eastern District of Washington          )

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:  ROBERT J. FLETCHER

☑ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: Perkins Coie, LLP<br>700 13th St. NW, #600<br>Washington, DC 20005 | Date and Time:<br>04/23/2014 9:00 am |
|---|---|

The deposition will be recorded by this method:   Court reporter

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

All documents referenced or described on Exhibit A, attached hereto.

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:   04/01/2014

CLERK OF COURT

OR

_____          _____
*Signature of Clerk or Deputy Clerk*                          *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*   CRESCENT BAR, INC.
_____ , who issues or requests this subpoena, are:

Emanuel Jacobowitz
Johnston Lawyers, PS
2701 1st Avenue, Suite 340, Seattle, WA 98121, 206-866-3243, mannyj@rbrucejohnston.com

AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.   11-cv-023-JLQ

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒  I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____ on *(date)* _____ ; or

❒  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____45.60_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0.00____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*

 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

 **(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

 **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*

 **(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

 **(i)** fails to allow a reasonable time to comply;

 **(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

 **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

 **(iv)** subjects a person to undue burden.

 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

 **(i)** disclosing a trade secret or other confidential research, development, or commercial information;

 **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

 **(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

 **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

 **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*

 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

 **(i)** expressly make the claim; and

 **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

# EXHIBIT S

R. Bruce Johnston, WSBA #4646
Emanuel Jacobowitz, WSBA #39991
Johnston Lawyers, P.S.
2701 First Ave., Suite 340
Seattle, WA 98121
(206) 866-3230; (206) 866-3234 Fax
bruce@rbrucejohnston.com

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAMES V. KELLY; CRESCENT BAR, INC., *et al.*, | Case No.  CV-11-023-JLQ |
| Plaintiffs, | NOTICE OF DEPOSITION OF FEDERAL ENERGY REGULATION COMMISSION |
| vs. | |
| PUBLIC UTILITY DISTRICT NO. 2 OF GRANT COUNTY, *et al.*, | |
| Defendants. | |

TO:          PUBLIC UTILITY DISTRICT NO. 2 OF GRANT COUNTY, WASHINGTON

AND TO:      JAMES KALAMON and PAINE HAMBLEN LLP, its counsel of record;

AND TO:      ALL OTHER PARTIES AND COUNSEL OF RECORD;

AND TO:      FEDERAL ENERGY REGULATORY COMMISSION and DAVID

MORENOFF, its General Counsel

YOU AND EACH OF YOU WILL PLEASE TAKE NOTICE that pursuant to Fed. R. Civ. P.

45 and Fed. R. Civ. P. 30, the testimony of the Federal Energy Regulatory Commission, of 888

First Street, NE, Washington, DC 20426, will be taken upon oral examination, at the instance

and request of Crescent Bar, Inc. and the other Plaintiffs in the above-entitled action, before a

NOTICE OF DEPOSITION OF FEDERAL ENERGY
REGULATION COMMISSION Page 1 of 4

JOHNSTON LAWYERS, P.S.
2701 FIRST AVENUE, SUITE 340
SEATTLE, WA 98121
(206) 866-3230

person authorized to administer oaths.  The deponent organization is required under Fed. R.

Civ. P. 30(b)(6) to designate one or more representatives to testify on its behalf, with respect to

the matters set forth in the attached subpoena, including:

Residential uses of project lands after 1990 on Crescent Bar Island under the Deponent's

license to the Public Utility District No. 2 of Grant County under the Deponent's Priest Rapids

Project, No. 2114-208, and related documents, including but not limited to documents relating

to the said District's Recreational Resource Management Plan, its Shoreline Management Plan,

or its application for relicensing, and any related correspondence, discussions, and other

communications or records of communications with any representatives of Public Utility

District No. 2 of Grant County, Port of Quincy, Port District No. 1 of Grant County, Crescent

Bar, Inc., homeowners, homeowner associations, sublessees, and/or community

representatives.

DATE:        April 23, 2014

TIME:        1:00 PM

PLACE:       Perkins Coie, LLP
             700 Thirteenth Street NW, #600
             Washington, DC 20005

This deposition shall be subject to continuance from time to time or place to place until

completed and is taken on the ground and for the reason that the said witness may give evidence

material to the claims and defenses in the above-entitled matter.

A copy of the civil subpoena is attached.

NOTICE OF DEPOSITION OF FEDERAL ENERGY
REGULATION COMMISSION Page 2 of 4

JOHNSTON LAWYERS, P.S.
2701 FIRST AVENUE, SUITE 340
SEATTLE, WA 98121
(206) 866-3230

Dated this 8th day of April, 2014.

JOHNSTON LAWYERS, P.S.

Emanuel Jacobowitz, WSBA No. 39991
2701 First Avenue, Suite 340
Seattle, WA 98121
Telephone: (206) 866-3230
Fax: (206) 866-3234
mannyj@rbrucejohnston.com
*Counsel for Crescent Bar, Inc.*

NOTICE OF DEPOSITION OF FEDERAL ENERGY
REGULATION COMMISSION Page 3 of 4

JOHNSTON LAWYERS, P.S.
2701 FIRST AVENUE, SUITE 340
SEATTLE, WA 98121
(206) 866-3230

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of April, 2014, I served or caused to be served the foregoing document to the following parties or counsel of record by electronic mail at the following addresses:

Scott B. Henrie: shenrie@williamskastner.com
Manish Borde: mborde@williamskastner.com
Christopher F. Ries: chrisr@rieslawfirm.com
Michael B. Tierney: tierney@tierneylaw.com
Glenn J. Amster: gamster@kantortaylor.com
Dale M. Foreman: dale@daleforeman.com
Daniel J. Appel: attorneyappel@gmail.com;
James M. Kalamon: james.kalamon@painehamblen.com
Dale A. DeFelice: dale.deflice@painehamblen.com
Brook L. Cunningham: brook.cunningham@painehamblen.com
Lewis W. Card: lew@dadkp.com
Quentin Batjer: quentin@dadkp.com
And to the deponent at 888 First Street, NE, Washington, DC 20426, and its counsel, David Morenoff: David.Morenoff@ferc.gov, and Christopher A. MacFarlane: Christopher.MacFarlane@ferc.gov.

Christina DePano

NOTICE OF DEPOSITION OF FEDERAL ENERGY
REGULATION COMMISSION Page 4 of 4

JOHNSTON LAWYERS, P.S.
2701 FIRST AVENUE, SUITE 340
SEATTLE, WA 98121
(206) 866-3230

AD 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | | |
|---|---|---|
| JAMES V. KELLY, et al., | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   11-cv-023-JLQ |
| PUBLIC UTILITY DISTRICT NO. 2 OF GRANT | ) | |
| COUNTY. et al., | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | Eastern District of Washington      ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:  FEDERAL ENERGY REGULATION COMMISSION

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

See Exhibit A, attached

| Place: Perkins Coie, LLP<br>700 13th St NW #600<br>Washington, DC 20005 | Date and Time:<br>04/23/2014 1:00 pm |
|---|---|

The deposition will be recorded by this method:   Court reporter

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

All documents referenced or described on Exhibit A, attached hereto.

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:   04/04/2014

*CLERK OF COURT*

OR

_____        _____
*Signature of Clerk or Deputy Clerk*                *Attorney's Signature*   WSBA# 29991

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*      Crescent Bar, Inc
, who issues or requests this subpoena, are:

Emanuel Jacobowitz, Johnston Lawyers, P.S.
2701 1st Avenue, Suite 340
Seattle, WA 98121   mannyj@rbrucejohnston.com   206-866-3243

AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  11-cv-023-JLQ

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

    ☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ _____

_____ on *(date)* _____ ; or _____

    ☐ I returned the subpoena unexecuted because: _____

_____ _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$    45.60 _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00  .

I declare under penalty of perjury that this information is true.

Date: _____

_____ ____ _
*Server's signature*

_____ _____
*Printed name and title*

_____ ___ __ _
*Server's address*

Additional information regarding attempted service, etc:

AO 88A  (Rev  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

**EXHIBIT A**

Residential uses of project lands after 1990 on Crescent Bar Island under the Deponent's license to the Public Utility District No. 2 of Grant County under the Deponent's Priest Rapids Project, No. 2114-208, and related documents, including but not limited to documents relating to the said District's Recreational Resource Management Plan, its Shoreline Management Plan, or its application for relicensing. "Documents" include but are not limited to submissions, orders, staff opinions, and Deponent's related correspondence, discussions, and other communications or records of communications with any representatives of Public Utility District No. 2 of Grant County, Port of Quincy, Port District No. 1 of Grant County, Crescent Bar, Inc., homeowners, homeowner associations, sublessees, and/or community representatives.

# EXHIBIT T

AO 88A  (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the

District of Columbia

| | |
|---|---|
| JAMES V. KELLY, et al., | ) |
| *Plaintiff* | ) |
| v. | ) |
| PUBLIC UTILITY DISTRICT NO. 2 OF GRANT | ) |
| COUNTY, et al., | ) |
| *Defendant* | ) |

Civil Action No.   11-cv-023-JLQ

(If the action is pending in another district, state where:

Eastern District of Washington          )

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:  FEDERAL ENERGY REGULATION COMMISSION

☑ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

See Exhibit A, attached

| Place: Perkins Coie, LLP | Date and Time: |
|---|---|
| 700 13th St NW #600 | |
| Washington, DC 20005 | 02/24/2014 9:00 am |

The deposition will be recorded by this method:   Court reporter

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

All documents referenced or described on Exhibit A, attached hereto.

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:   01/08/2014

CLERK OF COURT

OR

_____          /s/ Emanuel Jacobowitz, WSBA #39991
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*     Crescent Bar, Inc.
_____ , who issues or requests this subpoena, are:

Emanuel Jacobowitz, Johnston Lawyers, P.S.
2701 1st Avenue, Suite 340
Seattle, WA 98121    mannyj@rbrucejohnston.com    206-866-3243

AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  11-cv-023-JLQ

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____         _____
                                        *Server's signature*

                                        _____
                                        *Printed name and title*

                                        _____
                                        *Server's address*

Additional information regarding attempted service, etc:

AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

**EXHIBIT A**

Residential uses of project lands after 1990 on Crescent Bar Island under the Deponent's license to the Public Utility District No. 2 of Grant County under the Deponent's Priest Rapids Project, No. 2114-208, and related documents, including but not limited to documents relating to the said District's Recreational Resource Management Plan, its Shoreline Management Plan, or its application for relicensing. "Documents" include but are not limited to submissions, orders, staff opinions, and Deponent's related correspondence, discussions, and other communications or records of communications with any representatives of Public Utility District No. 2 of Grant County, Port of Quincy, Port District No. 1 of Grant County, Crescent Bar, Inc., homeowners, homeowner associations, sublessees, and/or community representatives.

# EXHIBIT U

# AFFIDAVIT OF SERVICE

State of D.C.                        County of D.C                        U.S. District Court

Case Number: 11-CV-023-JLQ   Court Date: 4/23/2014  9:00 am

Plaintiff:
**James V. Kelly, et.al.,**

vs.

Defendant:
**Public Utility District NO. 2 of Grant County, et.al.,**

For:
Johnston Lawyers, P.S.
2701 First Avenue
Suite 340
Seattle, WA  98121

Received by JM & Associates to be served on **Mr. Robert J. Fletcher, 888 First Street N.E., Washington, DC.**

I, Jerry McClam, being duly sworn, depose and say that on the **3rd day of April, 2014** at **11:30 am, I:**

**INDIVIDUALLY/PERSONALLY** served by delivering a true copy of the **Subpoena to Testify at a Deposition in a Civil Action, with exhibits** with the date and hour of service endorsed thereon by me, to: **Mr. Robert J. Fletcher** at the address of: **888 First Street N.E., Washington, DC**, and informed said person of the contents therein, in compliance with state statutes.

**Additional Information pertaining to this Service:**
4/3/2014 3:02 pm  I served Robert J. Fletcher at 11:30am on 04/03/2014. Located at 888 First Street Washington, D.C. He is a 50 year old white male, 6'2", 250lbs, dark brown hair and wore glasses.

I certify that I am over the age of 18 and have no interest in the above action.

Subscribed and Sworn to before me on the 3rd day of
April, 2014 by the affiant who is personally known to
me.

NOTARY PUBLIC

SARAH JANE DRAY
NOTARY PUBLIC
REG. #7573163
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES MARCH 31, 2017

Jerry McClam
Process Server

JM & Associates
2121 Eisenhower Avenue
Suite 200
Alexandria, VA 22314
(703) 309-3022
Our Job Serial Number: JMA-2014000376

Copyright © 1992-2011 Database Services, Inc. - Process Server's Toolbox V6.5n

# EXHIBIT V

## AFFIDAVIT OF SERVICE

State of D.C                          County of D.C                          U.S. District Court

Case Number: 11-CV-023-JLQ   Court Date: 4/23/2014  1:00 pm

Plaintiff:
**James V. Kelly, et.al.,**

vs.

Defendant:
**Public Utility District NO.2 of Grant County, et.al.,**

For:
Johnston Lawyers, P.S.
2701 First Avenue
Suite 340
Seattle, WA  98121

Received by JM & Associates to be served on **Federal Energy Regulatory Commission The Office of the General Counsel David Morenoff, 888 First Street N.E., Washington, DC 20426.**

I, Elizabeth Boyd, being duly sworn, depose and say that on the **7th day of April, 2014** at **1:54 pm, I:**

served an **AUTHORIZED** entity by delivering a true copy of the **Subpoena, Letter with attachments** with the date and hour of service endorsed thereon by me, to: **Edward Hall** as **Registered Agent** at the address of: **888 First Street, N.E., Washington, DC 20426,** who stated they are authorized to accept service for **Federal Energy Regulatory Commission**, and informed said person of the contents therein, in compliance with state statutes.

**Additional Information pertaining to this Service:**
4/7/2014  2:01 pm   Served Edward Hall - B/M approx 65yts old 5'10 196lbs no glasses white hair

I certify that I am over the age of 18 and have no interest in the above action.

Subscribed and Sworn to before me on the 7th day of
April, 2014 by the affiant who is personally known to
me.

_____
NOTARY PUBLIC

SARAH JANE DRAY
NOTARY PUBLIC
REG. #7573163
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES MARCH 31, 2017

_____
**Elizabeth Boyd**
Process Server

**JM & Associates**
**2121 Eisenhower Avenue**
**Suite 200**
**Alexandria, VA 22314**
(703) 309-3022
Our Job Serial Number: JMA-2014000394

Copyright © 1992-2011 Database Services, Inc. - Process Server's Toolbox V6.5n

# EXHIBIT W

# AFFIDAVIT OF SERVICE

State of D.C                    County of D.C                    U.S. District Court

Case Number: 11-CV-023-JLQ

Plaintiff:
**James V. Kelly, et.al.,**

vs.

Defendant:
**Public Utility District NO.2 of Grant County, et.al.,**

For:
Johnston Lawyers, P.S.
2701 First Avenue
Suite 340
Seattle, WA  98121

Received by JM & Associates to be served on **FERC & Robert J. Fletcher, 888 First Street N.E., Washington, DC 20426**.

I, Elizabeth Boyd, being duly sworn, depose and say that on the **8th day of April, 2014** at **2:42 pm**, I:

served an **AUTHORIZED** entity by delivering a true copy of the **Notice of Deposition for Robert J. Fletcher, Notice of Deposition for FERC, Subpoena to Testify at a Deposition in a Civil Action for Robert J. Fletcher, Subpoena to Testify at a Deposition in a Civil Action for Federal Energy Regulation Commission, Letter for Office of the General Counsel David Morenoff, Acting General Counsel Federal Energy Regulatory Commission** with the date and hour of service endorsed thereon by me, to: **Edward Washington as Registered Agent** at the address of: **888 First Street N.E., Washington, DC 20426**, who stated they are authorized to accept service for **FERC &**, and informed said person of the contents therein, in compliance with state statutes.

**Military Status:** Based upon inquiry of party served, Defendant is not in the military service of the United States of America.

**Marital Status:** Based upon inquiry of party served, Defendant is not married.

**Additional Information pertaining to this Service:**
4/8/2014  2:42 pm  I Served Edward Washington B/M approx 30yrs old 6'3 205 lbs no glasses black hair full trimmed beard he was served all documents for Robert J. Fletcher, Federal Energy Regulation Commission, & David Morenoff.

I certify that I am over the age of 18 and have no interest in the above action.

Subscribed and Sworn to before me on the ____9____ day
of ___April___, ___2014___ by the affiant who is
personally known to me.

_____
NOTARY PUBLIC

_____
Elizabeth Boyd
Process Server

**JM & Associates**
**2121 Eisenhower Avenue**
**Suite 200**
**Alexandria, VA 22314**
**(703) 309-3022**
Our Job Serial Number: JMA-2014000406

SARAH JANE DRAY
NOTARY PUBLIC
REG. #7573163
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES MARCH 31, 2017

Copyright © 1992-2011 Database Services, Inc. - Process Server's Toolbox V6.5n

# EXHIBIT X

## Manny Jacobowitz

| | |
|---|---|
| **From:** | Manny Jacobowitz |
| **Sent:** | Friday, April 11, 2014 10:36 AM |
| **To:** | 'Mark Hershfield' |
| **Cc:** | 'Glenn Amster'; 'lew@dadkp.com'; 'dale@daleforeman.com'; Dan Appel; Bruce Johnston; Charles.Beamon@FERC.gov |
| **Subject:** | RE: FERC response to subpoena of Mr. Fletcher |
| **Attachments:** | Fletcher letter.pdf; Ltr to FERC 1-7-2014.pdf; Ltr to FERC 4-4-2014.pdf |

Mr. Hershfield, I write in response to Mr. Beamon's attached letter that I received yesterday.  I disagree with his analysis of the law – you must know that courts consistently hold that under *Touhy* and the Housekeeping Statute, regulations such as 18 CFR 388.111 do not allow an agency to avoid subpoenas. I also disagree with his reading of the regulation itself, which he failed to attach to his letter or quote, but which reads in relevant part:

> (c) A party causing a subpoena to be issued to the Commission or any employee or former employee of the Commission must furnish a statement to the General Counsel of the Commission. This statement must set forth the party's interest in the case or matter, the relevance of the desired testimony or documents, and a discussion of whether the desired testimony or documents are reasonably available from other sources. If testimony is desired, the statement must also contain a general summary of the testimony and a discussion of whether Commission records could be produced and used in lieu of testimony. Any authorization for testimony will be limited to the scope of the demand as summarized in such statement.

Mr. Beamon's letter suggests that our subpoena is deficient under this regulation for lack of this material.  On the contrary, I attach here a copy of our statement, which we furnished to the General Counsel in January along with copies of the subpoenas, and sent to him again as an expressly incorporated attachment to our April 4, 2014 letter (also attached here), along with copies of the updated subpoenas, by hand delivery and by email, with copies to Mr. Beamon and Mr. MacFarlane.  As stated there, and as also indicated in Exhibit A to the subpoenas, we seek testimony as to Mr. Fletcher and the Commission's, oral and written communications with the Defendants in our action, and related documents, relating to the Defendant PUD's relicensing and lease renewal under the Priest Rapids Project, and its Shoreline Management Plan, especially regarding residential uses on Crescent Bar Island.  We also explained why records alone would not suffice, and why the desired testimony is relevant and not reasonably available from other sources.  If you have additional questions after reading the statement, please call me.

What time would be "sufficient opportunity to follow the required process" as Mr. Beamon's letter requests?  As you said in our call a few days ago, a civil subpoena is not a matter for FERC adjudication or rulemaking – 18 CFR 388.111 provides for the General Counsel's office to respond for FERC.  You indicated that it usually takes less than two weeks. On the Commission's request, we waited a month for a response the first time we brought this question up, and I conferred by telephone with Ms. Knopinski and again with Mr. Beamon about the facts set forth in our letter, so surely all the relevant factual and legal issues have been thoroughly considered.

Sincerely,

MANNY JACOBOWITZ
JOHNSTON LAWYERS, PS
2701 FIRST AVENUE, SUITE 340
SEATTLE, WA 98121
206-866-3243
*mannyj@rbrucejohnston.com*

*IRS CIRCULAR 230 DISCLOSURE*

*As required by United States Treasury Regulations, you should be aware that this communication is not intended or written by the sender to be used, and it cannot be used, by any recipient for the purpose of avoiding penalties that may be imposed on the recipient under United States federal tax laws.*

*CONFIDENTIALITY STATEMENT*
*This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.*

**From:** Mark Hershfield [mailto:mark.hershfield@ferc.gov]
**Sent:** Thursday, April 10, 2014 1:09 PM
**To:** mannyj@rbrucejohnston.com
**Cc:** Waldref, Vanessa R. (USAWAE)
**Subject:** FERC response to subpoena of Mr. Fletcher

Mr. Jacobowitz

Attached is a letter in response to your request to subpoena Mr. Fletcher.


Mark Hershfield
Federal Energy Regulatory Commission
(202) 502-8597
Follow us on Twitter  & Facebook

Federal Energy Regulatory Commission
Washington, D.C.  20426

Office of the General Counsel

Re:   Subpoena to Testify at a Deposition
in a Civil Action
*Kelly, et al v. Public Utility District No. 2 of
Grant County, et al.*
Civil Action No. 11-cv-023-JLQ
(E.D. Wash.)

**BY ELECTRONIC AND REGULAR MAIL**
Emanuel Jacobowitz, Esq.
Johnston Lawyers, P.S.
2701 First Avenue, Suite 340
Seattle, Washington 98121
mannyj@rbrucejohnston.com

Dear Mr. Jacobowitz:

This letter addresses the above-referenced subpoena served on the Federal Energy Regulatory Commission (FERC or Commission) on April 3, 2014.  In your subpoena, you request that a FERC employee, Robert J. Fletcher, appear to testify at a deposition and produce "all documents referenced or described" as:

Residential uses of project lands after 1990 on Crescent Bar Island under the Deponent's license to the Public Utility District No. 2 of Grant County under the Deponent's Priest Rapids Project, No. 2114-208. and related documents, including but not limited to documents relating to the said District's Recreational Resource Management Plan, its Shoreline Management Plan, or its application for relicensing.  "Documents" include but are not limited to submissions, orders, staff opinions and Deponent's related correspondence, discussions, and other communications or records of communications with any representatives of Public Utility District No. 2 of Grant County, Port of Quincy, Port District No. 1 of Grant County, Crescent Bar, Inc., homeowners, homeowner associations, sublessees, and/or community representatives.

*Touhy* **Regulations**

By statute, federal agencies are vested with the authority to prescribe the manner in which their employees respond to requests for information from outside

sources. Specifically, 5 U.S.C. § 301 provides (in pertinent part) that "[t]he head of an Executive department or military department may prescribe regulations for the government of his department, and the conduct of its employees, the distribution and performance of its business, and the custody, use and preservation of its records, papers and property." Under this authority, government agencies issue regulations governing the manner in which the agency may respond to demands for testimony and the production of documents. These are called the Touhy regulations, in reference to *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). In *Touhy*, the Supreme Court upheld the authority of the Attorney General to centralize determinations concerning subpoena requests and forbid any unauthorized response. If the decision-maker refuses to permit production, a federal employee cannot be compelled to provide the information in question, even if requested to do so by subpoena.

FERC's Touhy regulations are found at 18 C.F.R. § 388.111, which contain restrictions on FERC employees testifying or producing documents regarding official matters in response to subpoenas relating to any proceeding where the Commission is not a party. *See* 18 C.F.R. § 388.111. The Commission's General Counsel or his designee determines whether and to what extent a FERC employee is authorized to provide testimony or documents pursuant to the standards established at 18 C.F.R. § 388.111(e). A copy of these regulations has been attached for your convenience.

The subpoena that you provided to Mr. Fletcher does not contain any information regarding the subject of the testimony that you seek, or if Commission records could be produced and used in lieu of testimony, as required by the Touhy regulations. *See* 18 C.F.R. § 388.111(c). Also, the subpoenas did not include a statement setting forth your interest in the case or matter, the relevance of the desired testimony or documents, and a discussion of whether the desired testimony or documents are reasonably available from other sources. *See id.* For that reason, I ask that you please provide a response to this letter in writing with sufficient detail regarding the subjects about which you seek testimony and/or documents from the FERC or Mr. Fletcher. This additional detail will aid FERC in processing a response to your subpoena, as required by the Touhy regulations. We would prefer the opportunity to consider fully information that you might provide to us in response to this letter rather than moving to quash the subpoena at this time.

In the meantime, to allow us sufficient opportunity to follow the required process, and while we attempt to resolve any other issues, we request that you withdraw the subpoena. If you are unwilling to do so, we would like to schedule a meeting to confer as soon as possible to attempt to reach an agreement that obviates the need for judicial intervention. If you have any questions regarding

this matter, please feel free to contact Mark Hershfield at 202-502-8597 or
mark.hershfield@ferc.gov.

Sincerely,

Charles A. Beamon
Associate General Counsel
General and Administrative Law

Enclosures
cc: Vanessa Waldref, Esq. DOJ

JOHNSTON LAWYERS, P.S.

2701 First Avenue, Suite 340
Seattle, Washington 98121
(206) 866-3230 FAX: (206) 866-3234
Manny/~ RBruceJohnston.com

January 7, 2014

Office of the General Counsel
David Morenoff, Acting General Counsel
Federal Energy Regulatory Commission
888 First Street, NE
Washington, DC 20426

Re:   *In re: Crescent Bar Litigation*, 11-cv-023-JLQ (W.D. Wash.) – Subpoenas

Dear Mr. Morenoff:

I write to you on behalf of the Plaintiffs in the above-referenced federal action to explain, under 18 C.F.R. 388.111, Plaintiffs' need for records and deposition testimony of the Federal Energy Regulatory Commission (the "Commission") and for the deposition testimony of its employee Mr. Robert Fletcher with regard to information he acquired as its employee.  Attached are subpoenas for these records and depositions.

Plaintiffs are leaseholders on Crescent Bar Island, which is within the boundaries of the Commission's Priest River Rapids Project No. 2114 in Washington State.  Crescent Bar Island is owned by the Public Utility District No. 2 of Grant County ("PUD"), the licensee under the Project.  In 1962, under its license, the PUD leased project lands to the Port of Quincy, which sublet to Crescent Bar, Inc., which in turn sublet sites to other Plaintiffs.

During the course of their lawsuit against PUD and the Port of Quincy, Plaintiffs have sought discovery from the PUD related to its interactions with Commission staff.  Plaintiffs do not seek to impugn or challenge any acts by the Commission or its employees.  Rather, Plaintiffs claim that the PUD, while applying for renewal of its license, failed to seek Commission approval to extend the Crescent Bar, Inc. sublease diligently or in good faith, as the sublease requires.  Further, the PUD has stated that it decided to evict Plaintiffs from the island because it believed the Commission required it, based primarily on discussions with Commission staff.  The factual disputes in the case therefore center on the PUD's interactions with Commission staff.

Defendants disclosed certain Commion employees, including Mr. Fletcher, as potential witnesses. And representatives of the PUD, when deposed, testified that they frequently spoke with Mr. Fletcher and other representatives of the Commission about the PUD's proposed plan for the Project, including restrictions on Plaintiffs' residential uses on Crescent Bar Island. They admitted that they talked with Commission staff, including Mr. Fletcher, to try to ensure that written correspondence or statements from the staff with regard to the proposed plan would serve the PUD's purposes.

For these reasons, we expect that information as to just what the PUD representatives said to Mr. Fletcher and others at FERC will materially advance Plaintiffs' case that the PUD failed to carry out its good-faith sublease obligations to the Plaintiffs. The PUD's representatives' accounts of these conversations are unclear and incomplete, and many of the PUD's related records were destroyed. Therefore, there is no adequate alternative source of the information, so the deposition testimony we seek will be both material and irreplaceable.

We seek documents from the Commission in addition to testimony. We expect Commission records to shed light on the issues, especially because PUD records are unavailable. Production of documents alone will not suffice, however, because the oral content of the PUD's lobbying of the Commission may well be highly material to the case.

Under 18 CFR 388.111, the Commission, in determining whether the public interest will be served by ordering its employees to testify or produce, considers factors including: applicable privileges, the burden on employee time and agency funds, the need to maintain impartiality between private litigants where a substantial government interest is not involved, and established legal standards for the disclosure of confidential information. Federal appellate courts have cast doubt on agencies' power to reject subpoenas based on these factors, and these factors are absent or weak here. No privilege applies where the information sought was disclosed to the Commission non-confidentially; the burden is minimal since we expect to take the deposition in the witnesses' locale and for less than a day; providing neutral factual testimony does not make the Commission take sides; and no confidential information or records are sought. The public interest is served by openness and this case serves the further purpose of ensuring that the terms of subleases authorized by the Commission are carried out.

Because as set forth above the Commission and Mr. Fletcher have knowledge that is material and irreplaceable, and the public interest is served by disclosure, Plaintiffs need and are entitled to receive records and depose the Commission and Mr. Fletcher regarding the PUD'sconversations with staff and involvement in the Commission's approval of the PUD's plan with regard to residential uses on Project land.

Since the depositions have not yet been authorized by the Commission, we had to set the deposition date wihtou conferring with you, but please call or write me if you need to reschedule, or if you need further information to authorize the depositions.

JANUARY 7, 2014
Mr. Morenoff
Page 3 of 3

Lastly, we would also like to depose former Commission staff member Christopher Yeakel on or about the same day, for all the same reasons.  As a courtesy, could you please give me Mr. Yeakel's last known address, or tell me if your office can accept service of a subpoena for him?

I look forward to your response.

Sincerely,

Johnston Lawyers, P.S.

Emanuel Jacobowitz

Cc: Charles Beamon, Esq.
    Plaintiffs' and Defendants' counsel

# JOHNSTON LAWYERS, P.S.

2701 First Avenue, Suite 340
Seattle, Washington 98121
(206) 866-3243 FAX: (206) 866-3234
MannyJ@RBruceJohnston.com

April 4, 2014

Office of the General Counsel
David Morenoff, Acting General Counsel
Federal Energy Regulatory Commission
888 First Street, NE
Washington, DC 20426

Re:   *In re: Crescent Bar Litigation*, 11-cv-023-JLQ (E.D. Wash.) – Subpoenas

Dear Mr. Morenoff:

I write to you on behalf of the Plaintiffs in the above-referenced federal action, following up my recent conversation with Mr. Beamon and Mr. MacFarland of your office regarding subpoenas issued in the said action to the Federal Energy Regulatory Commission (the "Commission") and its employee Robert J. Fletcher on January 8, 2014. Because possible issues regarding service of our January 8, 2014 subpoena on Mr. Fletcher recently came to our attention, we have re-served Mr. Fletcher and the Commission with new subpoenas, substantively identical to the January 8, 2014 subpoenas except for the date and return date. Copies of these updated subpoenas are enclosed. Also enclosed and fully incorporated here by reference is a copy of our letter dated January 7, 2014 to explain, under 18 C.F.R. 388.111, Plaintiffs' need for records and deposition testimony of the Commission and for the deposition testimony of Mr. Fletcher, as required by these subpoenas.

We respectfully request a prompt reply from the Commission as to whether it will comply with and allow Mr. Fletcher to comply with the subpoenas, or continues to take the position set forth in its letter dated February 12, 2014, a copy of which is enclosed for your reference.

Sincerely,

Johnston Lawyers, P.S.

Emanuel Jacobowitz

April 4, 2014
Mr. Morenoff
Page 2 of 2


Encl.

Cc: Charles Beamon, Esq.
    Christopher MacFarland, Esq.
    Plaintiffs' and Defendants' counsel

)
)

# EXHIBIT Y

Federal Energy Regulatory Commission
Washington, D.C.  20426

Office of the General Counsel

              Re:    Subpoena to Testify at a Deposition
                     in a Civil Action
                     *Kelly, et al v. Public Utility District No. 2 of Grant County, et al.*
                     Civil Action No. 11-cv-023-JLQ
                     (E.D. Wash.)

**BY ELECTRONIC AND REGULAR MAIL**
Emanuel Jacobowitz, Esq.
Johnston Lawyers, P.S.
2701 First Avenue, Suite 340
Seattle, Washington 98121
mannyj@rbrucejohnston.com

Dear Mr. Jacobowitz:

      I am writing to address the subpoena for Robert J. Fletcher that the Federal Energy Regulatory Commission (Commission) received on or about April 3, 2014 related to the lawsuit filed against the Public Utility District No. 2 of Grant County, Washington (PUD).  In my April 10, 2014 letter, I requested additional information to aid my ability to determine whether compliance with the subpoena by Mr. Fletcher is clearly in the interest of FERC, as required by the Commission's *Touhy* regulations.  *See* 18 C.F.R. § 388.111.  I have received your April 11, 2014 communication in which you provided responsive information regarding the subjects about which you have requested Mr. Fletcher to provide testimony.

      As explained in my previous letter, a FERC employee may only provide testimony in response to a subpoena when the General Counsel or his designee determines that compliance is appropriate.  *See* 18 C.F.R. § 388.111.  The purpose of the *Touhy* regulation is to ensure  that Commission resources are only used for third-party lawsuits after evaluating factors such as the "need to conserve the time of employees for conducting official business; the need to avoid spending the time and money of the United States for private purposes; the need to maintain impartiality between private litigants in cases where a substantial government interest is not involved; and the

FERC Response to Subpoena
April 17, 2014

established legal standards for determining whether justification exists for the disclosure of confidential information and records." *See* 18 C.F.R. § 388.111(e).

The Federal Rules of Civil Procedure also explicitly provide limitations on discovery in cases such as this. Rule 26 and Rule 45 give ample discretion to district courts to quash or modify subpoenas causing an undue burden on the responding party. In ruling on discovery requests, Rule 26(b)(2) instructs district courts to consider a number of factors relevant to the government's expressed interests. For example, a court may use Rule 26(b) to limit discovery of agency documents or testimony of agency employees if the desired discovery is relatively unimportant when compared to government interests in conserving scarce government resources. *See Watts v. Sec. Exchange Comm.,* 482 F.3d 501, 509 (D.C. Cir. 2007).

In reviewing subpoenas for Commission employees, the Commission considers whether it is in the public interest to comply with a subpoena, and where, as here, the testimony requested is irrelevant to the underlying dispute and the relevant information is available in written documents, there is not a compelling public interest in compliance. As the Commission speaks via orders as opposed to staff testimony or statements, there is no benefit from having Mr. Fletcher deposed in this proceeding. *See* 18 C.F.R. § 388.104(a) ("Opinions expressed by the staff do not represent the official views of the Commission, but are designed to aid the public and facilitate the accomplishment of the Commission's functions"). Therefore, the Commission objects to the requested testimony under Federal Rules of Civil Procedure 26 and 45 and, pursuant to 18 C.F.R. § 388.111, the Commission does not authorize Mr. Fletcher to comply with the subpoena.

## Discovery Sought is Unreasonably Cumulative or Duplicative

In your April 11, 2014 communication, you state that you "seek testimony as to Mr. Fletcher, and the Commission's, oral and written communications with the Defendants in our action, and related documents, relating to the Defendant PUD's relicensing and lease renewal under the Priest Rapids Project, and its Shoreline Management Plan, especially regarding residential uses on Crescent Bar Island." In a January 7, 2014 letter you also indicated that the information was necessary to settle a factual dispute about whether the Commission required the Defendant to evict individuals from Crescent Bar Island.

Although you state that the information is necessary to settle a factual dispute about whether FERC required PUD to evict your clients from Crescent Bar Island, the deposition testimony you seek is not necessary or relevant to resolving the factual dispute, because the Commission has already resolved this issued by indicating that the PUD was not required to evict your clients from Crescent Bar Island.

On April 18, 2013, the Commission issued an order modifying and approving the Shoreline Management Plan for this project. With respect to arguments made by groups of Crescent Bar residents, the Commission explained that the Commission has not required licensees to permit private uses and, indeed, that long-term leasing of project lands for private purposes is at odds with the Commission's policy of maximizing public recreation at licensed projects. *See Public Utility District No. 2 of Grant County, Washington*, 143 FERC ¶ 61,046 at 43 (2013) (April Order). The Commission concluded that whether the PUD must renew or extend a lease that allows the private entities to maintain facilities on project lands was outside the scope of the Commission's review. The Commission also explained that it had neither required Grant PUD to renew the lease nor precluded it from doing so, nor had it requested authorization from the Commission regarding its actions, but that Grant PUD had independently determined that not renewing the lease is in the best interest of it and its ratepayers. *See* April Order at PP 75-76. On September 19, 2013, the Commission denied rehearing of the April 18 order. *See Public Utility District No. 2 of Grant County, Washington*, 144 FERC ¶ 61,210 (2013).

The information being sought from Mr. Fletcher is simply not needed in your case. In light of the Commission's unambiguous determination in this matter that the Commission did not require the Defendant to evict individuals from Crescent Bar Island there is no need to hear from Mr. Fletcher. Moreover, Commission staff deals regularly with issues involving shoreline management plans and whether private uses are permitted under the particular licenses in various circumstances. Authorizing testimony in this instant case could have cumulative effects as more individuals might come forward to subpoena FERC employees in their private or personal litigation involving shoreline management plans and private uses. *See Davis Enters. v. EPA*, 877 F.2d 1181, 1187 (3d Cir. 1989) (finding that an Agency had "legitimate concern with the potential cumulative effect" and "proliferation of testimony by its employees" that compliance with individual subpoena would entail). The role of a Federal employee is to conduct the public's business, which as explained below does not include excessive entanglement in private litigation between private parties.

## Authorizing Testimony of Mr. Fletcher is Unduly Burdensome

You are seeking the testimony of Mr. Fletcher regarding matters relating to documents that are already in your possession or already publicly available. Because you already have access to the Commission decisions on this matter, the burden and expense that FERC would bear in complying with the subpoena outweighs any future possible benefit. *See* Fed. R. Civ. P. 26(b).

FERC has limited resources and authorizing the requested testimony will disrupt the Agency's important day-to-day duties in administering its programs to protect human

health and the environment. *Exxon Shipping Co. v. U.S. Dep't of Interior,* 34 F.3d 774, 779 (1994) ("We acknowledge the government's serious and legitimate concern that its employee resources not be commandeered into service by private litigants to the detriment of the smooth functioning of government operations."). Authorizing the requested testimony would also be an undue burden on government resources due to the resources involved in preparing Mr. Fletcher for such testimony and defending any such testimony. *See City of Ashland v. Schaefer,* Civ. No. 08–3048, 2008 WL 2944681, at *6 (D. Or., July 31, 2008) ("[T]he USDA is in the best position to determine the time and effort involved in preparing the employees for their depositions and testimony and how that time commitment might hamper their ability to fulfill their duties"). In this instance, where the Commission has already provided the information in question requiring Mr. Fletcher to testify is unduly burdensome and without any likely benefit to your case.

## Document Request

In your April 3 subpoena you request that Mr. Fletcher produce "all documents referenced or described" as:

> Residential uses of project lands after 1990 on Crescent Bar Island under the Deponent's license to the Public Utility District No. 2 of Grant County under the Deponent's Priest Rapids Project, No. 2114-208. and related documents, including but not limited to documents relating to the said District's Recreational Resource Management Plan, its Shoreline Management Plan, or its application for relicensing. "Documents' include but are not limited to submissions, orders, staff opinions and Deponent's related correspondence, discussions, and other communications or records of communications with any representatives of Public Utility District No. 2 of Grant County, Port of Quincy, Port District No. 1 of Grant County, Crescent Bar, Inc., homeowners, homeowner associations, sublessees, and/or community representatives.

My staff has discussed this matter with Mr. Fletcher and can confirm that he does not possess any records that you have requested in your subpoena. Nevertheless, I will make my staff available to work with you in locating information in the public record that might respond to your general request for information.

## Conclusion

For the above reasons, FERC does not authorize the testimony of Mr. Fletcher requested in the April 2014 subpoena. Because Mr. Fletcher does not have permission from the Commission to comply with the subpoena, I request that you withdraw the

FERC Response to Subpoena
April 17, 2014

subpoena.  Please contact Mark Hershfield at 202-502-8597 or mark.hershfield@ferc.gov with any questions or concerns prior to initiating judicial intervention to compel the testimony of Mr. Fletcher.

Sincerely,

Charles A. Beamon
Associate General Counsel
General and Administrative Law

cc:    Vanessa Waldref, Esq., DOJ
       Wyneva Johnson, Esq., DOJ

5

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CRESCENT BAR, INC.,                          )
8894 Crescent Bar Road NW                    )
Quincy, WA 98848                             )      Case No.
                                             )
              Petitioner,                    )
                                             )
vs.                                          )
                                             )
FEDERAL ENERGY REGULATORY                    )
COMMISSION, CHERYL A. LAFLEUR,               )
and ROBERT J. FLETCHER,                      )
888 First Street N.E.
Washington, DC 20426

_____ Defendants. _____

**PROPOSED ORDER ON MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS**

Before the Court is a Motion to Compel Compliance with Subpoenas (the "Motion")

submitted by Petitioner Crescent Bar, Inc.  Upon consideration of the Motion and the briefs and

submissions of the parties, and any oral argument thereupon, and it appearing to the Court that

Defendants Federal Energy Commission, Cheryl A. LaFleur, and Robert Fletcher (collectively,

"Defendants"), have refused to fulfill their obligations in responding to the subpoenas, it is

hereby:

ORDERED that the Motion is GRANTED in its entirety; and it is hereby

FURTHER ORDERED that the Defendants be compelled to make Mr. Fletcher and a

representative from FERC available to be deposed within fourteen days of the Court's Order.

IT IS SO ORDERED this _____ day of _____, 2014.

_____

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CRESCENT BAR, INC.,<br>8894 Crescent Bar Road NW<br>Quincy, WA 98848<br><br>    Petitioner,<br><br>vs.<br><br>FEDERAL ENERGY REGULATORY<br>COMMISSION, CHERYL A. LAFLEUR,<br>and ROBERT J. FLETCHER,<br>888 First Street N.E.<br>Washington, DC 20426<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.<br><br>CORPORATE DISCLOSURE<br>STATEMENT OF PLAINTIFF CRESCENT<br>BAR, INC. |

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Civil Procedure 7.1 and Local Rule 7.1, I, the undersigned

counsel of record for Plaintiff Crescent Bar, Inc., certify that the following are parent companies,

subsidiaries or affiliates of Crescent Bar Inc. which have any outstanding securities in the hands

of the public:

Crescent Bar Holdings, LLC.

These representations are made in order that judges of this court may determine the need

for recusal.

Respectfully submitted this 15th day of May, 2014.

By: _Donald J Friedman_ /aa
  Donald J. Friedman (DC Bar # 413701)
  PERKINS COIE LLP
  700 Thirteenth Street, N.W., Suite 600
  Washington, D.C. 20005-3960
  Telephone:  202.654.6200
  Facsimile:  202.654.6211